Case No. 23-14191-G

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

MONARCH AIR GROUP, LLC, and DAVID GITMAN,

Appellant,

vs.

JPMORGAN CHASE BANK, N.A.,

Appellees.

---

Appeal from the United States District Court
For the Southern District of Florida

Case No.: 0:21-cv-62429-WPD

---

## APPENDIX TO APPELLANTS' INITIAL BRIEF
## VOLUME 1 OF 7

---

**STOK KON + BRAVERMAN**
1 E. Broward Boulevard
Suite 915
Fort Lauderdale, FL 33301
P.954.237.1777
F.954.237.1737
E-mail: service@stoklaw.com

*Counsel for Appellants*
*Monarch Air Group LLC and*
*David Gitman*

# INDEX OF APPENDIX

**Docket/Tab #**

## Volume 1

District Court Docket Sheet……………………………….…..A

Notice of Removal…………………………………………………..1

Notice of Removal Exhibit A: State Court Complaint……….……..1-1

Amended Notice of Removal…………………………................................5

Amended Complaint for Damages and Injunctive Relief………...……21

Defendant's Answer and Affirmative Defenses to Amended Complaint…………………………………………………… 25

Second Amended Complaint………………………………………..…78

Defendant's Answer and Affirmative Defenses to Second Amended Complaint…………………………………………………...85

Plaintiffs Evidentiary Material in Support of Motion for Summary Judgment (Filed Under Seal)……………………………………86

Plaintiffs' Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment………………………88

Plaintiffs' Motion for Partial Summary Judgment………………..........89

Defendant's Motion for Summary Judgment (Unredacted Version Filed Under Seal)…………..………………......90

Defendant's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment (Unredacted Version Filed Under Seal)..……………………………………………………………91

STOK KON + BRAVERMAN

1 East Broward Blvd, Suite 915 • Fort Lauderdale, FL 33301 • P.954.237.1777 • F.954.237.1737 • E-mail: service@stoklaw.com

Defendant's Statement of Undisputed Material Facts
Exhibit 1: A. Lauro Depo Transcript (Filed Under Seal)……..……..91-1

Defendant's Statement of Undisputed Material Facts
Exhibit 2: Deposit Account Agreement (Filed Under Seal)…………91-2

Defendant's Statement of Undisputed Material Facts
Exhibit 3: D. Gitman Depo Transcript (Filed Under Seal)…………91.3

Defendant's Statement of Undisputed Material Facts
Exhibit 4: The Stern Facts Article…………………………………...91-4

Defendant's Statement of Undisputed Material Facts
Exhibit 5: Flight of the Monarch…..………………………………...91-5

## Volume 2

Defendant's Statement of Undisputed Material Facts
Exhibit 6: Defendant's Supplemental Answers to Interrogatories
(Filed Under Seal)……………………………………..……………91-6

Defendant's Statement of Undisputed Material Facts
Exhibit 7: Declaration of A. Lauro (Filed Under Seal)……………...91-7

Defendant's Statement of Undisputed Material Facts
Exhibits 8-67: Messages (Filed Under Seal)……………..……91-8 91-67

Defendant's Statement of Undisputed Material Facts
Exhibit 68: E-mail……………………………………………91-68

Defendant's Statement of Undisputed Material Facts
Exhibit 69: Depo Notice……………………………………...91-69

Defendant's Statement of Undisputed Material Facts Exhibit 70:
Plaintiffs' Response to Interrogatories (Filed Under Seal)………..91-70

Plaintiffs Amended Motion for Partial Summary Judgment..……..105

Plaintiffs' Amended Statement of Undisputed Material Facts
in Support of Motion for Partial Summary Judgment...................106

Plaintiffs' Response in Opposition to Defendant's
Motion for Summary Judgment.................................................108

Plaintiffs' Response in Opposition to Defendant's Statement of
Undisputed Material Facts in Support of Motion for Summary
Judgment.................................................................................109

Order Striking Plaintiffs Amended Motion for Partial Summary
Judgment/Amended Statement of Undisputed Material Facts........110

Plaintiffs' Motion for Sanctions................................................115

Plaintiffs' Motion for Sanctions Exhibit A:
Plaintiffs' First Request for Production...................................115-1

## Volume 3

Plaintiffs' Motion for Sanctions Exhibit B:
Deposition Transcript of Michael Biratsis..............................115-2

Plaintiffs' Motion for Sanctions Exhibit C:
February 23, 2023 Email from Mr. Weinberg.........................115-3

Plaintiffs' Second Amended Motion for Partial Summary
Judgment.................................................................................119

Plaintiffs' Second Amended Statement of Undisputed Material
Facts in Support of Motion for Summary Judgment....................120

Order Striking Plaintiffs' Second Amended Motion for Partial
Summary Judgment..................................................................121

Defendant's Motion to Strike Plaintiff's Motion for Sanctions or
Alternatively Unopposed Motion to Extend Page Limit

for Defendant's Response……………………………………122

Plaintiffs' Motion for Reconsideration of Order Striking Plaintiffs' Motion for Summary Judgement and Statement of Material Facts………………………………………..…..126

Order Denying Plaintiffs' Motion for Reconsideration………………130

## Volume 4

Defendant's Reply in Support of its Motion for Summary Judgment……………………………………………131

Defendant's Response to Plaintiff's Motion for Sanctions……………………………………………136

Plaintiff's Reply in Support of Plaintiffs' Motion for Sanctions…….146

Defendant's Motion to Strike Plaintiff's Reply in Support of Plaintiff's Motion for Sanctions……………………………....147

Plaintiffs' Reply in Support of Plaintiff's Motion for Sanctions…….153

Plaintiffs' Reply in Support of Plaintiff's Motion for Sanctions Exhibit A: Organizational Chart…………………………………..153-1

Plaintiffs' Reply in Support of Plaintiff's Motion for Sanctions Exhibit B: Notice of Taking Deposition………………………………153-2

Plaintiffs' Notice of Supplemental Authority In Opposition to Chase's Motion for Summary Judgment………………………………154

Plaintiffs' Notice of Supplemental Authority In Opposition to Chase's Motion for Summary Judgment Exhibit A: *Sutton v. Wal-Mart Stores East, LP*, 22-10162 (11th Cir. Mar. 31,2023)………………….…..154-1

Plaintiffs' Second Motion for Sanctions…………………..…………170

Paperless Order on DE 115 Plaintiffs' Motion for Sanctions...........175

Defendant's Response to Plaintiffs' Second Motion for Sanctions....191

Plaintiffs' Reply to Response To Second Motion for Sanctions.........198

Paperless Order on DE 170 Second Motion for Sanctions and
DE 181 Motion in Limine.........................................................203

Order Granting Defendant's Motion for Summary Judgment.........205

Final Judgment and Order Closing Case.................................206

Transcript of Hearing on DE 170 Motion for Sanctions and
DE 181 Motion in Limine.................................................…....210

## Volume 5

Plaintiffs' Motion for Relief from Judgment................................212

Plaintiffs' Motion for Discovery to Support Their Motion for
Relief from Judgment.......................................................…213

Appendix To Plaintiffs' Motion For Relief From Judgment
(Filed Under Seal)..........................................................217

Defendant's Response to Plaintiffs Motion for Discovery to Support
Their Motion for Relief from Judgment (Unredacted Version Filed
Under Seal)..................................................................226

Defendant's Response to Plaintiffs Motion for Discovery to Support
Their Motion for Relief from Judgment Exhibit A: Subpoena
(Filed Under Seal)........................................................226-1

Defendant's Response to Plaintiffs Motion for Discovery to Support
Their Motion for Relief from Judgment Exhibit B: SSU Procedure
Document (Filed Under Seal).............................................226-2

Defendant's Response to Plaintiffs Motion for Discovery to Support Their Motion for Relief from Judgment Exhibit C: T. Pittman Depo Transcript (Filed Under Seal)…………………………………….......226-3

Plaintiffs' Reply In Support of Motion for Discovery to Support Their Motion for Relief From Judgment………………………….....230

Paperless Order on DE 213 Plaintiffs' Motion for Discovery…....……240

## Volume 6

Transcript Of Evidentiary Hearing held on July 20, 2023………..253-1

## Volume 7

Transcript Of Evidentiary Hearing (Continued) held on July 21, 2023…………………………………………………………....253-2

Plaintiffs' Objection to Magistrate Judge Valles Order On Plaintiffs' Motion For Discovery………………………………...….261

Defendant's Response to Plaintiffs' Motion for Relief from Judgment (Unredacted Version Filed Under Seal)………………………….....263

Defendant's Response to Plaintiffs' Motion for Relief from Judgment Exhibit A: Partially Unredacted AML Interdiction List Request (Filed Under Seal)……………………………………….…………263-1

Defendant's Response to Plaintiffs' Motion for Relief from Judgment Exhibit B: Notice of Taking Deposition Duces Tecum (Filed Under Seal)……………………………………………………………263-2

Plaintiffs Reply in Support of Their Motion for Relief from Judgment……………………………………………………,..,..268

Defendant's Response to Plaintiffs Objections to Order on Plaintiffs Motion for Discovery to Support their Motion (Unredacted Version Filed Under Seal)……………………………………….………......270

Order Adopting and Affirming DE 240 Magistrate Judge's
Order Denying Motion for Discovery……………………….……..…276

Order Denying DE 212 Plaintiffs' Motion for Relief
From Judgment……………………………………………….…...…277

Certificate of Service

STOK KON + BRAVERMAN
1 East Broward Blvd, Suite 915 • Fort Lauderdale, FL 33301 • P.954.237.1777 • F.954.237.1737 • E-mail: service@stoklaw.com

# TAB A

AOV,APPEAL,CLOSED,MEDIATION,PERMSEAL

# U.S. District Court
## Southern District of Florida (Ft Lauderdale)
## CIVIL DOCKET FOR CASE #: 0:21-cv-62429-WPD

Monarch Air Group, LLC et al v. JPMorgan Chase Bank, N.A.

Assigned to: Judge William P. Dimitrouleas

Referred to: Magistrate Judge Alicia O. Valle

Case in other court: USCA, 23-14191-G

                 Seventeenth Judicial Circuit, CACE-21-019694

Cause: 28:1332 Diversity-Notice of Removal

Date Filed: 12/01/2021

Date Terminated: 05/12/2023

Jury Demand: Both

Nature of Suit: 320 Assault Libel & Slander

Jurisdiction: Diversity

## Plaintiff

**Monarch Air Group, LLC**
*a Florida limited liability company*
*doing business as*
Mercury Jets

represented by **Joshua R Kon**
Stok Folk + Kon
One East Las Olas Boulevard
Suite 915
Fort Lauderdale, FL 33301
954-237-1777
Fax: 954-237-1737
Email: jkon@stoklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yosef Yitzchak Kudan**
Stok Kon and Braverman
One East Broward Boulevard
Suite 915
Fort Lauderdale, FL 33301
954-237-1777
Email: ykudan@stoklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Stok**
Stok Kon + Braverman
One East Las Olas Boulevard
Suite 915
Fort Lauderdale, FL 33301
954-237-1777
Fax: 954-237-1737
Email: rstok@stoklaw.com
*ATTORNEY TO BE NOTICED*

## Plaintiff

**David Gitman**

represented by **Joshua R Kon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yosef Yitzchak Kudan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert A. Stok**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**JPMorgan Chase Bank, N.A.**                represented by   **John Richard Byrne**
*a foreign profit corporation*                               Maderal Byrne PLLC
                                                             2800 Ponce de Leon Boulevard
                                                             Suite 1100
                                                             Coral Gables, FL 33134
                                                             305-520-5690
                                                             Fax: 305-520-5698
                                                             Email: john@maderalbyrne.com
                                                             *TERMINATED: 04/29/2022*
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Benjamin Weinberg**
                                                             Len Cosgrove LLP
                                                             255 Alhambra Circle
                                                             Suite 800
                                                             Coral Gables, FL 33134
                                                             305-740-1975
                                                             Email: bweinberg@leoncosgrove.com
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Sofia Manzo**
                                                             Leon Cosgrove, LLC
                                                             255 Alhambra Circle, 8th Floor
                                                             Coral Gables, FL 33134-7412
                                                             (305) 740-1975
                                                             Email: smanzo@leoncosgrove.com
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Derek Eduardo Leon**
                                                             Leon Cosgrove, LLC
                                                             255 Alhambra Circle
                                                             Suite 800
                                                             Coral Gables, FL 33134
                                                             305 740-1977
                                                             Email: dleon@leoncosgrove.com
                                                             *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
| --- | --- | --- |

| 12/01/2021 | 1 | NOTICE OF REMOVAL (STATE COURT COMPLAINT - Complaint) Filing fee $ 402.00 receipt number AFLSDC-15211467, filed by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Exhibit 1, # 2 Civil Cover Sheet)(Leon, Derek) Modified Text on 12/1/2021 (cds). No Answer/Motion to Dismiss Filed. (Entered: 12/01/2021) |
| 12/01/2021 | 2 | Clerks Notice of Judge Assignment to Judge William P. Dimitrouleas and Magistrate Judge Lurana S. Snow.<br><br>Pursuant to 28 USC 636(c), the parties are hereby notified that the U.S. Magistrate Judge Lurana S. Snow is available to handle any or all proceedings in this case. If agreed, parties should complete and file the Consent form found on our website. It is not necessary to file a document indicating lack of consent.<br><br>Pro se (NON-PRISONER) litigants may receive Notices of Electronic Filings (NEFS) via email after filing a Consent by Pro Se Litigant (NON-PRISONER) to Receive Notices of Electronic Filing. The consent form is available under the forms section of our website. (cds) (Entered: 12/01/2021) |
| 12/01/2021 | 3 | Defendant's MOTION TO DISMISS 1 Notice of Removal (State Court Complaint), FOR FAILURE TO STATE A CLAIM by JPMorgan Chase Bank, N.A.. Responses due by 12/15/2021 (Leon, Derek) (Entered: 12/01/2021) |
| 12/01/2021 | 4 | ORDER TO SHOW CAUSE. Show Cause Response due by 12/8/2021. Signed by Judge William P. Dimitrouleas on 12/1/2021. *See attached document for full details.* (cds) (Entered: 12/01/2021) |
| 12/06/2021 | 5 | AMENDED NOTICE OF REMOVAL against All Plaintiffs, filed by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Leon, Derek) (Entered: 12/06/2021) |
| 12/08/2021 | 6 | ORDER TO SHOW CAUSE. Show Cause Response due by 12/15/2021. Signed by Judge William P. Dimitrouleas on 12/8/2021. *See attached document for full details.* (cds) (Entered: 12/08/2021) |
| 12/15/2021 | 7 | RESPONSE TO ORDER TO SHOW CAUSE re 6 Order to Show Cause by JPMorgan Chase Bank, N.A.. (Leon, Derek) (Entered: 12/15/2021) |
| 12/16/2021 | 8 | ORDER REQUIRING RESPONSE re 7 Response to Order to Show Cause filed by JPMorgan Chase Bank, N.A., ( Responses due by 12/23/2021, Replies due by 12/28/2021.) Signed by Judge William P. Dimitrouleas on 12/16/2021. *See attached document for full details.* (cds) (Entered: 12/16/2021) |
| 12/23/2021 | 9 | REPLY to 7 Response to Order to Show Cause by David Gitman, Monarch Air Group, LLC. (Stok, Robert) (Entered: 12/23/2021) |
| 12/28/2021 | 10 | REPLY by JPMorgan Chase Bank, N.A.. (Leon, Derek) (Entered: 12/28/2021) |
| 12/29/2021 | 11 | ORDER REQUIRING JOINT NOTICE. Signed by Judge William P. Dimitrouleas on 12/29/2021. *See attached document for full details.* (cds) (Entered: 12/29/2021) |
| 01/10/2022 | 12 | NOTICE by Monarch Air Group, LLC, David Gitman *PARTIES JOINT NOTICE OF FACTS ESTABLISHING DIVERSITY JURISDICTION* (Attachments: # 1 Exhibit Schedule A for Joint Notice) (Kon, Joshua) Modified Filers on 1/11/2022 (cds). (Entered: 01/10/2022) |
| 01/11/2022 | 13 | Clerks Notice to Filer re 12 Notice (Other). **Missing Filer Name(s)**; ERROR - The filer failed to select all parties indicated. The correction was made by the Clerk. It is not necessary to refile this document. (cds) (Entered: 01/11/2022) |

| 01/11/2022 | 14 | ORDER REQUIRING COUNSEL TO MEET, FILE JOINT SCHEDULING REPORT AND JOINT DISCOVERY REPORT. Signed by Judge William P. Dimitrouleas on 1/11/2022. *See attached document for full details.* (cds) (Entered: 01/11/2022) |
|---|---|---|
| 01/11/2022 | 15 | ORDER SETTING DEADLINES FOR MOTION TO DISMISS re 3 Defendant's MOTION TO DISMISS 1 Notice of Removal (State Court Complaint), FOR FAILURE TO STATE A CLAIM filed by JPMorgan Chase Bank, N.A., Set Responses due by 1/21/2022, Replies due by 1/28/2022.) Signed by Judge William P. Dimitrouleas on 1/11/2022. *See attached document for full details.* (cds) (Entered: 01/11/2022) |
| 01/14/2022 | 16 | Defendant's Corporate Disclosure Statement by JPMorgan Chase Bank, N.A. (Byrne, John) (Entered: 01/14/2022) |
| 01/14/2022 | 17 | Clerks Notice to Filer re 16 Certificate of Other Affiliates/Corporate Disclosure Statement. **Other Affiliates/Corporate Parents Not Entered**; ERROR - The Filer failed to enter all Other Affiliates/Corporate Parents from the Certificate of Other Affiliates/Corporate Disclosure Statement. Filer is instructed to refile their Certificate of Other Affiliates/Corporate Disclosure Statement and enter the missing Other Affiliates/Corp Parents. Note - Other Affiliates/Corporate Parents do not appear on the docket sheet. JPMorgan Chase & Co. and The Vanguard Group, Inc., (cds) (Entered: 01/14/2022) |
| 01/18/2022 | 18 | Certificate of Other Affiliates by JPMorgan Chase Bank, N.A. identifying Other Affiliate JPMorgan Chase & Co., Other Affiliate The Vanguard Group, Inc. for JPMorgan Chase Bank, N.A. (Byrne, John) (Entered: 01/18/2022) |
| 01/20/2022 | 19 | Corporate Disclosure Statement by Monarch Air Group, LLC, David Gitman (Kon, Joshua) Modified Filer on 1/20/2022 (cds). (Entered: 01/20/2022) |
| 01/20/2022 | 20 | Clerks Notice to Filer re 19 Certificate of Other Affiliates/Corporate Disclosure Statement. **Missing Filer Name(s)**; ERROR - The filer failed to select all parties. The correction was made by the Clerk. It is not necessary to refile this document. (cds) (Entered: 01/20/2022) |
| 01/21/2022 | 21 | First AMENDED COMPLAINT against All Plaintiffs, filed by Monarch Air Group, LLC, David Gitman.(Kon, Joshua) (Entered: 01/21/2022) |
| 01/21/2022 | 22 | ORDER denying 3 Motion to Dismiss. Signed by Judge William P. Dimitrouleas on 1/21/2022. *See attached document for full details.* (lbc) (Entered: 01/21/2022) |
| 02/01/2022 | 23 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 21 Amended Complaint/Amended Notice of Removal by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order)(Byrne, John) (Entered: 02/01/2022) |
| 02/01/2022 | 24 | ORDER Granting 23 UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFFS' AMENDED COMPLAINT. JPMorgan Chase Bank, N.A.. Response/Answer due 2/18/2022. Signed by Judge William P. Dimitrouleas on 2/1/2022. *See attached document for full details.* (cds) (Entered: 02/01/2022) |
| 02/18/2022 | 25 | ANSWER and Affirmative Defenses to Complaint *Amended Complaint* by JPMorgan Chase Bank, N.A.. (Leon, Derek) (Entered: 02/18/2022) |
| 02/25/2022 | 26 | Defendant's MOTION for Judgment on the Pleadings by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Exhibit A)(Leon, Derek) (Entered: 02/25/2022) |
| 03/11/2022 | 27 | (STRICKEN PER DE#31) RESPONSE in Opposition re 26 Defendant's MOTION for Judgment on the Pleadings filed by Monarch Air Group, LLC. Replies due by 3/18/2022. (Attachments: # 1 Exhibit Exhibit A - Amended Complaint, # 2 Exhibit Exhibit B - |

| | | |
|---|---|---|
| | | Answer and Affirmative Defenses)(Stok, Robert) Text Modified on 3/17/2022 (scn). (Entered: 03/11/2022) |
| 03/14/2022 | 28 | Joint SCHEDULING REPORT - **Rule 26(f)** by David Gitman, Monarch Air Group, LLC (Kon, Joshua) (Entered: 03/14/2022) |
| 03/14/2022 | 29 | ORDER SETTING TRIAL DATE & DISCOVERY DEADLINES, REFERRING CASE TO MEDIATION & REFERRING DISCOVERY MOTIONS TO UNITED STATES MAGISTRATE JUDGE: ( Jury Trial set for 3/6/2023 in Fort Lauderdale Division before Judge William P. Dimitrouleas., Calendar Call set for 3/3/2023 10:00 AM in Fort Lauderdale Division before Judge William P. Dimitrouleas.), ORDER REFERRING CASE to Mediation., ORDER REFERRING CASE to Magistrate Judge Lurana S. Snow for Discovery Matters. Signed by Judge William P. Dimitrouleas on 3/14/2022. *See attached document for full details.* (cds)<br><br>**Pattern Jury Instruction Builder -** To access the latest, up to date changes to the 11th Circuit Pattern Jury Instructions go to https://pji.ca11.uscourts.gov or click here. (Entered: 03/14/2022) |
| 03/15/2022 | 30 | Clerks Notice to Filer re 27 Response in Opposition to Motion,. **Login/Signature Block Violation**; CORRECTIVE ACTION REQUIRED - The name of attorney e-filing this document via their CM/ECF login does not match the name of attorney on the signature block of the document. The name used for login must match the typed name on signature block of the document. This filing is a violation of Section 3J(1) of CM/ECF Admin Procedures and Local Rule 5.1(b). Filer must File a Notice of Striking, then refile document pursuant to CM/ECF Admin Procedures and Local Rules. (drz) (Entered: 03/15/2022) |
| 03/17/2022 | 31 | (STRICKEN PER DE#34) NOTICE of Striking *Notice of Striking Plaintiffs Response in Opposition to Defendants Motion for Judgment on the Pleadings [DE 27]* by David Gitman, Monarch Air Group, LLC (Kon, Joshua) Text Modified on 3/18/2022 (scn). (Entered: 03/17/2022) |
| 03/17/2022 | 32 | RESPONSE in Opposition re 26 Defendant's MOTION for Judgment on the Pleadings filed by David Gitman, Monarch Air Group, LLC. Replies due by 3/24/2022. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Kon, Joshua) (Entered: 03/17/2022) |
| 03/17/2022 | 33 | Clerks Notice to Filer re 31 Notice of Striking. **Login/Signature Block Violation**; CORRECTIVE ACTION REQUIRED - The name of attorney e-filing this document via their CM/ECF login does not match the name of attorney on the signature block of the document. The name used for login must match the typed name on signature block of the document. This filing is a violation of Section 3J(1) of CM/ECF Admin Procedures and Local Rule 5.1(b). Filer must File a Notice of Striking, then refile document pursuant to CM/ECF Admin Procedures and Local Rules. (scn) (Entered: 03/17/2022) |
| 03/17/2022 | 34 | NOTICE of Striking *Plaintiffs' Notice of Striking [DE 31]* by David Gitman, Monarch Air Group, LLC (Kon, Joshua) (Entered: 03/17/2022) |
| 03/17/2022 | 35 | NOTICE of Striking *Response in Opposition to Defendants Motion for Judgment on the Pleadings [DE 27]* by David Gitman, Monarch Air Group, LLC (Kon, Joshua) (Entered: 03/17/2022) |
| 03/18/2022 | 36 | Defendant's REPLY to Response to Motion re 26 Defendant's MOTION for Judgment on the Pleadings filed by JPMorgan Chase Bank, N.A.. (Leon, Derek) (Entered: 03/18/2022) |
| 03/21/2022 | 37 | GENERAL ORDER ON DISCOVERY OBJECTIONS AND PROCEDURES signed by Magistrate Judge Lurana S. Snow on 3/21/2022. (jz) (Entered: 03/21/2022) |

| 03/22/2022 | 38 | (STRICKEN PER DE#58) NOTICE by David Gitman, Monarch Air Group, LLC *Notice of Serving Initial Disclosures* (Kon, Joshua) Text Modified on 11/8/2022 (cqs). (Entered: 03/22/2022) |
| --- | --- | --- |
| 03/29/2022 | 39 | ORDER TO SHOW CAUSE. Show Cause Response due by 4/5/2022. Signed by Judge William P. Dimitrouleas on 3/29/2022. *See attached document for full details.* (cds) (Entered: 03/29/2022) |
| 03/29/2022 | 40 | Joint NOTICE of Mediator Selection. Selected/Added Harry Richard Schafer as Mediator. (Byrne, John) (Entered: 03/29/2022) |
| 04/01/2022 | 41 | RESPONSE TO ORDER TO SHOW CAUSE re 39 Order to Show Cause by JPMorgan Chase Bank, N.A.. (Byrne, John) (Entered: 04/01/2022) |
| 04/29/2022 | 42 | Unopposed MOTION to Withdraw as Attorney by John R. Byrne for / by JPMorgan Chase Bank, N.A.. Responses due by 5/13/2022 (Attachments: # 1 Text of Proposed Order)(Byrne, John) (Entered: 04/29/2022) |
| 04/29/2022 | 43 | ORDER Granting 42 Motion to Withdraw as Attorney. John Richard Byrne representing JPMorgan Chase Bank, N.A. (Defendant) withdrawn from case. Signed by Judge William P. Dimitrouleas on 4/29/2022. *See attached document for full details.* (cds) (Entered: 04/29/2022) |
| 05/20/2022 | 44 | NOTICE of Attorney Appearance by Benjamin Weinberg on behalf of JPMorgan Chase Bank, N.A.. Attorney Benjamin Weinberg added to party JPMorgan Chase Bank, N.A. (pty:dft). (Weinberg, Benjamin) (Entered: 05/20/2022) |
| 05/20/2022 | 45 | Joint MOTION for Confidentiality Order */ Entry of Stipulated Confidentiality Agreement and Protective Order* by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order Stipulated Confidentiality Agreement and Protective Order)(Weinberg, Benjamin) (Entered: 05/20/2022) |
| 05/24/2022 | 46 | PAPERLESS ORDER. This cause if before the Court on the Parties' 45 Joint Motion for Entry of Stipulated Confidentiality Agreement and Protective Order. Counsel shall submit a proposed order to the undersigned in accordance with the Local Rules and Rule 3I(6) of the CM/ECF Administrative Procedures. Signed by Magistrate Judge Lurana S. Snow on 5/24/2022. (jz) (Entered: 05/24/2022) |
| 05/25/2022 | 47 | ORDER GRANTING 45 the Parties' Joint Motion for Entry of Stipulated Confidentiality Agreement and Protective Order. Signed by Magistrate Judge Lurana S. Snow on 5/25/2022. (jz) (Entered: 05/25/2022) |
| 05/26/2022 | 48 | ORDER denying 26 Motion for Judgment on the Pleadings. Signed by Judge William P. Dimitrouleas on 5/26/2022. *See attached document for full details.* (cqs) (Entered: 05/26/2022) |
| 06/01/2022 | 49 | Case Reassignment of Paired Magistrate Judge to Magistrate Judge Patrick M. Hunt. Magistrate Judge Lurana S. Snow no longer assigned to case. (jmd) (Entered: 06/01/2022) |
| 06/07/2022 | 50 | Case Reassignment of Paired Magistrate Judge pursuant to Administrative Order(s) - 2022-47 to Magistrate Judge Alicia O. Valle. Magistrate Judge Patrick M. Hunt no longer assigned to case. (bms) (Entered: 06/07/2022) |
| 10/03/2022 | 51 | (STRICKEN PER DE#58)NOTICE to Take Deposition of Owen Zhong by David Gitman, Monarch Air Group, LLC.(Kon, Joshua) Text Modified on 11/8/2022 (cqs). (Entered: 10/03/2022) |

| | | |
|---|---|---|
| 10/21/2022 | 52 | Joint MOTION for Extension of Time of Discovery Cutoff Deadline *and Pre-Trial Deadlines* by David Gitman, Monarch Air Group, LLC. (Attachments: # 1 Proposed Order Granting Motion to Extend Pre-Trial Deadlines)(Kon, Joshua) (Entered: 10/21/2022) |
| 10/21/2022 | 53 | ORDER denying 52 Motion for Extension of Time of Discovery Cutoff Deadline. Signed by Judge William P. Dimitrouleas on 10/21/2022. *See attached document for full details.* (cqs) (Entered: 10/21/2022) |
| 10/21/2022 | 54 | NOTICE of Attorney Appearance by Sofia Manzo on behalf of JPMorgan Chase Bank, N.A.. Attorney Sofia Manzo added to party JPMorgan Chase Bank, N.A.(pty:dft). (Manzo, Sofia) (Entered: 10/21/2022) |
| 11/02/2022 | 55 | Renewed MOTION for Extension of Time of Discovery Cutoff Deadline *and Pre-Trial Deadlines* by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 11/02/2022) |
| 11/02/2022 | 56 | ORDER RESETTING PRETRIAL DEADLINES, TRIAL DATE AND CALENDAR CALL ( Jury Trial set for 4/10/2023 before Judge William P. Dimitrouleas., Calendar Call set for 4/7/2023 10:00 AM in Fort Lauderdale Division before Judge William P. Dimitrouleas.) Signed by Judge William P. Dimitrouleas on 11/2/2022. *See attached document for full details.* (cqs)<br><br>**Pattern Jury Instruction Builder -** To access the latest, up to date changes to the 11th Circuit Pattern Jury Instructions go to https://pji.ca11.uscourts.gov or click here. (Entered: 11/03/2022) |
| 11/07/2022 | 57 | (STRICKEN PER DE#58)NOTICE to Take Deposition of Corporate Representative(s) for J.P. Morgan Chase Bank by David Gitman, Monarch Air Group, LLC.(Kon, Joshua)Text Modified on 11/8/2022 (cqs). (Entered: 11/07/2022) |
| 11/08/2022 | 58 | PAPERLESS ORDER STRIKING DISCOVERY-RELATED NOTICES. This matter comes before the Court upon a review of the record. Plaintiffs have filed several Notices of Serving Initial Disclosures and Depositions. *See* ECF Nos. 38 , 51 , 57 (collectively, the "Notices"). Pursuant to the Local Rules, "[i]nitial and expert disclosures and the following discovery requests, responses, objections, notices or any associated proof of service shall not be filed until they are used in the proceeding or the court orders their filing: (1) deposition transcripts; (2) interrogatories; (3) requests for documents, electronically stored information or things, or to permit entry upon land; (4) requests for admission; and (5) notices of taking depositions or notices of serving subpoenas." S.D. Fla. L.R. 26.1(b). Accordingly, Plaintiff's Notices at ECF Nos. 38 , 51 , and 57 are **STRICKEN**. Signed by Magistrate Judge Alicia O. Valle on 11/8/2022. (sd01) (Entered: 11/08/2022) |
| 11/23/2022 | 59 | MOTION to Compel *RESPONSES TO PLANTIFFS' FIRST REQUEST FOR PRODUCTION AND UNREDACTED DOCUMENTS* by David Gitman, Monarch Air Group, LLC. Responses due by 12/7/2022 (Kon, Joshua) (Entered: 11/23/2022) |
| 11/28/2022 | 60 | MOTION for Extension of Time to File Response/Reply/Answer as to 59 MOTION to Compel *RESPONSES TO PLANTIFFS' FIRST REQUEST FOR PRODUCTION AND UNREDACTED DOCUMENTS* by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order)(Weinberg, Benjamin) (Entered: 11/28/2022) |
| 11/29/2022 | 61 | PAPERLESS ORDER GRANTING IN PART 60 Defendant's Motion for Extension of Time (the "Motion"). Based on a review of the record and to promote efficient case management, the undersigned finds that a response to the Motion is unnecessary. Moreover, the discovery deadline expires on Monday, December 5, 2022. *See* ECF No. |

| | | |
|---|---|---|
| | | 56 at 2. Accordingly, Defendant shall file its response to 59 Plaintiffs' Motion to Compel by **9:00 a.m. on Friday, December 2, 2022**. Lastly, in light of the discovery deadline, the parties are directed to telephonically meet and confer in a good faith effort to resolve all discovery disputes without further Court intervention. Signed by Magistrate Judge Alicia O. Valle on 11/29/2022. (jve) (Entered: 11/29/2022) |
| 11/30/2022 | | SYSTEM ENTRY - Docket Entry 62 [misc] restricted/sealed until further notice. (1155468) (Entered: 11/30/2022) |
| 12/01/2022 | 63 | RESPONSE in Opposition re 59 MOTION to Compel *RESPONSES TO PLANTIFFS' FIRST REQUEST FOR PRODUCTION AND UNREDACTED DOCUMENTS* filed by JPMorgan Chase Bank, N.A.. Replies due by 12/8/2022. (Weinberg, Benjamin) (Entered: 12/01/2022) |
| 12/07/2022 | 64 | MOTION for Leave to File *Second Amended Complaint* by David Gitman, Monarch Air Group, LLC. (Attachments: # 1 Exhibit A- Second Amended Complaint)(Kon, Joshua) (Entered: 12/07/2022) |
| 12/08/2022 | 65 | ORDER re 64 MOTION for Leave to File *Second Amended Complaint* filed by Monarch Air Group, LLC, David Gitman, ( Responses due by 12/12/2022, Replies due by 12/15/2022.) Signed by Judge William P. Dimitrouleas on 12/8/2022. *See attached document for full details.* (cqs) (Entered: 12/08/2022) |
| 12/08/2022 | | SYSTEM ENTRY - Docket Entry 66 [misc] restricted/sealed until further notice. (1155468) (Entered: 12/08/2022) |
| 12/12/2022 | 67 | PAPERLESS ORDER DENYING 59 Plaintiffs' Motion to Compel (the "Motion"). In the Motion, Plaintiffs seek to compel production of: (i) unredacted copies of previously produced material; and (ii) documents that have not yet been produced. *See* ECF No. 59 at 8. Plaintiffs also assert that Defendant has waived its privilege objections by asserting improper boilerplate objections and failing to cite to 31 U.S.C. § 5318, 12 C.F.R. § 21.11, and 31 C.F.R. § 1020.320. *See* ECF No. 59 at 8; ECF No. 63 at 3.<br><br>As to the portion of the Motion seeking to compel production of unredacted copies and production of any outstanding discovery materials, the Motion is **DENIED AS MOOT** based on the parties' representations that these issues have been resolved and that Defendant has agreed to produce the requested discovery by the week of November 28, 2022. *See* ECF No. 59 at 2 n.2, 7 n.6, 8; ECF No. 63 at 3.<br><br>As to the privilege issue, 31 U.S.C. § 5318, 12 C.F.R. § 21.11, and 31 C.F.R. § 1020.320 require banks to file suspicious activity reports ("SARs"). *See Fed. Trade Comm'n v. Marcus*, No. 17-CV-60907, 2020 WL 1482250, at *1 n.1 (S.D. Fla. Mar. 27, 2020). Notwithstanding Plaintiffs' argument, *see* ECF No. 59 at 8, the law in this District is clear that "the SAR [p]rivilege is an unqualified discovery and evidentiary privilege that a financial institution is not permitted to waive." *Marcus*, 2020 WL 1482250, at *3; *Lan Li v. Walsh*, No. 19-CV-80332, 2020 WL 5887443, at *3 (S.D. Fla. Oct. 5, 2020) (noting that the privilege is unqualified and cannot be waived by a national bank). Accordingly, the undersigned finds that Defendant has not waived its privilege objections. Furthermore, given that Plaintiffs filed the Motion on the eve of the discovery deadline (expiring on December 5, 2022), the Court declines Plaintiffs' invitation to conduct an *in camera* review of the documents. *See* ECF No. 59 at 8 n.7. Accordingly, this portion of the Motion is also **DENIED**. Signed by Magistrate Judge Alicia O. Valle on 12/12/2022. (jve) (Entered: 12/12/2022) |
| 12/12/2022 | 68 | MOTION to Seal *Exhibit 1 to Defendant's Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint* per Local Rule 5.4 by JPMorgan Chase Bank, N.A.. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Text of Proposed Order) (Weinberg, Benjamin) (Entered: 12/12/2022) |
| 12/12/2022 | 69 | RESPONSE in Opposition re 64 MOTION for Leave to File *Second Amended Complaint* filed by JPMorgan Chase Bank, N.A.. Replies due by 12/19/2022. (Attachments: # 1 Exhibit Exhibit 1 - To be Filed Under Seal, # 2 Exhibit Exhibit 2 - Comparison) (Weinberg, Benjamin) (Entered: 12/12/2022) |
| 12/13/2022 | 70 | ORDER denying without prejudice 68 Motion to Seal. Signed by Judge William P. Dimitrouleas on 12/13/2022. *See attached document for full details.* (cqs) (Entered: 12/13/2022) |
| 12/13/2022 | 71 | Renewed MOTION to Seal *Exhibit 1 to Defendant's Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint* per Local Rule 5.4 by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order) (Weinberg, Benjamin) (Entered: 12/13/2022) |
| 12/13/2022 | 72 | ORDER granting 71 Motion to File Under Seal. Signed by Judge William P. Dimitrouleas on 12/13/2022. *See attached document for full details.* (cqs) (Entered: 12/14/2022) |
| 12/14/2022 | | SYSTEM ENTRY - Docket Entry 73 [misc] restricted/sealed until further notice. (1135626) (Entered: 12/14/2022) |
| 12/15/2022 | 74 | Plaintiff's REPLY to 64 MOTION for Leave to File *Second Amended Complaint* by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 12/15/2022) |
| 12/15/2022 | | SYSTEM ENTRY - Docket Entry 75 [misc] restricted/sealed until further notice. (1155468) (Entered: 12/15/2022) |
| 12/20/2022 | 76 | NOTICE by JPMorgan Chase Bank, N.A. re 69 Response in Opposition to Motion, *Notice of Scrivener's Error* (Weinberg, Benjamin) (Entered: 12/20/2022) |
| 12/20/2022 | 77 | ORDER granting 64 Motion for Leave to File. *Clerks Notice: Filer must separately re-file the amended pleading pursuant to Local Rule 15.1, unless otherwise ordered by the Judge.* Second Amended Complaint due by 12/23/2023. Signed by Judge William P. Dimitrouleas on 12/20/2022. *See attached document for full details.* (cqs) (Entered: 12/20/2022) |
| 12/20/2022 | 78 | Second AMENDED COMPLAINT against JPMorgan Chase Bank, N.A. filed in response to Order Granting Motion for Leave, filed by Monarch Air Group, LLC, David Gitman. (Kon, Joshua) (Entered: 12/20/2022) |
| 12/27/2022 | 79 | Plaintiff's MOTION to Compel *Deposition* by David Gitman, Monarch Air Group, LLC. Responses due by 1/10/2023 (Attachments: # 1 Exhibit A- Deposition Transcripts of Chases Corporate Representative, Volumes I-II)(Kon, Joshua) (Entered: 12/27/2022) |
| 12/27/2022 | 80 | Unopposed MOTION TO RESET CALENDAR CALL AND TRIAL PERIOD re 56 Scheduling Order,, by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 12/27/2022) |
| 12/27/2022 | 81 | Plaintiff's MOTION to Seal *Exhibit A of Plaintiffs' Motion to Compel* re ECF No. 79 per Order authorizing the submission of this document under seal by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 12/27/2022) |
| 12/27/2022 | 82 | ORDER RESETTING TRIAL DATE AND CALENDAR CALL, ORDER granting 80 Motion Reset Trial and Calendar Call. Calendar Call reset for 4/21/2023 10:00 AM before Judge William P. Dimitrouleas. Jury Trial reset for 4/24/2023 before Judge William P. Dimitrouleas. Signed by Judge William P. Dimitrouleas on 12/27/2022. *See attached document for full details.* (cqs) (Entered: 12/27/2022) |

| | | |
|---|---|---|
| 12/30/2022 | 83 | Unopposed MOTION for Extension of Time to Respond to Plaintiffs' Motion to Compel Deposition of Chase's corporate representative re 79 Plaintiff's MOTION to Compel *Deposition* by JPMorgan Chase Bank, N.A.. Responses due by 1/13/2023 (Weinberg, Benjamin) (Entered: 12/30/2022) |
| 01/03/2023 | 84 | PAPERLESS ORDER ON DISCOVERY-RELATED MOTIONS. Plaintiffs' 81 Motion to Seal is **GRANTED**. Defendant's 83 Unopposed Motion for Extension of Time is **GRANTED IN PART**. Accordingly, Defendant must respond to Plaintiffs' 79 Motion to Compel by **Friday, January 6, 2023 at 2:00 p.m.** Lastly, because all other deadlines in the Court's Scheduling Order remain unchanged (including the discovery deadline and substantive pretrial motions deadline), *see* ECF Nos. 56 at 2, 82 at 2, the parties are strongly encouraged to resolve the issues in Plaintiffs' 79 Motion to Compel without further Court intervention. Signed by Magistrate Judge Alicia O. Valle on 1/3/2023. (jve) (Entered: 01/03/2023) |
| 01/03/2023 | | Set/Reset Deadlines/Hearings per DE 84 Order re 79 Plaintiff's MOTION to Compel *Deposition* . Responses due by 1/6/2023 (amb) (Entered: 01/03/2023) |
| 01/03/2023 | 85 | ANSWER and Affirmative Defenses to Amended Complaint by JPMorgan Chase Bank, N.A.. (Weinberg, Benjamin) (Entered: 01/03/2023) |
| 01/04/2023 | | SYSTEM ENTRY - Docket Entry 86 [misc] restricted/sealed until further notice. (1155468) (Entered: 01/04/2023) |
| 01/04/2023 | 87 | Unopposed MOTION to Seal per Local Rule 5.4 by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order) (Weinberg, Benjamin) (Entered: 01/04/2023) |
| 01/04/2023 | 88 | Statement of: Undisputed Material Facts In Support of Motion for Summary Judgment by David Gitman, Monarch Air Group, LLC (Kon, Joshua) (Entered: 01/04/2023) |
| 01/04/2023 | 89 | Plaintiff's MOTION for Partial Summary Judgment by David Gitman, Monarch Air Group, LLC. Responses due by 1/18/2023 (Kon, Joshua) (Entered: 01/04/2023) |
| 01/04/2023 | 90 | MOTION for Summary Judgment by JPMorgan Chase Bank, N.A.. Responses due by 1/18/2023 (Weinberg, Benjamin) (Entered: 01/04/2023) |
| 01/04/2023 | 91 | Statement of: Undisputed Material Facts In Support of Motion for Summary Judgment by JPMorgan Chase Bank, N.A. re 90 MOTION for Summary Judgment (Attachments: # 1 Exhibit Exhibit 1 - A. Laura Depo Transcript (Filed Under Seal), # 2 Exhibit Exhibit 2 - Deposit Account Agreement (Filed Under Seal), # 3 Exhibit Exhibit 3 - D. Gitman Depo Transcript (Filed Under Seal), # 4 Exhibit Exhibit 4 - The Stern Facts Article, # 5 Exhibit Exhibit 5 - Flight of the Monarch Article, # 6 Exhibit Exhibit 6 - Defendant's Supplemental Answers to Interrogatories (Filed Under Seal), # 7 Exhibit Exhibit 7 - Decl. of A. Lauro (Filed Under Seal), # 8 Exhibit Exhibit 8 - Message (Filed Under Seal), # 9 Exhibit Exhibit 9 - Message (Filed Under Seal), # 10 Exhibit Exhibit 10 - Message (Filed Under Seal), # 11 Exhibit Exhibit 11 - Message (Filed Under Seal), # 12 Exhibit Exhibit 12 - Message (Filed Under Seal), # 13 Exhibit Exhibit 13 - Message (Filed Under Seal), # 14 Exhibit Exhibit 14 - Message (Filed Under Seal), # 15 Exhibit Exhibit 15 - Message (Filed Under Seal), # 16 Exhibit Exhibit 16 - Message (Filed Under Seal), # 17 Exhibit Exhibit 17 - Message (Filed Under Seal), # 18 Exhibit Exhibit 18 - Message (Filed Under Seal), # 19 Exhibit Exhibit 19 - Message (Filed Under Seal), # 20 Exhibit Exhibit 20 - Message (Filed Under Seal), # 21 Exhibit Exhibit 21 - Message (Filed Under Seal), # 22 Exhibit Exhibit 22 - Message (Filed Under Seal), # 23 Exhibit Exhibit 23 - Message (Filed Under Seal), # 24 Exhibit Exhibit 24 - Message (Filed Under Seal), # 25 Exhibit Exhibit 25 - Message (Filed Under Seal), # 26 Exhibit Exhibit 26 - Message (Filed Under Seal), # 27 Exhibit Exhibit 27 - Message (Filed Under Seal), # 28 Exhibit Exhibit 28 - Message (Filed Under Seal), # 29 Exhibit Exhibit 29 - Message (Filed Under Seal), # 30 |

| | | |
|---|---|---|
| | | Exhibit Exhibit 30 - Message (Filed Under Seal), # [31] Exhibit Exhibit 31 - Message (Filed Under Seal), # [32] Exhibit Exhibit 32 - Message (Filed Under Seal), # [33] Exhibit Exhibit 33 - Message (Filed Under Seal), # [34] Exhibit Exhibit 34 - Message (Filed Under Seal), # [35] Exhibit Exhibit 35 - Message (Filed Under Seal), # [36] Exhibit Exhibit 36 - Message (Filed Under Seal), # [37] Exhibit Exhibit 37 - Message (Filed Under Seal), # [38] Exhibit Exhibit 38 - Message (Filed Under Seal), # [39] Exhibit Exhibit 39 - Message (Filed Under Seal), # [40] Exhibit Exhibit 40 - Message (Filed Under Seal), # [41] Exhibit Exhibit 41 - Message (Filed Under Seal), # [42] Exhibit Exhibit 42 - Message (Filed Under Seal), # [43] Exhibit Exhibit 43 - Message (Filed Under Seal), # [44] Exhibit Exhibit 44 - Message (Filed Under Seal), # [45] Exhibit Exhibit 45 - Message (Filed Under Seal), # [46] Exhibit Exhibit 46 - Message (Filed Under Seal), # [47] Exhibit Exhibit 47 - Message (Filed Under Seal), # [48] Exhibit Exhibit 48 - Message (Filed Under Seal), # [49] Exhibit Exhibit 49 - Message (Filed Under Seal), # [50] Exhibit Exhibit 50 - Message (Filed Under Seal), # [51] Exhibit Exhibit 51 - Message (Filed Under Seal), # [52] Exhibit Exhibit 52 - Message (Filed Under Seal), # [53] Exhibit Exhibit 53 - Message (Filed Under Seal), # [54] Exhibit Exhibit 54 - Message (Filed Under Seal), # [55] Exhibit Exhibit 55 - Message (Filed Under Seal), # [56] Exhibit Exhibit 56 - Message (Filed Under Seal), # [57] Exhibit Exhibit 57 - Message (Filed Under Seal), # [58] Exhibit Exhibit 58 - Message (Filed Under Seal), # [59] Exhibit Exhibit 59 - Message (Filed Under Seal), # [60] Exhibit Exhibit 60 - Message (Filed Under Seal), # [61] Exhibit Exhibit 61 - Message (Filed Under Seal), # [62] Exhibit Exhibit 62 - Message (Filed Under Seal), # [63] Exhibit Exhibit 63 - Message (Filed Under Seal), # [64] Exhibit Exhibit 64 - Message (Filed Under Seal), # [65] Exhibit Exhibit 65 - Message (Filed Under Seal), # [66] Exhibit Exhibit 66 - Message (Filed Under Seal), # [67] Exhibit Exhibit 67 - Message (Filed Under Seal), # [68] Exhibit Exhibit 68 Email (Filed Under Seal), # [69] Exhibit Exhibit 69 - Depo Notice (Filed Under Seal), # [70] Exhibit Exhibit 70 - Plaintiffs' Response to Interrogatories (Filed Under Seal))(Weinberg, Benjamin) (Entered: 01/04/2023) |
| 01/05/2023 | [92] | ORDER granting [87] Motion to File Under Seal. Signed by Judge William P. Dimitrouleas on 1/5/2023. *See attached document for full details.* (cqs) (Entered: 01/05/2023) |
| 01/05/2023 | | SYSTEM ENTRY - Docket Entry 93 [motion] restricted/sealed until further notice. (1135626) (Entered: 01/05/2023) |
| 01/05/2023 | | SYSTEM ENTRY - Docket Entry 94 [misc] restricted/sealed until further notice. (1135626) (Entered: 01/05/2023) |
| 01/06/2023 | [95] | Unopposed MOTION to Seal *Response to Motion to Compel* per Local Rule 5.4 by JPMorgan Chase Bank, N.A.. (Attachments: # [1] Text of Proposed Order) (Weinberg, Benjamin) (Entered: 01/06/2023) |
| 01/06/2023 | [96] | RESPONSE in Opposition re [79] Plaintiff's MOTION to Compel *Deposition* filed by JPMorgan Chase Bank, N.A.. Replies due by 1/13/2023. (Attachments: # [1] Exhibit Exhibit A - Deposition Notice (Filed Under Seal), # [2] Exhibit Exhibit B - Defendant's Supplemental Answers to Interrogatories (Filed Under Seal))(Weinberg, Benjamin) (Entered: 01/06/2023) |
| 01/13/2023 | [97] | Plaintiff's REPLY to Response to Motion re [79] Plaintiff's MOTION to Compel *Deposition* filed by David Gitman, Monarch Air Group, LLC. (Attachments: # [1] Exhibit 2)(Kon, Joshua) (Entered: 01/13/2023) |
| 01/17/2023 | [98] | NOTICE by JPMorgan Chase Bank, N.A. *of Supplemental Production* (Weinberg, Benjamin) (Entered: 01/17/2023) |
| 01/17/2023 | [99] | MOTION for Extension of Time to File Response/Reply/Answer as to [90] MOTION for Summary Judgment , [91] Statement,,,,,,,,,,,,,,,,,,, *and Leave to file AMended Motion for* |

| | | *Summary Judgment and Statement of Undisputed Material Facts* by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 01/17/2023) |
|---|---|---|
| 01/18/2023 | [100](#) | ORDER granting [99](#) Motion for Extension of Time to File. Amended Pleadings due by 2/17/2023. Discovery due by 2/10/2023. In Limine Motions due by 5/5/2023. Pretrial Stipulation due by 5/5/2023. Responses due by 2/17/2023 Calendar Call set for 5/19/2023 10:00 AM before Judge William P. Dimitrouleas. Jury Trial set for 5/22/2023 in Fort Lauderdale Division before Judge William P. Dimitrouleas. Signed by Judge William P. Dimitrouleas on 1/18/2023. *See attached document for full details.* (cqs) (Entered: 01/18/2023) |
| 02/07/2023 | 101 | PAPERLESS ORDER ON DISCOVERY MOTIONS [79](#) and [95](#) . Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:<br><br>(i) [79](#) Plaintiffs' Motion to Compel is **DENIED**. In the Motion, Plaintiffs seek a second deposition of Defendant's corporate representative, arguing that the designee was not properly prepared to testify on five of twelve noticed topics: Topics 7, 8, 10, 11, and 12. (ECF No. 79 at 6); *see also* Fed. R. Civ. P. 30(b)(6).<br><br>Under Rule 30(b)(6), an organization has a duty to present and prepare its designee to the extent matters are reasonably available. *Kartagener v. Carnival Corp.*, 380 F. Supp. 3d 1290, 1293-94 (S.D. Fla. 2019) (internal quotation omitted). Nonetheless, absolute perfection is not required of a Rule 30(b)(6) witness, and "[t]he mere fact that a designee could not answer every question on a certain topic does not necessarily mean that the corporation failed to comply with its obligation." *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012). Rather, to warrant relief, the shortcomings in the designee's testimony must be egregious and not merely lacking in desired specificity. *Taffe v. Israel*, No. 16-CV-61595, 2017 WL 1709693, at *2 (S.D. Fla. May 3, 2017) (citations omitted).<br><br>Against this legal backdrop, and having reviewed the transcript of the challenged deposition, *see generally* (ECF No. 79-1) (the "Dep."), the undersigned finds that a second deposition of Defendant's designee is not warranted. As to Topics 7 and 12, Defendant's designee testified that the GFIU's recommendation was based on: (i) a review of transactions involving Monarch, (ii) a review of negative media, and (iii) an external referral. Dep. 161:4-11. The undersigned finds that the designee's testimony on these Topics falls within the acceptable limits of Rule 30(b)(6). *See Fuentes v. Classica Cruise Operator Ltd., Inc.*, No. 19-CV-60883, 2020 WL 6270956, at *5 (S.D. Fla. Sept. 10, 2020). Similarly, as to Topics 8, 10, and 11, although Defendant's corporate representative was unable to provide certain details, the undersigned finds that the designee's overall preparation and testimony on these Topics satisfy Rule 30(b)(6)'s requirements. *See id.* Lastly, because the parties' positions were substantially justified, each will bear its own fees and costs in connection with the Motion. *See* Fed. R. Civ. P. 37(a)(5)(B) (prohibiting courts from ordering payment of fees "if the motion was substantially justified").<br><br>(ii) [95](#) Defendant's Unopposed Motion to Seal its Response to Plaintiffs' [79](#) Motion to Compel is **GRANTED**. Pursuant to the parties' Confidentiality Order, *see* ECF No. [47](#) , Defendant's Response shall be sealed. Signed by Magistrate Judge Alicia O. Valle on 2/7/2023. (jve) (Entered: 02/07/2023) |
| 02/07/2023 | | SYSTEM ENTRY - Docket Entry 102 [misc] restricted/sealed until further notice. (1135626) (Entered: 02/07/2023) |
| 02/17/2023 | [103](#) | MOTION for Extension of Time to file response to Defendant's motion for summary judgment and statement of undisputed material facts, and to file amended motion for summary judgment and amended statement of undisputed material facts re [100](#) Order on |

| | | Motion for Extension of Time to File Response/Reply/Answer,, by David Gitman, Monarch Air Group, LLC. Responses due by 3/3/2023 (Attachments: # 1 Text of Proposed Order)(Kudan, Yosef) (Entered: 02/17/2023) |
|---|---|---|
| 02/17/2023 | 104 | ORDER granting 103 Motion for Extension of Time. Responses due by 2/21/2023 Signed by Judge William P. Dimitrouleas on 2/17/2023. *See attached document for full details.* (cqs) (Entered: 02/21/2023) |
| 02/21/2023 | 105 | (STRICKEN) Amended MOTION for Partial Summary Judgment by David Gitman, Monarch Air Group, LLC. Responses due by 3/7/2023 (Kon, Joshua) Modified on 2/22/2023 (cqs). (Entered: 02/21/2023) |
| 02/21/2023 | 106 | (STRICKEN)Statement of: Material Facts by David Gitman, Monarch Air Group, LLC re 105 Amended MOTION for Partial Summary Judgment (Kon, Joshua) Modified on 2/22/2023 (cqs). (Entered: 02/21/2023) |
| 02/21/2023 | 107 | Plaintiff's MOTION for Leave to File *Evidentiary Material Under Seal* by David Gitman, Monarch Air Group, LLC. (Attachments: # 1 Text of Proposed Order Granting Motion for Leave to File Under Seal)(Kon, Joshua) (Entered: 02/21/2023) |
| 02/21/2023 | 108 | RESPONSE in Opposition re 90 MOTION for Summary Judgment filed by David Gitman, Monarch Air Group, LLC. Replies due by 2/28/2023. (Kon, Joshua) (Entered: 02/21/2023) |
| 02/21/2023 | 109 | Plaintiff's RESPONSE to 91 Statement,,,,,,,,,,,,,,,, by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 02/21/2023) |
| 02/22/2023 | 110 | ORDER denying without prejudice 107 Motion for Leave to File. Signed by Judge William P. Dimitrouleas on 2/22/2023. *See attached document for full details.* (cqs) (Entered: 02/22/2023) |
| 02/22/2023 | 111 | ORDER STRIKING 105 Motion for Partial Summary Judgment filed by Monarch Air Group, LLC, David Gitman, 106 Statement filed by Monarch Air Group, LLC, David Gitman Signed by Judge William P. Dimitrouleas on 2/22/2023. *See attached document for full details.* (cqs) (Entered: 02/22/2023) |
| 02/22/2023 | 112 | Defendant's MOTION for Extension of Time to File Response/Reply/Answer as to 108 Response in Opposition to Motion *for Summary Judgment* by JPMorgan Chase Bank, N.A.. (Weinberg, Benjamin) (Entered: 02/22/2023) |
| 02/23/2023 | 113 | ORDER granting 112 Motion for Extension of Time to File Reply to Motion. Replies due by 3/3/2023. Signed by Judge William P. Dimitrouleas on 2/23/2023. *See attached document for full details.* (cqs) (Entered: 02/23/2023) |
| 02/24/2023 | 114 | Renewed MOTION for Leave to File *Under Seal* by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 02/24/2023) |
| 02/24/2023 | 115 | Plaintiff's MOTION for Sanctions by David Gitman, Monarch Air Group, LLC. (Attachments: # 1 Exhibit A: Plaintiffs First Request for Production, # 2 Exhibit B: Deposition Transcript of Michael Biratsis, # 3 Exhibit C: February 23, 2023 Email from Mr. Weinberg)(Kon, Joshua) (Entered: 02/24/2023) |
| 02/27/2023 | 116 | ORDER granting 114 Motion for Leave to File Under Seal. *Clerks Notice: Filer must separately re-file the amended pleading pursuant to Local Rule 15.1, unless otherwise ordered by the Judge.* Signed by Judge William P. Dimitrouleas on 2/27/2023. *See attached document for full details.* (cqs) (Entered: 02/27/2023) |
| 02/27/2023 | 117 | ORDER REFERRING 115 Plaintiff's MOTION for Sanctions filed by Monarch Air Group, LLC, David Gitman. Motions referred to Judge Alicia O. Valle. Signed by Judge |

| | | |
|---|---|---|
| | | William P. Dimitrouleas on 2/27/2023. *See attached document for full details.* (cqs) (Entered: 02/27/2023) |
| 02/27/2023 | | SYSTEM ENTRY - Docket Entry 118 [misc] restricted/sealed until further notice. (1155468) (Entered: 02/27/2023) |
| 02/27/2023 | 119 | (STRICKEN)Second MOTION for Partial Summary Judgment by David Gitman, Text Modified on 2/28/2023 (cqs). (Entered: 02/27/2023) |
| 02/27/2023 | 120 | (STRICKEN) Statement of: UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT by David Gitman, Monarch Air Group, LLC re 119 Second MOTION for Partial Summary Judgment (Kon, Joshua) Text Modified on 2/28/2023 (cqs). (Entered: 02/27/2023) |
| 02/28/2023 | 121 | ORDER STRIKING 119 Motion for Partial Summary Judgment filed by Monarch Air Group, LLC, David Gitman, 120 Statement filed by Monarch Air Group, LLC, David Gitman Signed by Judge William P. Dimitrouleas on 2/28/2023. *See attached document for full details.* (cqs) (Entered: 02/28/2023) |
| 03/01/2023 | 122 | MOTION to Strike 115 Plaintiff's MOTION for Sanctions by JPMorgan Chase Bank, N.A.. Responses due by 3/15/2023 (Weinberg, Benjamin) (Entered: 03/01/2023) |
| 03/01/2023 | 123 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 115 Plaintiff's MOTION for Sanctions by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order)(Weinberg, Benjamin) (Entered: 03/01/2023) |
| 03/02/2023 | 124 | PAPERLESS ORDER GRANTING IN PART AND DENYING IN PART 122 Defendant's Motion to Strike Plaintiff's Motion for Sanctions and/or Unopposed Motion for Extension of Page Limitation and Time. Defendant's unopposed request for an extension of time to respond to 115 Plaintiff's Motion for Sanctions within 122 is **GRANTED**. Accordingly, Defendant's Response to 115 Plaintiff's Motion for Sanctions will be: (i) limited to 11 pages, using 1.5 spacing; and (ii) due by **March 8, 2023**. Defendant's Motion to Strike within 122 is **DENIED**. Signed by Magistrate Judge Alicia O. Valle on 3/2/2023. (sd01) (Entered: 03/02/2023) |
| 03/02/2023 | 125 | PAPERLESS ORDER DENYING AS MOOT Defendant's 123 Unopposed Motion for Extension of Time to File Response to 115 Plaintiff's Motion for Sanctions, based on the Court's Paperless Order at ECF No. 124 . Signed by Magistrate Judge Alicia O. Valle on 3/2/2023. (sd01) (Entered: 03/02/2023) |
| 03/02/2023 | 126 | Plaintiff's MOTION for Reconsideration re 121 Order Striking, *SECOND AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT* by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 03/02/2023) |
| 03/02/2023 | 127 | (WITHDRAWN PER DE#128)Amended MOTION for Partial Summary Judgment by David Gitman, Monarch Air Group, LLC. Responses due by 3/16/2023 (Kon, Joshua) Text Modified on 3/3/2023 (cqs). (Entered: 03/02/2023) |
| 03/02/2023 | 128 | NOTICE OF WITHDRAWAL OF MOTION by David Gitman, Monarch Air Group, LLC re 127 Amended MOTION for Partial Summary Judgment filed by Monarch Air Group, LLC, David Gitman (Kon, Joshua) (Entered: 03/02/2023) |
| 03/02/2023 | 129 | NOTICE by David Gitman, Monarch Air Group, LLC re 126 Plaintiff's MOTION for Reconsideration re 121 Order Striking, *SECOND AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT* (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Kon, Joshua) (Entered: 03/02/2023) |
| 03/02/2023 | | Reset Deadlines Per DE#124. Responses due by 3/8/2023 (cqs) (Entered: 03/03/2023) |

| 03/03/2023 | [130] | ORDER denying [126] Motion for Reconsideration filed by Monarch Air Group, LLC, David Gitman. Signed by Judge William P. Dimitrouleas on 3/3/2023. *See attached document for full details.* (cqs) (Entered: 03/03/2023) |
|---|---|---|
| 03/03/2023 | [131] | REPLY to Response to Motion re [90] MOTION for Summary Judgment filed by JPMorgan Chase Bank, N.A.. (Weinberg, Benjamin) (Entered: 03/03/2023) |
| 03/06/2023 | [132] | Unopposed MOTION for Extension of Time to Rebut Plaintiffs' Expert Report by JPMorgan Chase Bank, N.A.. Responses due by 3/20/2023 (Weinberg, Benjamin) (Entered: 03/06/2023) |
| 03/07/2023 | [133] | ORDER denying as moot [132] Motion for Extension of Time. Signed by Judge William P. Dimitrouleas on 3/7/2023. *See attached document for full details.* (cqs) (Entered: 03/07/2023) |
| 03/08/2023 | [134] | Unopposed MOTION to Seal *Exhibits to Defendant's Response to Plaintiffs' Motion for Sanctions* per Local Rule 5.4 by JPMorgan Chase Bank, N.A.. (Attachments: # [1] Text of Proposed Order) (Weinberg, Benjamin) (Entered: 03/08/2023) |
| 03/08/2023 | 135 | PAPERLESS ORDER GRANTING [134] Defendant's Unopposed Motion for Leave to File Exhibits Under Seal. Accordingly, pursuant to [47] the parties' Confidentiality Order, Defendant may file the exhibits to its Response to [115] Plaintiff's Motion for Sanctions under seal. Signed by Magistrate Judge Alicia O. Valle on 3/8/2023. (jve) (Entered: 03/08/2023) |
| 03/08/2023 | [136] | RESPONSE in Opposition re [115] Plaintiff's MOTION for Sanctions filed by JPMorgan Chase Bank, N.A.. Replies due by 3/15/2023. (Attachments: # [1] Exhibit Exhibit A - (Filed Under Seal) R-JPMC_00001740-1904, # [2] Exhibit Exhibit B - (Filed Under Seal) JPMC_00001929-2400, # [3] Exhibit Exhibit C - (Filed Under Seal) JPMC_0002401-2494, # [4] Exhibit Exhibit D - (Filed Under Seal) Mortgage)(Weinberg, Benjamin) (Entered: 03/08/2023) |
| 03/08/2023 | | SYSTEM ENTRY - Docket Entry 137 [misc] restricted/sealed until further notice. (1135626) (Entered: 03/08/2023) |
| 03/14/2023 | [138] | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to [136] Response in Opposition to Motion, by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 03/14/2023) |
| 03/14/2023 | 139 | PAPERLESS ORDER GRANTING [138] Plaintiffs' Unopposed Motion for Extension of Time. Accordingly, Plaintiffs' Reply is due by **March 22, 2023**. Signed by Magistrate Judge Alicia O. Valle on 3/14/2023. (jve) (Entered: 03/14/2023) |
| 03/14/2023 | [140] | MOTION for clarification [133] Order on Motion for Extension of Time *and/or Unopposed Motion to Extend Deadline* by JPMorgan Chase Bank, N.A.. Responses due by 3/28/2023 (Attachments: # [1] Exhibit Exhibit A - Email)(Weinberg, Benjamin) (Entered: 03/14/2023) |
| 03/15/2023 | | Reset Deadlines Per DE#139. Replies due by 3/22/2023. (cqs) (Entered: 03/15/2023) |
| 03/15/2023 | [141] | ORDER denying [140] Motion for Clarification. Signed by Judge William P. Dimitrouleas on 3/15/2023. *See attached document for full details.* (cqs) (Entered: 03/16/2023) |
| 03/20/2023 | [142] | Unopposed MOTION to Seal *Exhibits to Defendant's Daubert Motion to Exclude Expert Opinions and Testimony* per Local Rule 5.4 by JPMorgan Chase Bank, N.A.. (Attachments: # [1] Text of Proposed Order) (Weinberg, Benjamin) (Entered: 03/20/2023) |
| 03/20/2023 | [143] | MOTION in Limine *To Exclude Expert Opinions and Testimony* by JPMorgan Chase Bank, N.A.. (Attachments: # [1] Exhibit Exhibit A (Filed Under Seal), # [2] Exhibit Exhibit B (Filed Under Seal), # [3] Exhibit Exhibit C (Filed Under Seal), # [4] Exhibit Exhibit D |

| | | (Filed Under Seal), # 5 Errata Exhibit E (Filed Under Seal), # 6 Exhibit Exhibit F (Filed Under Seal), # 7 Exhibit Exhibit G (Filed Under Seal), # 8 Exhibit Exhibit H (Filed Under Seal))(Weinberg, Benjamin) (Entered: 03/20/2023) |
|---|---|---|
| 03/21/2023 | 144 | ORDER granting 142 Motion to File Under Seal. Signed by Judge William P. Dimitrouleas on 3/21/2023. *See attached document for full details.* (cqs) (Entered: 03/21/2023) |
| 03/21/2023 | | SYSTEM ENTRY - Docket Entry 145 [misc] restricted/sealed until further notice. (1135626) (Entered: 03/21/2023) |
| 03/22/2023 | 146 | STRICKEN. Plaintiff's REPLY to 136 Response in Opposition to Motion, *[DE 115]* by David Gitman, Monarch Air Group, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Kon, Joshua) Modified per DE 150 Order on 3/28/2023 (ebz). (Entered: 03/22/2023) |
| 03/23/2023 | 147 | MOTION to Strike 146 Response/Reply (Other) by JPMorgan Chase Bank, N.A.. Responses due by 4/6/2023 (Weinberg, Benjamin) (Entered: 03/23/2023) |
| 03/24/2023 | 148 | ORDER TO SHOW CAUSE: Show Cause Response due by 3/31/2023. Signed by Judge William P. Dimitrouleas on 3/24/2023. *See attached document for full details.* (scn) (Entered: 03/24/2023) |
| 03/24/2023 | 149 | MEDIATION REPORT by Harry Schafer. Disposition: Adjourned. Mediation held/partially held via video-conference. (Kon, Joshua) (Entered: 03/24/2023) |
| 03/27/2023 | 150 | PAPERLESS ORDER GRANTING 147 Defendant's Motion to Strike (the "Motion"). In the Motion, Defendant seeks to strike 146 Plaintiffs' 10-page Reply to 115 the Motion for Sanctions for failure to comply with the undersigned's Discovery Procedures, which limits replies to five double-spaced pages. *See ECF No. 147* at 1-2; *see also* https://www.flsd.uscourts.gov/content/judge-alicia-o-valle. Despite previous filings citing to the undersigned's Discovery Procedures, *see, e.g.,* ECF No. 122 at 1, Plaintiffs filed their 146 10-page Reply in excess of the undersigned's page limitation. *See generally* ECF No. 146 . Accordingly, 146 Plaintiff's Reply is **STRICKEN**. Plaintiffs may file a **five-page, double-spaced** reply to 115 the Motion for Sanctions by **March 29, 2023**. Failure to comply with this Order or the undersigned's Discovery Procedures may result in a denial of the relief requested in the 115 the Motion for Sanctions or other appropriate sanctions. Signed by Magistrate Judge Alicia O. Valle on 3/27/2023. (jve) (Entered: 03/27/2023) |
| 03/27/2023 | | Set/Reset Deadlines/Hearings as to 115 Plaintiff's MOTION for Sanctions . Per DE 150 Order. Replies due by 3/29/2023. (ebz) (Entered: 03/28/2023) |
| 03/28/2023 | 151 | Plaintiff's MOTION for Leave to File Excess Pages by David Gitman, Monarch Air Group, LLC. (Attachments: # 1 Exhibit A)(Kon, Joshua) (Entered: 03/28/2023) |
| 03/29/2023 | 152 | PAPERLESS ORDER DENYING 151 Plaintiffs' Motion to Exceed Page Limits. Consistent with the Court's prior ruling at ECF No. 150, the undersigned's Discovery Procedures apply to the discovery-related dispute in the 115 Motion for Sanctions. Further, Plaintiffs have not shown good cause to exceed the page limit. Accordingly, Plaintiffs' Reply to the 115 Motion for Sanctions (which is already an exception to the undersigned's Discovery Procedures) must be limited as set forth in the Court's prior Order at ECF No. 150. Signed by Magistrate Judge Alicia O. Valle on 3/29/2023. (jve) (Entered: 03/29/2023) |
| 03/29/2023 | 153 | Plaintiff's REPLY to Response to Motion re 115 Plaintiff's MOTION for Sanctions filed by David Gitman, Monarch Air Group, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Kon, Joshua) (Entered: 03/29/2023) |

| 03/31/2023 | [154](#) | Notice of Supplemental Authority re 90 MOTION for Summary Judgment by David Gitman, Monarch Air Group, LLC (Attachments: # 1 Exhibit A) (Kon, Joshua) (Entered: 03/31/2023) |
|---|---|---|
| 04/03/2023 | [155](#) | RESPONSE to Motion re 143 MOTION in Limine *To Exclude Expert Opinions and Testimony of Michael Spindler* filed by David Gitman, Monarch Air Group, LLC. Replies due by 4/10/2023. (Attachments: # 1 Exhibit 1)(Kon, Joshua) (Entered: 04/03/2023) |
| 04/04/2023 | [156](#) | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 143 MOTION in Limine *To Exclude Expert Opinions and Testimony* by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order)(Weinberg, Benjamin) (Entered: 04/04/2023) |
| 04/05/2023 | [157](#) | ORDER granting 156 Motion for Extension of Time to File Reply to Motion. Replies due by 4/14/2023. Signed by Judge William P. Dimitrouleas on 4/5/2023. *See attached document for full details.* (cqs) (Entered: 04/05/2023) |
| 04/14/2023 | [158](#) | REPLY to Response to Motion re 143 MOTION in Limine *To Exclude Expert Opinions and Testimony* filed by JPMorgan Chase Bank, N.A.. (Weinberg, Benjamin) (Entered: 04/14/2023) |
| 04/22/2023 | [159](#) | Exhibit and Witness List by JPMorgan Chase Bank, N.A... (Leon, Derek) (Entered: 04/22/2023) |
| 04/27/2023 | [160](#) | Defendant's MOTION in Limine *to include Congressional Subpoena in Trial Exhibits* by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Leon, Derek) (Entered: 04/27/2023) |
| 04/27/2023 | [161](#) | Defendant's MOTION to Seal *Motion in Limine and accompanying exhibits* per Local Rule 5.4 by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order Order Granting JPMC's Unopposed Motion to Leave to File Motion in Limine Under Seal) (Leon, Derek) (Entered: 04/27/2023) |
| 04/27/2023 | [162](#) | ORDER DENYING MOTION WITHOUT PREJUDICE. ORDER denying 160 Motion in Limine. Accordingly, it is ORDERED AND ADJUDGED that the Motion [DE 160] is hereby DENIED WITHOUT PREJUDICE to file a motion that complies with the requirements of S.D. Fla. L.R. 7.1(a)(3), which requires the moving party to certify that it has conferred, or describes a reasonable effort to confer, with the parties affected in a good faith effort to resolve the dispute. Signed by Judge William P. Dimitrouleas on 4/27/2023. *See attached document for full details.* (nan) (Entered: 04/27/2023) |
| 04/27/2023 | [163](#) | Defendant's MOTION in Limine *to Include Congressional Subpoena in Trial Exhibits* by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Exhibit Exhibit A (Filed Under Seal), # 2 Exhibit Exhibit B (Filed Under Seal), # 3 Exhibit Exhibit C (Filed Under Seal))(Leon, Derek) (Entered: 04/27/2023) |
| 04/28/2023 | [164](#) | ORDER granting 161 Motion to Seal. Signed by Judge William P. Dimitrouleas on 4/28/2023. *See attached document for full details.* (pes) (Entered: 04/28/2023) |
| 04/28/2023 | | SYSTEM ENTRY - Docket Entry 165 [motion] restricted/sealed until further notice. (926115) (Entered: 04/28/2023) |
| 04/28/2023 | [166](#) | ORDER denying 163 Motion in Limine; denying 165 Sealed Motion. Signed by Judge William P. Dimitrouleas on 4/28/2023. *See attached document for full details.* (amb) (Entered: 05/01/2023) |
| 05/01/2023 | [167](#) | Withdrawn per DE 168 -Renewed MOTION for Leave to File *Under Seal* by David Gitman, Monarch Air Group, LLC. (Attachments: # 1 Text of Proposed Order Proposed |

| | | Order)(Stok, Robert) Modified text on 5/2/2023 (drz). (Entered: 05/01/2023) |
|---|---|---|
| 05/01/2023 | 168 | NOTICE OF WITHDRAWAL OF MOTION by David Gitman, Monarch Air Group, LLC re 167 Renewed MOTION for Leave to File *Under Seal* filed by Monarch Air Group, LLC, David Gitman (Stok, Robert) (Entered: 05/01/2023) |
| 05/01/2023 | 169 | MOTION for Leave to File *Under Seal* by David Gitman, Monarch Air Group, LLC. (Attachments: # 1 Text of Proposed Order Propose Order Granting Plaintiff Motion for Leave to File Under Seal)(Kon, Joshua) (Entered: 05/01/2023) |
| 05/01/2023 | 170 | Second MOTION for Sanctions by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 05/01/2023) |
| 05/02/2023 | 171 | ORDER REFERRING 170 Second MOTION for Sanctions filed by Monarch Air Group, LLC, David Gitman, including 169 MOTION for Leave to File *Under Seal* filed by Monarch Air Group, LLC, David Gitman, Motions referred to Judge Alicia O. Valle. Signed by Judge William P. Dimitrouleas on 5/2/2023. *See attached document for full details.* (ls) (Entered: 05/02/2023) |
| 05/02/2023 | 172 | PAPERLESS ORDER GRANTING 169 Plaintiffs' Unopposed Motion for Leave to File Under Seal. Pursuant to the parties' Confidentiality Order, *see* ECF No. 47 , Plaintiffs may file evidentiary material in support of their 170 Second Motion for Sanctions under seal. Signed by Magistrate Judge Alicia O. Valle on 5/2/2023. (jve) (Entered: 05/02/2023) |
| 05/02/2023 | 173 | PAPERLESS ORDER SETTING TELEPHONIC HEARING ON 170 Plaintiffs' Second Motion for Sanctions (the "Motion"). Accordingly, a telephonic hearing on the Motion is scheduled for **Thursday, May 11, 2023 at 2:00 p.m.** in the Fort Lauderdale Division before U.S. Magistrate Judge Alicia O. Valle. Shortly before the hearing time, the parties must dial into the meeting using the Zoom platform by calling 1-646-828-7666 and, when prompted, enter Meeting ID 160 632 8616 and passcode 1234. The hearing will be solely telephonic with no camera access. Signed by Magistrate Judge Alicia O. Valle on 5/2/2023. (jve) (Entered: 05/02/2023) |
| 05/02/2023 | | SYSTEM ENTRY - Docket Entry 174 [misc] restricted/sealed until further notice. (1155468) (Entered: 05/02/2023) |
| 05/02/2023 | 175 | PAPERLESS ORDER GRANTING IN PART AND DENYING IN PART 115 Plaintiffs' Motion for Sanctions (the "Motion"). In the Motion, Plaintiffs seek monetary and merits-based sanctions against Defendant under Federal Rule of Civil Procedure ("FRCP") 37 for Defendant's purportedly deficient: (i) January and February 2023 document productions (the "document productions"); and (ii) preparation of its FRCP 30(b)(6) corporate representative on deposition Topics 9 and 10. *See* ECF Nos. 115 at 3-6, 153 at 6. As the movants, Plaintiffs bear the burden of establishing that: (i) Defendant committed a discovery violation; and (ii) the requested sanctions are appropriate by a preponderance of the evidence. *Cutlass Collieries, LLC v. Jones*, No. 20-CV-80001, 2021 WL 6135152, at *1 (S.D. Fla. Dec. 7, 2021).<br><br>Upon a review of the Motion, relevant discovery history, and relevant case law, Plaintiffs have not established that Defendant's untimely document productions were willful, reckless, or in bad faith so as to justify the extreme case-dispositive sanctions requested in the Motion (such as "preventing [Chase] from supporting any of its defenses or opposing Plaintiffs' claims with the documents that it disclosed after the discovery cutoff" and striking Chase's first, second, and sixth affirmative defenses). *See* ECF No. 115 at 8; *see also DeepGulf Inc. v. Moszkowski*, 333 F.R.D. 249, 253-54 (N.D. Fla. 2019) (setting forth the factors courts consider when determining whether extreme sanctions are warranted). Nor have Plaintiffs established any lasting prejudice resulting from the untimely document productions, as they effectively deposed the FRCP 30(b)(6) witness regarding |

the document productions. *See generally* ECF No. 115-2. Accordingly, Plaintiffs' request for merits-based sanctions, *see* ECF No. [115](#) at 8, is **DENIED**. That said, however, Plaintiffs' request for fees and costs incurred in connection with their [99](#) Motion for Extension of Time, the February 2023 FRCP 30(b)(6) deposition, and the instant Motion, *see* ECF No. [115](#) at 8, is **GRANTED**. Within **seven days** from the date of this Order, the parties must telephonically meet and confer in an attempt to resolve the fees issue. If necessary, Plaintiffs may seek further relief from the Court, attaching documentary evidence for the requested fees and costs. Lastly, having reviewed the deposition transcript, the undersigned finds that the designee's preparation and testimony satisfy the requirements of FRCP 30(b)(6). *See, e.g.*, ECF No. 115-2 at 134:18-25-135:1-16; *see also* ECF Nos. [115](#) at 3-6, [153](#) at 6; *Fuentes v. Classica Cruise Operator Ltd., Inc.*, No. 19-CV-60883, 2020 WL 6270956, at *2, *5 (S.D. Fla. Sept. 10, 2020). Signed by Magistrate Judge Alicia O. Valle on 5/2/2023. (jve) (Entered: 05/02/2023)

| | | |
|---|---|---|
| 05/05/2023 | [176](#) | Unopposed MOTION for Leave to File *Under Seal* by David Gitman, Monarch Air Group, LLC. (Attachments: # [1](#) Text of Proposed Order)(Kon, Joshua) (Entered: 05/05/2023) |
| 05/05/2023 | [177](#) | Plaintiff's MOTION in Limine *RE: AML Documents* by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) Modified text on 5/5/2023 (kpe). (Entered: 05/05/2023) |
| 05/05/2023 | [178](#) | Plaintiff's MOTION in Limine *RE: QUALIFIED PRIVILEGE DEFENSE* by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 05/05/2023) |
| 05/05/2023 | [179](#) | Joint MOTION for Extension of Time to File Pretrial Stipulation by David Gitman, Monarch Air Group, LLC. Responses due by 5/19/2023 (Kon, Joshua) (Entered: 05/05/2023) |
| 05/05/2023 | [180](#) | Defendant's MOTION to Seal *Motion in Limine and accompanying exhibits* per Local Rule 5.4 by JPMorgan Chase Bank, N.A.. (Attachments: # [1](#) Text of Proposed Order Order Granting JPMorgan Chase Bank, N.A.'s Unopposed Motion for Leave to File Motion in Limine Under Seal) (Weinberg, Benjamin) (Entered: 05/05/2023) |
| 05/05/2023 | [181](#) | MOTION in Limine by JPMorgan Chase Bank, N.A.. (Attachments: # [1](#) Exhibit Exhibit A - Plaintiffs' Witness and Exhibit List (Filed Under Seal), # [2](#) Exhibit Exhibit B - Deposition Transcript (Filed Under Seal), # [3](#) Exhibit Exhibit C - D. Gitman's Mortgage Payment (Filed Under Seal), # [4](#) Exhibit Exhibit D - JPMC_00001929 and Pls' Trial Ex. 1 (Filed Under Seal))(Weinberg, Benjamin) (Entered: 05/05/2023) |
| 05/08/2023 | [182](#) | ORDER granting [179](#) Motion for Extension of Time. Pretrial Stipulation due by 5/8/2023. Signed by Judge William P. Dimitrouleas on 5/8/2023. *See attached document for full details.* (cqs) (Entered: 05/08/2023) |
| 05/08/2023 | [183](#) | ORDER granting [176](#) Motion to File Under Seal. Signed by Judge William P. Dimitrouleas on 5/8/2023. *See attached document for full details.* (cqs) (Entered: 05/08/2023) |
| 05/08/2023 | [184](#) | ORDER granting [180](#) Motion to file Under Seal. Signed by Judge William P. Dimitrouleas on 5/8/2023. *See attached document for full details.* (cqs) (Entered: 05/08/2023) |
| 05/08/2023 | | SYSTEM ENTRY - Docket Entry 185 [misc] restricted/sealed until further notice. (1155468) (Entered: 05/08/2023) |
| 05/08/2023 | [186](#) | ORDER REFERRING PART OF MOTION IN LIMINE TO MAGISTRATE JUDGE [181](#) MOTION in Limine filed by JPMorgan Chase Bank, N.A.. Motions referred to Judge Alicia O. Valle. Signed by Judge William P. Dimitrouleas on 5/8/2023. *See attached document for full details.* (cqs) (Entered: 05/08/2023) |

| 05/08/2023 | | SYSTEM ENTRY - Docket Entry 187 [motion] restricted/sealed until further notice. (1135626) (Entered: 05/08/2023) |
|---|---|---|
| 05/08/2023 | 188 | Defendant's MOTION to Seal *Response to Plaintiffs' Second Motion for Sanctions* per Local Rule 5.4 by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order Proposed Order on Defendant's Motion for Leave to file Response to Plaintiff's Second Motion for Sanctions) (Weinberg, Benjamin) (Entered: 05/08/2023) |
| 05/08/2023 | 189 | PAPERLESS ORDER SETTING TELEPHONIC HEARING AND REQUIRING EXPEDITED RESPONSE TO 187 Defendant's Motion in Limine (the "Motion"). Accordingly, Plaintiffs must respond to the Rule 26 arguments contained in Sections I.B.3, I.B.13, and I.B.16 of the Motion by **May 10, 2023**. Moreover, the Motion is added to the telephonic hearing on 170 Plaintiffs' Second Motion for Sanctions scheduled for **May 11, 2023 at 2:00 p.m.** *See* ECF No. 173. Signed by Magistrate Judge Alicia O. Valle on 5/8/2023. (jve) (Entered: 05/08/2023) |
| 05/08/2023 | 190 | PAPERLESS ORDER GRANTING 188 Defendant's Unopposed Motion for Leave to File Under Seal. Pursuant to the parties' Confidentiality Order, *see* ECF No. 47 , Defendant may file its Response to 170 Plaintiffs' Second Motion for Sanctions under seal. Signed by Magistrate Judge Alicia O. Valle on 5/8/2023. (jve) (Entered: 05/08/2023) |
| 05/08/2023 | 191 | RESPONSE in Opposition re 170 Second MOTION for Sanctions filed by JPMorgan Chase Bank, N.A.. Replies due by 5/15/2023. (Weinberg, Benjamin) (Entered: 05/08/2023) |
| 05/08/2023 | | SYSTEM ENTRY - Docket Entry 192 [motion] restricted/sealed until further notice. (1135626) (Entered: 05/08/2023) |
| 05/08/2023 | 193 | PRETRIAL STIPULATION *Joint Pretrial Stipulation* by JPMorgan Chase Bank, N.A. (Attachments: # 1 Exhibit Composite Exhibit 1 - Witness and Exhibit Lists)(Weinberg, Benjamin) (Entered: 05/08/2023) |
| 05/09/2023 | | Reset Deadlines Per DE#189. Responses due by 5/10/2023 (cqs) (Entered: 05/09/2023) |
| 05/09/2023 | 194 | Clerk's Notice to Filer re 192 SEALED MOTION: **Sealed Document Filed Electronically**; ERROR - Document is NOT a Motion. Correction has been made. It is not necessary to refile the document. (pes) (Entered: 05/09/2023) |
| 05/09/2023 | 195 | Objections *to Plaintiffs' Exhibits* by JPMorgan Chase Bank, N.A.. (Weinberg, Benjamin) (Entered: 05/09/2023) |
| 05/10/2023 | 196 | RESPONSE in Opposition re 181 MOTION in Limine filed by David Gitman, Monarch Air Group, LLC. Replies due by 5/17/2023. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Kon, Joshua) (Entered: 05/10/2023) |
| 05/10/2023 | | SYSTEM ENTRY - Docket Entry 197 [misc] restricted/sealed until further notice. (1155468) (Entered: 05/10/2023) |
| 05/10/2023 | 198 | Plaintiff's REPLY to Response to Motion re 170 Second MOTION for Sanctions filed by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 05/10/2023) |
| 05/10/2023 | 199 | Plaintiff's MOTION to Seal *Evidentiary Material* re ECF No. 198 per Order authorizing the submission of this document under seal by David Gitman, Monarch Air Group, LLC. (Attachments: # 1 Text of Proposed Order) (Kon, Joshua) (Entered: 05/10/2023) |
| 05/11/2023 | 200 | PAPERLESS ORDER GRANTING 199 Plaintiffs' Unopposed Motion for Leave to File Under Seal. Pursuant to the parties' Confidentiality Order, *see* ECF No. 47 , Plaintiffs may file evidentiary material in support of their 170 Second Motion for Sanctions under |

| | | |
|---|---|---|
| | | seal. Signed by Magistrate Judge Alicia O. Valle on 5/11/2023. (jve) (Entered: 05/11/2023) |
| 05/11/2023 | | SYSTEM ENTRY - Docket Entry 201 [misc] restricted/sealed until further notice. (1155468) (Entered: 05/11/2023) |
| 05/11/2023 | 202 | NOTICE by David Gitman, Monarch Air Group, LLC *Notice of Filing Objections to Defendant's Exhibits* (Attachments: # 1 Exhibit Plaintiffs' Objections to Defendant's Trial Exhibits) (Kon, Joshua) (Entered: 05/11/2023) |
| 05/11/2023 | 203 | PAPERLESS ORDER ON DISCOVERY MOTIONS.<br><br>(i) 170 Plaintiffs' Second Motion for Sanctions (the "Motion") is **GRANTED IN PART AND DENIED IN PART** for the reasons set forth during the hearing on May 11, 2023. Defendant is precluded from referencing or otherwise using the Congressional Subpoena at trial and must pay Plaintiffs their reasonable fees incurred in connection with the Motion. Plaintiffs' request for the Court to strike Defendant's pleadings and enter a default judgment against it is **DENIED**.<br><br>(ii) 181 , 187 Defendant's Motion in Limine as to Sections I.B.3, I.B.13, and I.B.16 is **DENIED** for the reasons set forth during the hearing on May 11, 2023.<br><br>(iii) Within **seven days** from the date of this Order, the parties must request a transcript of the hearing from the Court Reporter's Office in Fort Lauderdale, Florida for filing on the docket. The parties will split the cost of the transcript. Signed by Magistrate Judge Alicia O. Valle on 5/11/2023. (jve) (Entered: 05/11/2023) |
| 05/11/2023 | 204 | Joint MOTION for Extension of Time to File Jury Instructions by JPMorgan Chase Bank, N.A.. Responses due by 5/25/2023 (Attachments: # 1 Text of Proposed Order)(Weinberg, Benjamin) (Entered: 05/11/2023) |
| 05/11/2023 | 207 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Alicia O. Valle: Hearing held on Plaintiffs 170 Second Motion for Sanctions and Defendants 181 Motion in Limine (the Motions). The Court ruled from the bench. See Paperless Order.Total time in court: 2 hour(s) : 15 minutes. Attorney Appearance(s): Joshua R Kon, Yosef Yitzchak Kudan, Sofia Manzo, Derek Eduardo Leon, (Digital Zoom Meeting ID 160 632 8616) (tpl) (Entered: 05/17/2023) |
| 05/12/2023 | 205 | ORDER granting 90 Motion for Summary Judgment; granting 93 Sealed Motion. Signed by Judge William P. Dimitrouleas on 5/12/2023. *See attached document for full details.* (amb) (Entered: 05/12/2023) |
| 05/12/2023 | 206 | FINAL JUDGMENT in favor of JPMorgan Chase Bank, N.A. against Monarch Air Group, LLC, David Gitman. Closing Case. Motions terminated: 204 Joint MOTION for Extension of Time to File Jury Instructions filed by JPMorgan Chase Bank, N.A., 178 Plaintiff's MOTION in Limine *RE: QUALIFIED PRIVILEGE DEFENSE* filed by Monarch Air Group, LLC, David Gitman, 177 Plaintiff's MOTION in Limine *RE: PUBLICATION* filed by Monarch Air Group, LLC, David Gitman, 143 MOTION in Limine *To Exclude Expert Opinions and Testimony* filed by JPMorgan Chase Bank, N.A., 187 Defendant's SEALED MOTION *in Limine* re DE# 184 Order on Motion to Seal filed by JPMorgan Chase Bank, N.A., 181 MOTION in Limine filed by JPMorgan Chase Bank, N.A.. Signed by Judge William P. Dimitrouleas on 5/12/2023. *See attached document for full details.* (amb) (Entered: 05/12/2023) |
| 05/25/2023 | 208 | Plaintiff's MOTION REGARDING PAGE LIMITS FOR THEIR MOTIONS FOR RELIEF FROM JUDGMENT UNDER RULES 59 AND 60 by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 05/25/2023) |

| | | |
|---|---|---|
| 05/26/2023 | 209 | ORDER ON PLAINTIFFS' MOTION REGARDING PAGE LIMITS FOR THEIR MOTIONS FOR RELIEF FROM JUDGMENT UNDER RULES 59 AND 60, granting in part 208 Plaintiff's MOTION REGARDING PAGE LIMITS FOR THEIR MOTIONS FOR RELIEF FROM JUDGMENT UNDER RULES 59 AND 60. Signed by Judge William P. Dimitrouleas on 5/26/2023. *See attached document for full details.* (mee) (Entered: 05/29/2023) |
| 06/01/2023 | 210 | TRANSCRIPT of hearing on motions held on 5-11-2023 before Magistrate Judge Alicia O. Valle, 1-67 pages, Court Reporter: Dawn Savino, 305-523-5598 / Dawn_Savino@flsd.uscourts.gov. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/22/2023. Redacted Transcript Deadline set for 7/3/2023. Release of Transcript Restriction set for 8/30/2023. (Savino, Dawn) (Entered: 06/01/2023) |
| 06/07/2023 | 211 | Plaintiff's MOTION to Seal *Appendix to Motion for Relief from Judgment and Accompanying Exhibits* per Local Rule 5.4 by David Gitman, Monarch Air Group, LLC. (Attachments: # 1 Text of Proposed Order) (Kon, Joshua) (Entered: 06/07/2023) |
| 06/07/2023 | 212 | Plaintiff's MOTION to Vacate 206 Judgment,,, by David Gitman, Monarch Air Group, LLC. Responses due by 6/21/2023 (Attachments: # 1 Appendix)(Kon, Joshua) (Entered: 06/07/2023) |
| 06/07/2023 | 213 | Plaintiff's MOTION for Discovery *to Support Motion for Relief from Judgment* by David Gitman, Monarch Air Group, LLC. Responses due by 6/21/2023 (Kon, Joshua) (Entered: 06/07/2023) |
| 06/08/2023 | 214 | ORDER granting 211 Motion to File Under Seal. Signed by Judge William P. Dimitrouleas on 6/8/2023. *See attached document for full details.* (cqs) (Entered: 06/08/2023) |
| 06/08/2023 | 215 | ORDER REFERRING 213 Plaintiff's MOTION for Discovery *to Support Motion for Relief from Judgment* filed by Monarch Air Group, LLC, David Gitman. Motions referred to Judge Alicia O. Valle. Signed by Judge William P. Dimitrouleas on 6/8/2023. *See attached document for full details.* (cqs) (Entered: 06/08/2023) |
| 06/09/2023 | 216 | PAPERLESS ORDER SETTING EVIDENTIARY HEARING ON 213 Plaintiffs' Motion for Discovery to Support Their Motion for Relief from Judgment (the "Motion"). Accordingly, an evidentiary hearing on the Motion is set for **Thursday, July 20, 2023 at 10:00 a.m.** at the federal courthouse in Fort Lauderdale, Florida. A courtroom designation will be provided at a later date. Signed by Magistrate Judge Alicia O. Valle on 6/9/2023. (jve) (Entered: 06/09/2023) |
| 06/09/2023 | | SYSTEM ENTRY - Docket Entry 217 [misc] restricted/sealed until further notice. (1155468) (Entered: 06/09/2023) |
| 06/12/2023 | 218 | Defendant's MOTION to Strike 213 Plaintiff's MOTION for Discovery *to Support Motion for Relief from Judgment or, Alternatively, Unopposed Motion to Permit 1.5 Spacing in Defendant's Response* by JPMorgan Chase Bank, N.A.. Responses due by 6/26/2023 (Weinberg, Benjamin) (Entered: 06/12/2023) |
| 06/12/2023 | 219 | PAPERLESS ORDER GRANTING IN PART AND DENYING IN PART 218 Defendant's Motion to Strike Plaintiffs' Motion for Discovery to Support Their Motion for Relief from Judgment, or, Alternatively, Unopposed Motion to Permit 1.5 Spacing in Defendant's Response (the "Motion"). Defendant's unopposed request to use 1.5 spacing in its Response to 213 Plaintiffs' Motion for Discovery to Support Their Motion for Relief from Judgment, within the 218 Motion, is **GRANTED**. Accordingly, Defendant may use 1.5 spacing in its Response to 213 Plaintiffs' Motion for Discovery to Support Their |

| | | |
|---|---|---|
| | | Motion for Relief from Judgment. Defendant's Motion to Strike, within the 218 Motion, is **DENIED**. Signed by Magistrate Judge Alicia O. Valle on 6/12/2023. (jve) (Entered: 06/12/2023) |
| 06/12/2023 | 220 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 213 Plaintiff's MOTION for Discovery *to Support Motion for Relief from Judgment* by JPMorgan Chase Bank, N.A.. (Weinberg, Benjamin) (Entered: 06/12/2023) |
| 06/12/2023 | 221 | PAPERLESS ORDER GRANTING 220 Defendant's Unopposed Motion for Extension of Time. Accordingly, Defendant must respond to 213 Plaintiffs' Motion for Discovery to Support Their Motion for Relief from Judgment by **June 21, 2023**. Signed by Magistrate Judge Alicia O. Valle on 6/12/2023. (jve) (Entered: 06/12/2023) |
| 06/16/2023 | 222 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 213 Plaintiff's MOTION for Discovery *to Support Motion for Relief from Judgment* by JPMorgan Chase Bank, N.A.. (Weinberg, Benjamin) (Entered: 06/16/2023) |
| 06/16/2023 | 223 | PAPERLESS ORDER GRANTING 222 Defendant's Unopposed Motion for Extension of Time. Accordingly, Defendant must respond to 213 Plaintiffs' Motion for Discovery to Support Their Motion for Relief from Judgment by **June 23, 2023**. Signed by Magistrate Judge Alicia O. Valle on 6/16/2023. (jve) (Entered: 06/16/2023) |
| 06/23/2023 | 224 | Unopposed MOTION to Seal *JPMorgan Chase Bank, NA's Response to Plaintiffs' Motion for Discovery to Support their Motion for Relief from Judgment* per Local Rule 5.4 by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order) (Weinberg, Benjamin) (Entered: 06/23/2023) |
| 06/23/2023 | 225 | PAPERLESS ORDER GRANTING 224 Defendant's Unopposed Motion for Leave to File Response to Plaintiffs' Motion for Discovery to Support Their Motion for Relief from Judgment Under Seal. Pursuant to the parties' Confidentiality Order, *see* ECF No. 47 , Defendant may file its Response and accompanying exhibits to 213 Plaintiffs' Motion for Discovery to Support Their Motion for Relief from Judgment under seal. Signed by Magistrate Judge Alicia O. Valle on 6/23/2023. (jve) (Entered: 06/23/2023) |
| 06/23/2023 | 226 | RESPONSE in Opposition re 213 Plaintiff's MOTION for Discovery *to Support Motion for Relief from Judgment* filed by JPMorgan Chase Bank, N.A.. Replies due by 6/30/2023. (Attachments: # 1 Exhibit Exhibit A - Subpoena (Filed Under Seal), # 2 Exhibit Exhibit B - SSU Procedure Document (Filed Under Seal), # 3 Exhibit Exhibit C - T. Pittman Depo. Transcript (Filed Under Seal))(Weinberg, Benjamin) (Entered: 06/23/2023) |
| 06/23/2023 | | SYSTEM ENTRY - Docket Entry 227 [misc] restricted/sealed until further notice. (1135626) (Entered: 06/23/2023) |
| 06/30/2023 | 228 | MOTION for Extension of Time to file a Reply to Defendants, JPMorgan Chase Bank, N.A., Response to Plaintiffs Motion for Discovery to Support their Motion for Relief from Judgment re 226 Response in Opposition to Motion, by David Gitman, Monarch Air Group, LLC. Responses due by 7/14/2023 (Kon, Joshua) (Entered: 06/30/2023) |
| 06/30/2023 | 229 | PAPERLESS ORDER GRANTING 228 Plaintiffs' Motion for Extension of Time (the "Motion"). Based on a review of the record and for efficient case management, the undersigned finds that a response to the Motion is unnecessary. Accordingly, Plaintiffs may file a **five-page, double-spaced** reply to the 213 Motion for Discovery to Support Their Motion for Relief from Judgment by **July 5, 2023**. Signed by Magistrate Judge Alicia O. Valle on 6/30/2023. (jve) (Entered: 06/30/2023) |
| 07/05/2023 | 230 | Plaintiff's REPLY to Response to Motion re 213 Plaintiff's MOTION for Discovery *to Support Motion for Relief from Judgment* filed by David Gitman, Monarch Air Group, |

| | | |
|---|---|---|
| | | LLC. (Kon, Joshua) (Entered: 07/05/2023) |
| 07/11/2023 | 231 | PAPERLESS ORDER REGARDING EVIDENTIARY HEARING. The evidentiary hearing previously scheduled for **Thursday, July 20, 2023 at 10:00 a.m.** will be held in Courtroom 310 at the Federal Courthouse in Fort Lauderdale, Florida. Signed by Magistrate Judge Alicia O. Valle on 7/11/2023. (jve) (Entered: 07/11/2023) |
| 07/19/2023 | 232 | PAPERLESS ORDER REGARDING PROCEDURES FOR EVIDENTIARY HEARING, scheduled for Thursday, July 20, 2023 at 10:00 a.m. in Courtroom 310 at the Federal Courthouse in Fort Lauderdale, Florida. By **4:00 p.m. today, July 19, 2023**, Plaintiffs and Defendant must file their respective Exhibit Lists and Witness Lists on the docket. In addition, at the start of the hearing, the parties must each provide the Court a copy (in a three-ring binder) of any exhibits that they intend to use during the hearing. Lastly, Plaintiffs and Defendant will each have **one hour** to present any evidence and arguments to the Court. Signed by Magistrate Judge Alicia O. Valle on 7/19/2023. (jve) (Entered: 07/19/2023) |
| 07/19/2023 | 233 | Exhibit and Witness List *for July 20, 2023 Evidentiary Hearing* by JPMorgan Chase Bank, N.A... (Weinberg, Benjamin) (Entered: 07/19/2023) |
| 07/19/2023 | 234 | Exhibit and Witness List *for July 20, 2023 Evidentiary Hearing* by David Gitman, Monarch Air Group, LLC.. (Kon, Joshua) (Entered: 07/19/2023) |
| 07/19/2023 | 235 | Plaintiff's NOTICE by David Gitman, Monarch Air Group, LLC *OF FILING TRANSCRIPT DESIGNATIONS FOR HEARING* (Kon, Joshua) (Entered: 07/19/2023) |
| 07/20/2023 | 236 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Alicia O. Valle: Evidentiary Hearing held on 7/20/2023 Witnesses Yosef Kudan, Robert Flores, and Anthony Lauro sworn and testified. Plaintiffs' exhibits 1-9, 11, 14-22, and 24 admitted into evidence. Defendant's exhibits 9, 10, 16, 18, 24, 26, and 28-30 admitted into evidence. Evidentiary hearing adjourned for the day at 1:45p.m. and will continue tomorrow, July 21, 2023, at 10:00a.m. in Courtroom 310. Total time in court: 4 hour(s). Attorney Appearance(s): Robert A. Stok, Joshua R Kon, Yosef Yitzchak Kudan, Benjamin Weinberg, Derek Eduardo Leon, Daniel Kim, Alexis Dunton, (Digital 10:11:56) (tpl) (Entered: 07/20/2023) |
| 07/20/2023 | 237 | **ORAL** MOTION for *in camera* Review by JPMorgan Chase Bank, N.A. (jve) (Entered: 07/20/2023) |
| 07/20/2023 | 238 | PAPERLESS ORDER GRANTING Defendant's *ore tenus* Unopposed Motion for *in camera* Review of Unredacted Documents, made during the evidentiary hearing on 213 Plaintiffs' Motion for Discovery to Support Their Motion for Relief from Judgment (the "Motion"). At the hearing, Defendant offered for the Court to conduct an *in camera* review of the unredacted versions of the documents at issue in the Motion. Plaintiffs did not oppose Defendant's offer. Accordingly, by **9:00 a.m. tomorrow, July 21, 2023**, Defendant must deliver **three copies** of the unredacted documents at issue in the Motion to Magistrate Judge Valle's Chambers, Room 403 at the Federal Courthouse in Fort Lauderdale, Florida. The evidentiary hearing will resume at 10:00 a.m. tomorrow, July 21, 2023. Signed by Magistrate Judge Alicia O. Valle on 7/20/2023. (jve) (Entered: 07/20/2023) |
| 07/21/2023 | 239 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Alicia O. Valle: Evidentiary Hearing continued on 7/21/2023. Plaintiff introduces exhibits 28-31. Exhibits not admitted into evidence. Defendant's exhibits 11, 23, and 34 admitted into evidence. Order to follow. Total time in court: 3 hour(s) : 45 minutes. Attorney Appearance(s): Robert A. Stok, Joshua R Kon, Yosef Yitzchak Kudan, Benjamin Weinberg, Derek Eduardo Leon, Daniel Kim, and Alexis Dunton. (Digital 10:27:23; (SEALED (*to be |

| | | |
|---|---|---|
| | | transcribed at the request of District Judge Dimitrouleas only) 10:44:51-11:16:03); 11:17:59) (tpl) (Entered: 07/21/2023) |
| 07/21/2023 | 240 | PAPERLESS ORDER ON 213 Plaintiffs' Motion for Discovery to Support Their Motion for Relief from Judgment (the "Motion"). Accordingly, for the reasons set forth during the two-day evidentiary hearing on the Motion, Plaintiffs' request for *in camera* review is **DENIED AS MOOT**, and the remainder of the Motion is **DENIED**. Within **seven days** from the date of this Order, Plaintiffs must request a transcript of the hearing from the Court Reporter's Office in Miami, Florida for filing on the docket. Signed by Magistrate Judge Alicia O. Valle on 7/21/2023. (jve) (Entered: 07/21/2023) |
| 07/24/2023 | 241 | ORDER SETTING BRIEFING SCHEDULE FOR MOTION FOR RELIEF FROM JUDGMENT, ( Responses due by 8/7/2023, Replies due by 8/14/2023.) Signed by Judge William P. Dimitrouleas on 7/24/2023. *See attached document for full details.* (cqs) (Entered: 07/24/2023) |
| 07/24/2023 | 242 | Exhibit and Witness List *for Evidentiary Hearing on 213 Plaintiffs' Motion for Discovery to Support Their Motion for Relief from Judgment* by David Gitman, Monarch Air Group, LLC.. (Kon, Joshua) (Entered: 07/24/2023) |
| 07/25/2023 | 243 | Unopposed MOTION to Seal *Plaintiffs Evidentiary Hearing Exhibits* per Local Rule 5.4 by David Gitman, Monarch Air Group, LLC. (Attachments: # 1 Text of Proposed Order) (Kon, Joshua) (Entered: 07/25/2023) |
| 07/25/2023 | 244 | PAPERLESS ORDER GRANTING 243 Plaintiffs' Unopposed Motion to File Under Seal. Accordingly, pursuant to the parties' Confidentiality Order, *see* ECF No. 47, Plaintiffs may file their exhibits from the Evidentiary Hearing on 213 Plaintiffs' Motion for Discovery to Support Their Motion for Relief from Judgment under seal. Signed by Magistrate Judge Alicia O. Valle on 7/25/2023. (jve) (Entered: 07/25/2023) |
| 07/25/2023 | 245 | Unopposed MOTION to Seal *Defendant's Evidentiary Hearing Exhibits* per Local Rule 5.4 by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order) (Weinberg, Benjamin) (Entered: 07/25/2023) |
| 07/25/2023 | 246 | PAPERLESS ORDER GRANTING 245 Defendant's Unopposed Motion for Leave to File Under Seal. Accordingly, pursuant to the parties' Confidentiality Order, *see* ECF No. 47, Defendant may file its exhibits from the Evidentiary Hearing on 213 Plaintiffs' Motion for Discovery to Support Their Motion for Relief from Judgment under seal. Signed by Magistrate Judge Alicia O. Valle on 7/25/2023. (jve) (Entered: 07/25/2023) |
| 07/26/2023 | 247 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 212 Plaintiff's MOTION to Vacate 206 Judgment,,, by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order)(Weinberg, Benjamin) (Entered: 07/26/2023) |
| 07/26/2023 | | SYSTEM ENTRY - Docket Entry 248 [misc] restricted/sealed until further notice. (1155468) (Entered: 07/26/2023) |
| 07/26/2023 | 249 | Unopposed MOTION for Extension of Time to File Objections to the Magistrate Judge's Order [DE 240] by David Gitman, Monarch Air Group, LLC. Responses due by 8/9/2023 (Attachments: # 1 Text of Proposed Order)(Kon, Joshua) (Entered: 07/26/2023) |
| 07/27/2023 | 250 | ORDER granting 249 Motion for Extension of Time. Signed by Judge William P. Dimitrouleas on 7/27/2023. *See attached document for full details.* (cqs) (Entered: 07/27/2023) |
| 07/27/2023 | 251 | ORDER granting 247 Motion for Extension of Time to File. Signed by Judge William P. Dimitrouleas on 7/27/2023. *See attached document for full details.* (cqs) (Entered: 07/27/2023) |

| 07/27/2023 | | SYSTEM ENTRY - Docket Entry 252 [misc] restricted/sealed until further notice. (1135626) (Entered: 07/27/2023) |
|---|---|---|
| 07/31/2023 | 253 | Plaintiff's NOTICE by David Gitman, Monarch Air Group, LLC *Confirming Receipt of Hearing Transcripts* (Attachments: # 1 2023-07-20 Hearing Transcript- Evidentiary Hearing, # 2 2023-07-21 Hearing Transcript- Continuation of Evidentiary Hearing) (Kon, Joshua) (Entered: 07/31/2023) |
| 07/31/2023 | 254 | NOTICE by JPMorgan Chase Bank, N.A. *of Receipt of Hearing Transcript* (Weinberg, Benjamin) (Entered: 07/31/2023) |
| 08/02/2023 | 255 | TRANSCRIPT of EVIDENTIARY HEARING held on 07/20/2023 before Magistrate Judge Alicia O. Valle, 1-162 pages, Court Reporter: Joanne Mancari, jemancari@gmail.com. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/23/2023. Redacted Transcript Deadline set for 9/5/2023. Release of Transcript Restriction set for 10/31/2023. (jes) (Entered: 08/02/2023) |
| 08/02/2023 | 256 | TRANSCRIPT of EVIDENTIARY HEARING (Continued) held on 07/21/2023 before Magistrate Judge Alicia O. Valle, 163-217 pages, Court Reporter: Joanne Mancari, jemancari@gmail.com. Transcript may be viewed at the court public terminal or purchased by contacting the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/23/2023. Redacted Transcript Deadline set for 9/5/2023. Release of Transcript Restriction set for 10/31/2023. (jes) (Entered: 08/02/2023) |
| 08/08/2023 | 257 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 212 Plaintiff's MOTION to Vacate 206 Judgment,,, by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order)(Weinberg, Benjamin) (Entered: 08/08/2023) |
| 08/09/2023 | 258 | ORDER granting 257 Motion for Extension of Time to File Response to Motion. Responses due by 8/21/2023 Signed by Judge William P. Dimitrouleas on 8/9/2023. *See attached document for full details.* (cqs) (Entered: 08/09/2023) |
| 08/09/2023 | 259 | Unopposed MOTION for Extension of Time to file Objections to the Magistrate Judges Order [DE 240] by David Gitman, Monarch Air Group, LLC. Responses due by 8/23/2023 (Attachments: # 1 Text of Proposed Order)(Kon, Joshua) (Entered: 08/09/2023) |
| 08/09/2023 | 260 | ORDER granting 259 Motion for Extension of Time. Responses/ Objections due by 8/21/2023 Signed by Judge William P. Dimitrouleas on 8/9/2023. *See attached document for full details.* (cqs) (Entered: 08/09/2023) |
| 08/18/2023 | 261 | Plaintiff's OBJECTION of Magistrate Judge 240 Order on Motion for Discovery,, to District Court (Kon, Joshua) (Entered: 08/18/2023) |
| 08/21/2023 | 262 | Unopposed MOTION to Seal *Response to Plaintiffs' Motion for Relief from Judgment* per Local Rule 5.4 by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order) (Weinberg, Benjamin) (Entered: 08/21/2023) |
| 08/21/2023 | 263 | RESPONSE in Opposition re 212 Plaintiff's MOTION to Vacate 206 Judgment,,, filed by JPMorgan Chase Bank, N.A.. Replies due by 8/28/2023. (Attachments: # 1 Exhibit Exhibit A - Partially Unredacted AML Interdiction List Request (Filed Under Seal), # 2 Exhibit Exhibit B - Notice of Taking Deposition Duces Tecum (Filed Under Seal)) (Weinberg, Benjamin) (Entered: 08/21/2023) |

| 08/22/2023 | 264 | ORDER granting 262 DEFENDANT'S UNOPPOSED MOTION FOR LEAVE TO FILE UNDER SEAL. Signed by Judge William P. Dimitrouleas on 8/22/2023. *See attached document for full details.* (nwn) (Entered: 08/22/2023) |
| 08/22/2023 | 265 | Joint MOTION for Extension of Time to File Response/Reply/Answer by David Gitman, Monarch Air Group, LLC. (Attachments: # 1 Text of Proposed Order)(Kon, Joshua) (Entered: 08/22/2023) |
| 08/22/2023 | 266 | ORDER granting 265 UNOPPOSED JOINT MOTION FOR EXTENSIONS OF TIME. Responses due by 9/15/2023 Replies due by 9/15/2023. Signed by Judge William P. Dimitrouleas on 8/22/2023. *See attached document for full details.* (nwn) (Entered: 08/23/2023) |
| 08/23/2023 | | SYSTEM ENTRY - Docket Entry 267 [misc] restricted/sealed until further notice. (1135626) (Entered: 08/23/2023) |
| 09/15/2023 | 268 | Plaintiff's REPLY to Response to Motion re 212 Plaintiff's MOTION to Vacate 206 Judgment,,, filed by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 09/15/2023) |
| 09/15/2023 | 269 | Unopposed MOTION to Seal *Defendant's Response to Plaintiffs' Objections to Order on Plaintiffs' Motion for Discovery* per Local Rule 5.4 by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order) (Weinberg, Benjamin) (Entered: 09/15/2023) |
| 09/15/2023 | 270 | Defendant's RESPONSE to 261 Plaintiff's OBJECTION of Magistrate Judge 240 Order on Motion for Discovery,, to District Court by JPMorgan Chase Bank, N.A.. (Weinberg, Benjamin) (Entered: 09/15/2023) |
| 09/18/2023 | 271 | ORDER Granting 269 Unopposed Motion for Leave to File Under Seal. Signed by Judge William P. Dimitrouleas on 9/15/2023. *See attached document for full details.* (cds) (Entered: 09/18/2023) |
| 09/18/2023 | | SYSTEM ENTRY - Docket Entry 272 [misc] restricted/sealed until further notice. (1135626) (Entered: 09/18/2023) |
| 10/24/2023 | 273 | ORDER REQUIRING DEFENDANT TO FILE UNDER SEAL UNREDACTED DOCUMENTS. Signed by Judge William P. Dimitrouleas on 10/24/2023. *See attached document for full details.* (cds) (Entered: 10/24/2023) |
| 10/27/2023 | 274 | NOTICE by JPMorgan Chase Bank, N.A. re 273 Order *Notice of Filing Unredacted Documents Under Seal* (Attachments: # 1 Exhibit A - Filed Under Seal, # 2 Exhibit Exhibit B - Filed Under Seal, # 3 Exhibit Exhibit C - Filed Under Seal) (Weinberg, Benjamin) (Entered: 10/27/2023) |
| 10/27/2023 | | SYSTEM ENTRY - Docket Entry 275 [misc] restricted/sealed until further notice. (1135626) (Entered: 10/27/2023) |
| 12/15/2023 | 276 | ORDER ADOPTING AND AFFIRMING MAGISTRATE JUDGE'S ORDER DENYING MOTION FOR DISCOVERY; overruling 261 Appeal/Objection of Magistrate Judge Order to District Court. Plaintiffs' Motion for Discovery DE 213 is DENIED as set forth in Magistrate Judge Valle's ruling. Signed by Judge William P. Dimitrouleas on 12/15/2023. *See attached document for full details.* (nwn) (Entered: 12/18/2023) |
| 12/18/2023 | 277 | ORDER denying 212 PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT. This case shall remain CLOSED. Signed by Judge William P. Dimitrouleas on 12/18/2023. *See attached document for full details.* (nwn) (Entered: 12/19/2023) |
| 12/22/2023 | 278 | Notice of Appeal as to 206 Judgment,,, 205 Order on Motion for Summary Judgment, Order on Sealed Motion, 277 Order on Motion to Vacate by David Gitman, Monarch Air |

| | | Group, LLC. Filing fee $ 605.00 receipt number AFLSDC-17166478. Within fourteen days of the filing date of a Notice of Appeal, the appellant must complete the Eleventh Circuit Transcript Order Form regardless of whether transcripts are being ordered [Pursuant to FRAP 10(b)]. For information go to our FLSD website under All Forms and look for Transcript Order Form www.flsd.uscourts.gov/forms/all-forms. (Kon, Joshua) (Entered: 12/22/2023) |
|---|---|---|
| 12/27/2023 | | Transmission of Notice of Appeal, Judgment and Orders under appeal, and Docket Sheet to US Court of Appeals re 278 Notice of Appeal. Notice has been electronically mailed. (jgo) (Entered: 12/27/2023) |
| 12/28/2023 | 279 | TRANSCRIPT INFORMATION FORM by David Gitman, Monarch Air Group, LLC re 278 Notice of Appeal,,. No Transcript Requested. (Kon, Joshua) (Entered: 12/28/2023) |
| 12/29/2023 | 280 | Acknowledgment of Receipt of NOA from USCA re 278 Notice of Appeal, filed by Monarch Air Group, LLC, David Gitman. Date received by USCA: 12/27/2023. USCA Case Number: 23-14191-G. (jgo) (Entered: 12/29/2023) |
| 03/04/2024 | 281 | Plaintiff's MOTION to De-Designate Materials Marked Confidential by David Gitman, Monarch Air Group, LLC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Kon, Joshua) (Entered: 03/04/2024) |
| 03/05/2024 | 282 | Unopposed MOTION to Seal per Local Rule 5.4 by David Gitman, Monarch Air Group, LLC. (Kon, Joshua) (Entered: 03/05/2024) |
| 03/05/2024 | 283 | ORDER REFERRING 281 Plaintiff's MOTION to De-Designate Materials Marked Confidential filed by Monarch Air Group, LLC, David Gitman. Motions referred to Judge Alicia O. Valle. Signed by Judge William P. Dimitrouleas on 3/5/2024. *See attached document for full details.* (cqs) (Entered: 03/05/2024) |
| 03/06/2024 | 284 | Unopposed MOTION for Extension of Time to File Response/Reply/Answer as to 281 Plaintiff's MOTION to De-Designate Materials Marked Confidential by JPMorgan Chase Bank, N.A.. (Attachments: # 1 Text of Proposed Order)(Weinberg, Benjamin) (Entered: 03/06/2024) |
| 03/07/2024 | 285 | PAPERLESS ORDER GRANTING Plaintiffs' 282 Unopposed Motion for Leave to File Under Seal, and Defendant's 284 Unopposed Motion for Extension of Time to File Response to Plaintiffs' Motion to De-Designate Materials Marked Confidential. Accordingly, **within two business days** from the date of this Order, Plaintiffs must file Exhibits 2, 3, and 4 of their Motion to De-Designate Materials Marked Confidential (ECF No. 281 ) under seal. The filings shall remain under seal until further order from this Court. Additionally, **by March 25, 2024**, Defendant must respond to the 281 Motion to De-Designate Materials Marked Confidential. Signed by Magistrate Judge Alicia O. Valle on 3/7/2024. (lbe) (Entered: 03/07/2024) |
| 03/08/2024 | | Set Deadlines Per DE#285. Responses due by 3/25/2024. (cqs) (Entered: 03/08/2024) |
| 03/08/2024 | | SYSTEM ENTRY - Docket Entry 286 [misc] restricted/sealed until further notice. (1155468) (Entered: 03/08/2024) |
| 03/25/2024 | 287 | RESPONSE in Opposition re 281 Plaintiff's MOTION to De-Designate Materials Marked Confidential filed by JPMorgan Chase Bank, N.A.. Replies due by 4/1/2024. (Weinberg, Benjamin) (Entered: 03/25/2024) |
| 04/01/2024 | 288 | REPLY in Support re 281 Plaintiff's MOTION to De-Designate Materials Marked Confidential filed by Monarch Air Group, LLC. (Kon, Joshua) Modified Text on 4/2/2024 (cds). (Entered: 04/01/2024) |

| 04/08/2024 | 289 | PAPERLESS ORDER SETTING HEARING ON MOTION AND REQUIRING JOINT STATUS REPORT. This cause is before the Court on 281 Plaintiff's Motion to Designate Materials as Non-Confidential (the "Motion"), which has been referred to the undersigned for appropriate disposition. *See* ECF No. 283 at 1. Accordingly, a telephonic hearing on the Motion will be held on **Wednesday, April 17, 2024, at 2 p.m.** before U.S. Magistrate Judge Alicia O. Valle. Shortly before the hearing time, the parties shall call **(646) 828-7666** and, when prompted, enter Meeting ID **161 849 8380**, followed by passcode **1234**. The Court has reserved one hour for the hearing. In advance of the hearing, the parties must telephonically meet and confer in good faith to resolve and/or narrow the issues in the Motion. By **April 15, 2024**, parties shall file a Joint Status Report ("JSR") informing the Court of the result of the parties' conferral, specifically addressing: (i) whether any of the challenged documents can be redacted to remove any confidential and/or proprietary information; and (ii) if so, whether Defendant would agree to Plaintiffs' use of such redacted documents in the related state court action (Case No. 2020-021551-CA-01). Signed by Magistrate Judge Alicia O. Valle on 4/8/2024. (lbe) (Entered: 04/08/2024) |
| 04/15/2024 | 290 | STATUS REPORT *Joint Status Report* by JPMorgan Chase Bank, N.A. (Weinberg, Benjamin) (Entered: 04/15/2024) |
| 04/17/2024 | 291 | PAPERLESS ORDER GRANTING IN PART AND DENYING IN PART 281 Plaintiffs' Motion to Designate Materials as Non-Confidential for the reasons stated on the record at the hearing on Wednesday, April 17, 2024. Accordingly, **within two weeks** from the date of this Order, Defendant must produce redacted copies (as directed by the Court during the hearing) of the de-designated documents within ECF Nos. 281-4 and 286-3. The de-designated documents are solely for use in *Monarch Air Group, LLC v. Stern*, Case No. 2020-021551. The audio recording of this hearing is **SEALED**. Nonetheless, counsel may obtain a copy of the sealed transcript from the Court Reporter's Office in Miami for joint redaction of confidential information and public filing of the redacted transcript. Signed by Magistrate Judge Alicia O. Valle on 4/17/2024. (lbe) Modified text/status per Chambers on 4/18/2024 (sk). (Entered: 04/17/2024) |
| 04/17/2024 | 292 | PAPERLESS Minute Entry for proceedings held before Magistrate Judge Alicia O. Valle: Motion Hearing held on 4/17/2024 on 281 Plaintiff's MOTION to De-Designate Materials Marked Confidential. After hearing oral argument, the Court ruled from the bench. Paperless Order to follow. Total time in court: 2 hour(s) : 05 minute Attorney Appearance(s): Benjamin Weinberg, and Theodore Sander. (SEALED Audio Zoom Meeting 161 849 8380) (tpl) (Entered: 04/17/2024) |
| 05/01/2024 | 293 | NOTICE of Compliance by JPMorgan Chase Bank, N.A. re 291 Order on Motion for Miscellaneous Relief,,, (Weinberg, Benjamin) (Entered: 05/01/2024) |

| **PACER Service Center** | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 06/21/2024 15:40:01 | | |
| **PACER Login:** | jkon56147 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 0:21-cv-62429-WPD |
| **Billable Pages:** | 27 | **Cost:** | 2.70 |

# TAB 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. _____**

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

      Plaintiffs,

vs.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

      Defendant.

_____/

## <u>NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant, JPMorgan Chase Bank, N.A.

("JPMC") hereby gives notice of removal of the above-entitled action, and all claims and causes

of action therein, currently pending in the Circuit Court of the Seventeenth Judicial Circuit in and

for Broward County, Florida (the "State Court Action").  JPMC appears for the purposes of

removal only, reserves all defenses and rights available to it, including as to proper service and

personal jurisdiction.  In support of this Notice of Removal, JPMC states the following:

## THE REMOVED ACTION

1.    The removed case is an action filed on November 1, 2021 in the Seventeenth

Judicial Circuit in and for Broward County, Florida, captioned *Monarch Air Group, LLC d/b/a*

*Mercury Jets, a Florida limited liability company, and David Gitman v. JPMorgan Chase Bank,*

*N.A., a foreign profit corporation.*

**PAPERS FROM THE REMOVED ACTION**

2.      Pursuant to 28 U.S.C. § 1446(a), JPMC attaches to this Notice of Removal a copy of all process, pleadings, orders, and other papers or exhibits of every kind currently on file in the State Court Action.  *See* Composite Exhibit 1 attached hereto.

3.      Pursuant to 28 U.S.C. § 1446(d), JPMC will file a copy of this Notice of Removal with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, and will serve a copy of this Notice of Removal on Monarch Air Group, LLC and David Gitman ("Plaintiffs").

**REMOVAL IS TIMELY**

4.      Plaintiffs filed this action on November 1, 2021.  Without conceding that service was properly executed, JPMC was purportedly served with Plaintiffs' complaint on November 4, 2021.

5.      This notice of removal is being filed within 30 days of JPMC's receipt of Plaintiffs' complaint and thus is timely filed under 28 U.S.C. § 1446(b).  *See, e.g., Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 355-56 (1999) (removal time frame begins upon receipt of formal service; not receipt of complaint).

**VENUE IS PROPER**

6.      Venue is proper in the Broward Division of this Court because this action is being removed from the Seventeenth Judicial Circuit in and for Broward County, Florida, and, according to the complaint, the asserted causes of action allegedly accrued in Broward County, Florida.

**DIVERSITY OF CITIZENSHIP EXISTS BETWEEN THE PARTIES**

7.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the

parties are completely diverse and were completely diverse at the time the Plaintiffs filed the complaint.

8.      Plaintiff Monarch Air Group, LLC is a limited liability company who, on information and belief, has a single member, David Gitman.  Gitman is an individual domiciled in Florida and is thus a citizen of Florida.  As a result, Monarch Air Group, LLC is a citizen of Florida.

9.      Plaintiff David Gitman is an individual domiciled in Florida and is thus a citizen of Florida.

10.     JPMC is a national banking association with its main office, as designated in its articles of association, in Ohio. Accordingly, JPMC is a citizen of Ohio.

11.     The citizenships of each party and the facts set forth in paragraphs 8 through 10 were the same at the time the Plaintiffs filed the complaint.

## THE AMOUNT IN CONTROVERSY REQUIREMENT IS SATISFIED

12.     Plaintiffs do not allege a specific amount in controversy—only that this is an action for damages exceeding $30,000.  However, a reasonable reading of the complaint reveals that Plaintiffs seek damages in excess of $75,000.  Specifically, among other things, the complaint alleges that the Plaintiffs have suffered "substantial damages" and "have significantly interfered with Plaintiffs' ability to transact business[.]"

WHEREFORE, Defendant JPMorgan Chase Bank, N.A. respectfully requests, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, that this action be removed in its entirety from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to this Court, that this Court proceed with the case as if it was originally initiated in this Court, and that this Court make and enter such further orders as may be necessary and proper.

Dated: December 1, 2021                    Respectfully submitted,

**Derek E. León**                                      
Derek E. León, Esq.
  Florida Bar No. 625507
John R. Byrne
  Florida  Bar No. 126294
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 740-1975
Fascimile:  (305) 351-4029
Email:  jbyrne@leoncosgrove.com
Email:  dleon@leoncogrove.com
Email:  eperez@leoncosgrove.com
Email:  anoonan@leoncosgrove.com

*Counsel for JPMorgan Chase Bank, N.A.*

# TAB 1-1

# **COMPOSITE EXHIBIT 1**

Case 0:21-cv-62429-WPD   Document 1-1 Entered on FLSD Docket 12/01/2021   Page 2 of 24

## Monarch Air Group, LLC , et al Plaintiff vs. JPMorgan Chase Bank, N.A. Defendant

**Broward County Case Number:** CACE21019694
**State Reporting Number:** 062021CA019694AXXXCE
**Court Type:** Civil
**Case Type:** Other - Libel/Slander
**Incident Date:** N/A
**Filing Date:** 10/29/2021
**Court Location:** Central Courthouse
**Case Status:** Pending
**Magistrate Id / Name:** N/A
**Judge ID / Name:** 05 Bidwill, Martin J.

### − Party(ies)

Total: 3

| Party Type | Party Name | ❓ Address | ❓ Attorneys / Address ★ Denotes Lead Attorney |
|---|---|---|---|
| Plaintiff | **Monarch Air Group, LLC**<br><br>*Doing Business As*<br>**Mercury Jets** | | ★ Kon, Joshua<br>Retained<br>Bar ID: 0056147<br>One E Broward BLVD<br>STE 915<br>Fort Lauderdale, FL 33301<br>**Status: Active** |
| Defendant | **JPMorgan Chase Bank, N.A.** | | ★ Byrne, John Richard<br>Retained<br>Bar ID: 126294<br>Leon Cosgrove<br>255 Alhambra Cir Ste 800<br>Coral Gables, FL 33134<br>**Status: Active** |
| Plaintiff | **Gitman, David** | | ★ Kon, Joshua<br>Retained<br>Bar ID: 0056147<br>One E Broward BLVD<br>STE 915<br>Fort Lauderdale, FL 33301<br>**Status: Active** |

## Disposition(s)

Total: 0

| Date | Statistical Closure(s) |
|------|------------------------|
|      |                        |

| Date | Disposition(s) | View | Page(s) |
|------|----------------|------|---------|
|      |                |      |         |

## Event(s) & Document(s)

Total: 8

| Date | Description | Additional Text | View | Pages |
|------|-------------|-----------------|------|-------|
| 11/22/2021 | **Order Extending Time** | | 📄 | 2 |
| 11/19/2021 | **Motion for Enlargement of Time** | Party: *Defendant* JPMorgan Chase Bank, N.A. | 📄 | 3 |
| 11/18/2021 | **Notice of Appearance** | Party: *Defendant* JPMorgan Chase Bank, N.A. | 📄 | 2 |
| 11/01/2021 | **Clerk's Certificate of Compliance W-2020-73CIV/2020-74-UFC** | NONE | 📄 | 1 |
| 11/01/2021 | **eSummons Issuance** | JPMORGAN CHASE BANK, N.A | 📄 | 2 |
| 10/29/2021 | **Per AOSC20-23 Amd12, Case is determined General** | | | |
| 10/29/2021 | **Civil Cover Sheet** | Amount: $30,001.00 | 📄 | 3 |
| 10/29/2021 | **Complaint (eFiled)** | Party: *Plaintiff* Monarch Air Group, LLC *Plaintiff* Gitman, David | 📄 | 7 |

## Hearing(s)

Total: 0

**There is no Disposition information available for this case.**

**−**  Related Case(s)                                                      Total: 0

**There is no related case information available for this case.**

IN THE CIRCUIT COURT FOR THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY,
FLORIDA

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

       Plaintiffs,

                                   CASE NO.:

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

       Defendant.

_____/

## COMPLAINT

Plaintiffs, MONARCH AIR GROUP, LLC ("Monarch"), a Florida limited liability company, and DAVID GITMAN, an individual ("Gitman") (collectively, "Plaintiffs"), by and through the undersigned counsel, hereby file this Complaint against Defendant, JPMORGAN CHASE BANK, N.A. ("Chase" or "Defendant"), a foreign profit corporation.

### JURISDICTION AND VENUE

1.      This is an action for damages exceeding Thirty Thousand Dollars ($30,000.00), exclusive of pre-judgment interest, attorney's fees and costs, and is, thus, within the exclusive plenary jurisdiction of the Circuit Courts.

2.      Venue is proper in Broward County, Florida, the place the causes of action asserted herein accrued, the place where the economic damages giving rise to this Complaint occurred, and the place where Plaintiffs' principal place of business is located.

3.      Plaintiff, MONARCH AIR GROUP, LLC, d/b/a MERCURY JETS, is a Florida limited liability company with its principal place of business in Broward County, Florida.

STOK KON + BRAVERMAN
1 E. Broward Boulevard, Suite 915 • Fort Lauderdale, FL 33301 • P.954.237.1777 • F.954.237.1737 • E-mail: service@stoklaw.com

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 10/29/2021 01:39:12 PM.****

4.     Plaintiff, DAVID GITMAN, is a sui juris individual doing business in Broward County, Florida.

5.     Defendant, JPMORGAN CHASE BANK, N.A., is a foreign profit corporation.

6.     All conditions precedent to the institution, maintenance, and prosecution of this lawsuit have been performed, excused, waived, or have otherwise occurred.

### GENERAL ALLEGATIONS

7.     Monarch is in the business of (a) providing on-demand, private aircraft charter services in Florida and across the globe; (b) providing aircraft management services to aircraft and fleet owners; (c) providing mission critical supplies to United States and non-governmental entities throughout the world; (d) providing aircraft acquisition and management services; and (e) providing specialized aviation solutions.

8.     Accordingly, Monarch transacts business with customers throughout the United States and the world.

9.     Monarch owns and controls several bank accounts for the purposes of transacting business with its customers. Gitman is a principal of Monarch and also owns and controls bank accounts for purposes of transacting business and paying non-commercial expenses.  Monarch accepts payments from its customers via wire and automated clearing house ("ACH") transfers in exchange for Monarch's services.

10.     Chase is one of the largest consumer banks in the world with over 5,100 branches in the United States alone.

11.     Many of Monarch's customers hold own bank accounts at and conduct their consumer banking affairs with Chase. Many of the individuals and businesses to who Gitman must process payments also own bank accounts and conduct their consumer banking affairs with Chase.

12.     Beginning in or around September 2020, Chase began rejecting, cancelling, and otherwise preventing individuals and business receiving payments from Monarch and Gitman and from transferring funds via wire and ACH transfer to and/or from the Plaintiffs. While Chase was blocking certain transfers to Monarch's account, Chase also permitted other transfers to clear into Monarch's account.

13.     Plaintiffs repeatedly contacted Chase to ascertain the reason(s) behind Chase's repeated rejections of the attempted transfers to and/or from the Plaintiffs.

14.     Notwithstanding Plaintiffs' repeated inquiries, Chase failed to provide a cognizable rationale for its repeated rejections.

15.     Upon further inquiry, Plaintiffs learned that Chase has been transmitting false information to Monarch's customers and Gitman's transferees, including, without limitation, falsely stating that that Monarch and/or Gitman are currently on the Office of Foreign Assets Control's ("OFAC's") ban list, sanctions lists, or another non-compliance lists together with other false allegations of purported criminal activity. Chase and its agents have also published and republished such false information internally and to third parties.

16.     Chase's rejections of wire and ACH transfers to and/or from Plaintiffs; Chase's publication of false information internally and to  third parties, which information is injurious to Plaintiffs' trade and profession; and Chase's failure to advise Plaintiffs of the issues that are preventing individuals and businesses from receiving or sending monies have significantly interfered with Plaintiffs' ability to transact business, have injured the Plaintiffs' reputation and goodwill, and have directly and proximately caused Plaintiffs to suffer substantial damages.

17.     Plaintiffs have retained the undersigned attorneys to prosecute this lawsuit on their behalf and are required to pay said attorneys a reasonable fee for their services.

18.     All conditions precedent to the institution and maintenance of this Action have been performed, excused or have otherwise occurred.

## Count I
### DEFAMATION (SLANDER)

19.     Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 18 as if fully set forth herein.

20.     Chase has made false statements about Plaintiffs to third parties, including, without limitation, falsely stating that Plaintiffs are on OFAC's ban list, sanctions lists, or another non-compliance lists together with other false allegations of purported criminal activity. Chase and its agents have also published and republished such false information internally and to third parties.

21.     Chase made the false statements with knowledge or reckless disregard as to their falsity, or at the very least Chase made the false statements negligently.

22.     Chase's false statements are defamatory *per se*, have significantly interfered with Plaintiffs' proper exercise of its lawful business, and have caused substantial harm to Plaintiffs' relationships with its customers. The false statements also tend to injure Plaintiffs in their trade and profession.

23.     As a direct and proximate result of Chase's defamatory statements, Plaintiffs have suffered substantial damages.

**WHEREFORE**, based on the foregoing, Plaintiffs respectfully demand judgment against Defendant, JP MORGAN CHASE BANK, N.A. for (a) compensatory and consequential damages, (b) court costs, (c) pre- and post-judgment interest, and (d) any such other and further relief as this Court deems just and proper.

## Count II
### DEFAMATION (LIBEL)

24.     Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 18 as if fully set forth herein.

25.     Chase has made false statements about Plaintiffs in writing, including, without limitation, falsely stating that Plaintiffs are on OFAC's ban list, sanctions lists, or another non-compliance lists together with other false allegations of purported criminal activity. Chase and its agents have also published and republished, in writing, such false information internally and to third parties.

26.     Chase made the false statements with knowledge or reckless disregard as to their falsity, or at the very least Chase made the false statements negligently.

27.     Chase's false statements are defamatory *per se*, have significantly interfered with Plaintiffs' proper exercise of their lawful business, and have caused substantial harm to Plaintiffs' relationships with their customers. The false statements also tend to injure Plaintiffs in their trade and profession.

28.     As a direct and proximate result of Chase's defamatory statements, Plaintiffs have suffered substantial damages.

**WHEREFORE**, based on the foregoing, Plaintiffs respectfully demand judgment against Defendant JP MORGAN CHASE BANK, N.A.  for (a) compensatory and consequential damages, (b) court costs, (c) pre- and post-judgment interest, and (d) any such other and further relief as this Court deems just and proper.

## Count III
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

29.     Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 18 as if fully set forth herein.

30.     Monarch has business relationships with many customers who have attempted to transfer funds to Monarch's account(s) in exchange for Monarch's services.

31.     Chase had knowledge of Monarch's business relationship with its customers.

32.     Chase intentionally and unjustifiably interference with Monarch's relationships with its customers by making false statements about Monarch to its customers, causing Monarch's customers to breach, terminate, and/or discontinue their business relationships with Monarch.

33.     As a direct and proximate cause of Chase's intentional interference and the ensuing breaches, terminations, and/or discontinuations of the business relationships between Monarch and its customers, Monarch has suffered substantial damages.

**WHEREFORE**, based on the foregoing, MONARCH AIR GROUP, LLC d/b/a MERCURY JETS, respectfully demands judgment against Defendant JP MORGAN CHASE BANK, N.A.  for (a) compensatory and consequential damages, (b) court costs, (c) pre- and post-judgment interest, and (d) any such other and further relief as this Court deems just and proper

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: October 29, 2021.

Respectfully submitted,

STOK KON + BRAVERMAN
*Attorneys for Plaintiffs*
One East Broward Blvd.
Suite 915
Fort Lauderdale, Florida 33301
P.954.237.1777
F.954.237.1737
Email: service@stoklaw.com

*/s/ Joshua R. Kon*
JOSHUA R. KON, ESQ.
Florida Bar No.: 56147
YOSEF KUDAN, ESQ.
Florida Bar No.: 1010261

**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>SEVENTEENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>BROWARD</u>  COUNTY, FLORIDA

<u>Monarch Air Group, LLC d/b/a Mercury Jets, David Gitman</u>
 Plaintiff                                                    Case # _____
                                                             Judge _____

 vs.

<u>JP Morgan Chase Bank, N.A.</u>
 Defendant

### II.    AMOUNT OF CLAIM
Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☒ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☐ over $100,000.00

### III.    TYPE OF CASE    (If the case fits more than one type of case,  select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 10/29/2021 01:39:12 PM.****

## CIRCUIT CIVIL

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
    ☐ Business governance
    ☐ Business torts
    ☐ Environmental/Toxic tort
    ☐ Third party indemnification
    ☐ Construction defect
    ☐ Mass tort
    ☐ Negligent security
    ☐ Nursing home negligence
    ☐ Premises liability—commercial
    ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
    ☐ Commercial foreclosure
    ☐ Homestead residential foreclosure
    ☐ Non-homestead residential foreclosure
    ☐ Other real property actions

☐ Professional malpractice
    ☐ Malpractice—business
    ☐ Malpractice—medical
    ☐ Malpractice—other professional
☒ Other
    ☐ Antitrust/Trade regulation
    ☐ Business transactions
    ☐ Constitutional challenge—statute or ordinance
    ☐ Constitutional challenge—proposed amendment
    ☐ Corporate trusts
    ☐ Discrimination—employment or other
    ☐ Insurance claims
    ☐ Intellectual property
    ☒ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities litigation
    ☐ Trade secrets
    ☐ Trust litigation

## COUNTY CIVIL

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

    **IV.**    **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

    **V.**    **NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

    3

    **VI.**    **IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

    **VII.**    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

    **VIII.**    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Robert A. Stok           Fla. Bar # 857051
       Attorney or party                   (Bar # if attorney)

Robert A. Stok                 10/29/2021
  (type or print name)             Date

IN THE CIRCUIT COURT FOR THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

       Plaintiffs,

v.

                                  CASE NO.: CACE-21-019694

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

       Defendant.

_____/

## SUMMONS

THE STATE OF FLORIDA:

To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this Summons and a copy of the Complaint filed in this action, on Defendant, JP Morgan Chase Bank, N.A., by serving:

**JPMORGAN CHASE BANK, N.A.**
c/o  CT Corporation Systems
1200 S Pine Island Road, Plantation FL 33324

      Defendant is required to serve written defenses to the Complaint on Joshua R. Kon, Esq. and Yosef Kudan, Esq., Plaintiff's attorneys, whose address is: STOK KON + BRAVERMAN, One East Broward Boulevard, Suite 915, Fort Lauderdale, Florida 33301 within twenty (20) days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Amended Complaint.

NOV 02 2021

Dated: _____, 2021

                                       Clerk of the Court

                                       BY: _____
                                        As Deputy Clerk



BRENDA D. FORMAN

{00652907}

## IMPORTANT

A lawsuit has been filed against you.  You have twenty (20) calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court.  A phone call will not protect you.  Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case.  If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court.  There are other legal requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you may also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named above.

## IMPORTANTE

Usted ha sido demandado legalmente.   Tiene veinte (20) días, contados a partir de la recepción de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefónica no lo protegerá.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.   Existen otros requisitos legales.   Si lo desea, puede usted consultar a un abogado inmediatamente.   Se no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, deberá usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORT ANT

Des poursuites judiciares ont ete entreprises contre vous.   Vous avez vingt (20) jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal.   Un simple coup de telephone est insuffisant pour vous proteger.  Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entede votre cause. Se vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal.   Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocat, ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme cidessous.

{00652907}

## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN
## AND FOR BROWARD COUNTY, FLORIDA

Case No: _CACE-21-019694_

_MONarch Air Group,_
Plaintiff _LLC_

Judge Division: _05_

VS

_J.P. Morgan Chase_
Defendant
_Bank, N.A._

F I L E D
NOV 01 2021
By _____

## CLERK'S CERTIFICATE OF COMPLIANCE

I hereby certify that pursuant to Administrative Order, No. 2020-73Civ/2020-74-UFC: **"ADMINISTRATIVE ORDER DIRECTING CLERK OF COURTS WITH REGARD TO DISMISSED CIVIL OR FAMILY CASES"**,

The Clerk has conducted a search for all previous existing civil cases related to these two parties.

Listed below are all the aforementioned related cases: _NONE_

Brenda D. Forman
Circuit and County Courts

By: _____

Deputy Clerk

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. CACE-21-019694

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
Liability company, and DAVID GITMAN,

     Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

     Defendant.

_____/

## <u>NOTICE OF APPEARANCE AND DESIGNATION OF E-MAIL ADDRESSES</u>

Please take notice that the law firm of León Cosgrove LLP appears in this case as counsel for Defendant JPMorgan Chase Bank, N.A. All parties are requested to forward copies of all correspondence and pleadings to the undersigned counsel at the address listed below. In addition, all pleadings and papers in this action shall be served by e-mail under Fla. R. Jud. Admin. 2.516 to the following:

| | Primary e-mail address | Secondary e-mail address |
|---|---|---|
| Derek E. León, Esq. | dleon@leoncosgrove.com | eperez@leoncosgrove.com |
| John R. Byrne | jbyrne@leoncosgrove.com | anoonan@leoncosgrove.com |

Dated: November 18, 2021

Respectfully submitted,

_s/ John R. Byrne_
John R. Byrne
  Florida  Bar No. 126294
Derek E. León
  Florida Bar No. 625507
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 740-1975
Fascimile:  (305) 351-4029
Email:  jbyrne@leoncosgrove.com
Email:  dleon@leoncogrove.com
Email:  anoonan@leoncosgrove.com
Email:  eperez@leoncosgrove.com

_Counsel for Defendant JPMorgan Chase Bank, N.A._

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that November 18, 2021the forgoing was electronically filed

with the Clerk of the Courts using the Florida Courts E-Filing Portal, which will send a notice of

electronic filing.

Joshua R. Kon, Esq.
Yosef Kudan, Esq.
STOK KON + BRAVERMAN
One East Broward Blvd., Suite 915
Fort Lauderdale, FL 33301
Telephone: (954) 237-1777
Fascimile:  (954) 237-1737
Email:  service@stoklaw.com

_Counsel for Plaintiff_

_s/ John R. Byrne_
John R. Byrne

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. CACE-21-019694

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
Liability company, and DAVID GITMAN,

       Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

       Defendant.

_____/

## MOTION FOR ENLARGEMENT OF TIME

      Defendant JPMORGAN CHASE BANK, N.A. ("JPMC"), by and through undersigned

counsel, respectfully requests an extension of time to respond to Plaintiffs' Complaint in the above-

referenced matter.  In support, JPMC states the following:

      1.     On November 4, 2021, Plaintiffs served JPMC with a copy of the Complaint in the

above-referenced matter.

      2.     JPMC's response to the Complaint is currently due on November 24, 2021.

      3.     Plaintiffs' Complaint contains allegations requiring investigation before JPMC can

form an appropriate response.

      4.     Accordingly, JPMC is requesting a two-week enlargement of time to respond to the

Complaint, through and including December 8, 2021.

      5.     On November 18, 2021, Counsel for JPMC emailed counsel for Plaintiffs to confer

about the relief requested, but, to date, Plaintiffs' counsel has not responded.

      6.     This motion is made in good faith and not for the purpose of delay, and granting

the requested extension will not prejudice any party to this action.

WHEREFORE, JPMC respectfully requests this Court enter an order granting this motion and providing JPMC a two-week enlargement, up to and including December 8, 2021  to respond to JPMC, and such other relief as the Court deems just and proper.

Dated: November 19, 2021

Respectfully submitted,

*s/ John R. Byrne*

Derek E. León
  Florida Bar No. 625507
John R. Byrne
  Florida  Bar No. 126294
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 740-1975
Fascimile:  (305) 351-4029
Email:  jbyrne@leoncosgrove.com
Email:  dleon@leoncogrove.com
Email:  anoonan@leoncosgrove.com
Email:  eperez@leoncosgrove.com

*Counsel for Defendant JPMorgan Chase Bank, N.A.*

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that November 19, 2021the forgoing was electronically filed

with the Clerk of the Courts using the Florida Courts E-Filing Portal, which will send a notice of

electronic filing.

Joshua R. Kon, Esq.
Yosef Kudan, Esq.
STOK KON + BRAVERMAN
One East Broward Blvd., Suite 915
Fort Lauderdale, FL 33301
Telephone: (954) 237-1777
Fascimile: (954) 237-1737
Email: service@stoklaw.com

*Counsel for Plaintiff*

<u>*s/ John R. Byrne*</u>
John R. Byrne

3

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. <u>CACE21019694</u>  DIVISION <u>05</u>  JUDGE <u>Martin Bidwill</u>

**Monarch Air Group, LLC , et al**

Plaintiff(s) / Petitioner(s)

v.

**JPMorgan Chase Bank, N.A.**

Defendant(s) / Respondent(s)

_____/

## AGREED ORDER GRANTING MOTION FOR ENLARGEMENT OF TIME

**THIS CAUSE** came before the Court upon Defendant JPMorgan Chase Bank, N.A.'s ("JPMC" ) Motion for Enlargement of Time to respond to Plaintiff's Complaint. The Court being advised of the parties' agreement and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Motion is hereby **GRANTED**. JPMC shall have up to and including December 8, 2021, to respond to Plaintiff's Complaint.

**DONE** and **ORDERED** in Chambers, at Broward County, Florida on <u>11-22-2021</u>.

CACE21019694 11-22-2021 4:54 PM

Hon. Martin Bidwill

**CIRCUIT JUDGE**

Electronically Signed by Martin Bidwill

**Copies Furnished To:**

DEREK E. LEON , E-mail : dleon@leoncosgrove.com
DEREK E. LEON , E-mail : eperez@leoncosgrove.com
John Richard Byrne , E-mail : jbyrne@leoncosgrove.com
John Richard Byrne , E-mail : anoonan@leoncosgrove.com
Joshua Kon , E-mail : service@stoklaw.com
Joshua Kon , E-mail : jkon@stoklaw.com
Joshua Kon , E-mail : gortiz@stoklaw.com
Robert A. Stok , E-mail : service@stoklaw.com

Robert A. Stok , E-mail : ssolis@stoklaw.com

# TAB 1-2

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

## I. (a) PLAINTIFFS

MONARCH AIR GROUP, LLC d/b/a MERCURY JETS, a Florida limited liability company, and DAVID GITMAN

**DEFENDANTS**

JPMORGAN CHASE BANK, N.A., a foreign profit corporation

**(b)** County of Residence of First Listed Plaintiff    Broward
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Joshua R. Kon, Stok Kon + Braverman, One East Broward Blvd. Suite 915, Ft. Lauderdale, FL 33301; Tel: 954.237.1777

Attorneys *(If Known)*

Derek E. León and John R. Byrne

Leon Cosgrove, LLP, 255 Alhambra Circle, 8th Floor, Miami, FL Telephone: 305.740.1975

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☒ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729 (a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☒ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | ☐ 368 Asbestos Personal | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | ☐ 340 Marine | | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| Student Loans | ☐ 345 Marine Product | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excl. Veterans) | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act (TCPA) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | | **IMMIGRATION** | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | | ☐ 462 Naturalization Application | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | ☐ 465 Other Immigration Actions | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding    ☒ 2 Removed from State Court    ☐ 3 Re-filed (See VI below)    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district *(specify)*    ☐ 6 Multidistrict Litigation Transfer    ☐ 7 Appeal to District Judge from Magistrate Judgment    ☐ 8 Multidistrict Litigation – Direct File    ☐ 9 Remanded from Appellate Court

## VI. RELATED/ RE-FILED CASE(S)

*(See instructions):* a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ☐ YES ☐ NO

JUDGE:        DOCKET NUMBER:

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:

28 U.S.C. Section 1332

LENGTH OF TRIAL via      days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $** 75,000.01

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☒ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

DATE    12/01/2021

SIGNATURE OF ATTORNEY OF RECORD    Derek E. León

FOR OFFICE USE ONLY : RECEIPT #     AMOUNT     IFP     JUDGE     MAG JUDGE

# TAB 5

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
(FT. LAUDERDALE DIVISION)

Case No.: 21-cv-62429-WPD

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

      Plaintiffs,

vs.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

      Defendant.

_____/

## <u>AMENDED NOTICE OF REMOVAL</u>

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and 12 U.S.C. § 632, Defendant, JPMorgan

Chase Bank, N.A. ("JPMC") hereby gives this Amended Notice of Removal of the above-entitled

action, and all claims and causes of action therein, originally pending in the Circuit Court of the

Seventeenth Judicial Circuit in and for Broward County, Florida (the "State Court Action"). JPMC

appears for the purposes of removal only, reserves all defenses and rights available to it, including

as to proper service and personal jurisdiction. In support of this Amended Notice of Removal,

JPMC states the following:

### I.  THE REMOVED ACTION

1.    The removed case is an action filed on November 1, 2021 in the Seventeenth

Judicial Circuit in and for Broward County, Florida, captioned *Monarch Air Group, LLC d/b/a*

*Mercury Jets, a Florida limited liability company, and David Gitman v. JPMorgan Chase Bank,*

*N.A., a foreign profit corporation*

## II.  PAPERS FROM THE REMOVED ACTION

2.      Pursuant to 28 U.S.C. § 1446(a), JPMC attaches to this Amended Notice of Removal a copy of all process, pleadings, orders, and other papers or exhibits of every kind currently on file in the State Court Action.  *See* Composite Exhibit 1 attached hereto.

3.      Pursuant to 28 U.S.C. § 1446(d), JPMC will file a copy of this Amended Notice of Removal with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, and will serve a copy of this Amended Notice of Removal on Monarch Air Group, LLC and Mr. David Gitman ("Plaintiffs").

## III.  REMOVAL IS TIMELY

4.      Plaintiffs filed this action on November 1, 2021.  Without conceding that service was properly executed, JPMC was purportedly served with Plaintiffs' complaint on November 4, 2021.

5.      This Amended Notice of Removal is being filed within 30 days of JPMC's receipt of Plaintiffs' complaint and thus is timely filed under 28 U.S.C. § 1446(b).  *See, e.g., Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 355-56 (1999) (removal time frame begins upon receipt of formal service; not receipt of complaint); *Chiari v. Wal-Mart Stores, E., LP*, No. 17-61352-CIV, 2018 WL 4409985, at *4 (S.D. Fla. June 29, 2018) (recognizing that "a defendant  may freely amend a notice of removal within  the  30-day  period  of 28  U.S.C.  § 1446(b)").

6.      This Amended Notice of Removal is filed prior to trial and is therefore timely under 12 U.S.C. § 632.  And removal of this case will not cause undue delay in the trial of this case.  Specifically, JPMC was purportedly served on November 4, 2021, and no court has issued a scheduling order regarding this case.

## IV.  VENUE IS PROPER

7.      Venue is proper in the Broward Division of this Court because this action is being removed from the Seventeenth Judicial Circuit in and for Broward County, Florida, and, according to the complaint, the asserted causes of action allegedly accrued in Broward County, Florida.

## V.  THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER THIS ACTION

8.      This Court has subject-matter jurisdiction over this action for two separate reasons: (A) this Court has original jurisdiction under the Edge Act; and (B) this Court has diversity jurisdiction.

**A.      This Court has original jurisdiction over this action pursuant to the Edge Act.**

9.      First, this Court has original jurisdiction over this action pursuant to section 632 of the Edge Act, 12 U.S.C. § 632.

10.      Section 632 of the Edge Act provides an independent basis for federal jurisdiction when the following requirements are met: (1) the suit must be civil in nature; (2) one of the parties at interest must be a corporation organized under the laws of the United States (i.e. a federally chartered bank); and (3) the suit must arise out of a transaction involving international or foreign banking or financial operations. 12 U.S.C. § 632; *see also, e.g., Am. Intern. Group, Inc. ("AIG") v. Bank of Am. Corp.*, 712 F.3d 775, 780 (2d Cir. 2013); *Pinto v. Bank One Corp.*, No. 02 Civ. 8477, 2003 WL 21297300, at *2 (S.D.N.Y. June 4, 2003).  Here, Plaintiffs' action satisfies the jurisdictional requirements of § 632.

11.      First, the suit is civil in nature.

12.      Second, Defendant JPMC is a federally chartered bank.

13.      Third, the action arises out of a transaction involving international or foreign banking or financial operations, specifically, the sending of international wires.

14.     In its complaint, the Plaintiffs allege that:

a.   "Monarch is in the business of (a) providing on-demand, private aircraft charter services in Florida **and across the globe**; (b) providing aircraft management services to aircraft and fleet owners; (c) providing mission critical supplies to United States and non-governmental entities **throughout the world**; (d) providing aircraft acquisition and management services; and; (e) providing specialized aviation solutions." Compl. at ¶7 (emphasis added).

b.   "Monarch transacts business with customers throughout the United States **and the world**." *Id.* at ¶8 (emphasis added).

c.   "Monarch owns and controls several bank accounts for the purposes of transacting business with its customers." *Id.* at ¶9.

d.   "Monarch accepts payments from its customers **via wire and automated clearing house ('ACH') transfers** in exchange for Monarch's services." *Id.* at ¶12.

e.   "Beginning in or around September 2020, Chase began rejecting, cancelling, and otherwise preventing individuals and business receiving payments from Monarch and Gitman and from transferring funds via wire and ACH transfer to and/or from the Plaintiffs." *Id.*

15.     On March 26, 2021, Mr. Gitman, one of the Plaintiffs and the President of Monarch, sent a five-page letter to Congresswoman Waters, the then and current Chairwoman of the U.S. House Committee on Financial Services.  *See* Letter from David Gitman, President, Monarch Air Group, to Hon. Maxine Waters, Congresswoman (Mar. 26, 2021) (attached as "Exhibit 2").

16.     In the letter—which is captioned, "request for assistance to prevent JP Morgan Chase from actively destroying (at least) one small business"—Mr. Gitman relays allegations against JPMC that are similar to the allegations the Plaintiffs make in the complaint.  *Id.*

17.     But, specific to the question of Edge Act jurisdiction, in the letter, Mr. Gitman states:  "JPMC's customers, that have a good relationship with their banker, are actually being advised not to do business with Monarch as there is 'a reason' the wires are being stopped.  As of March 25, 2021, JPMC, has prevented dozens of transfers totaling more than **$1.6m** of funds going to Monarch's Wells Fargo account.  Of those, ***$187k were international wires*** being sent to Monarch by our customers, and from Monarch to our vendors in Canada, but because JPMC was the correspondent bank, the funds were returned to sender."  *Id.* at 2 (emphasis added).

**B.     This Court has diversity jurisdiction over this action.**

18.     Second, this Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are completely diverse and were completely diverse at the time the Plaintiffs filed the complaint.

     a.     <u>There is diversity of citizenship between the parties</u>.

19.     Plaintiff Monarch Air Group, LLC is a limited liability company who, on information and belief, has a single member, Mr. Gitman.  Mr. Gitman is an individual domiciled in Florida and is thus a citizen of Florida.  As a result, Monarch Air Group, LLC is a citizen of Florida.

20.     Plaintiff Mr. Gitman is an individual domiciled in Florida and is thus a citizen of Florida.

21.     JPMC is a national banking association with its main office, as designated in its

articles of association, in Ohio. Accordingly, JPMC is a citizen of Ohio.

22.     The citizenships of each party and the facts set forth in paragraphs 19 through 21 were the same at the time the Plaintiffs filed the complaint.

       b.  The amount in controversy requirement is met.

23.     Plaintiffs do not allege a specific amount in controversy—only that this is an action for damages exceeding $30,000.

24.     However, the complaint, taken together with the March 26, 2021 letter referenced above, establishes that Plaintiffs seek damages in excess of $75,000.

25.     With respect to the complaint, the Plaintiffs allege that:

     a.  Monarch is in the business of "providing on-demand, private aircraft charter services in Florida and across the globe" and (b) "providing aircraft management services to aircraft and fleet owners."  Compl. at ¶7.

     b.  Monarch "owns and controls several bank accounts for the purposes of transacting business with its customers."  *Id.* at ¶9.

     c.  JPMC, among other things: (1) stopped Monarch customers from making payments to Monarch and Mr. Gitman; (2) stopped Monarch and Mr. Gitman from making payments to customers; and (3) published false information about Monarch and/or Mr. Gitman to customers, representing to those customers that, among other things, Monarch/Mr. Gitman were on certain sanction lists.  *Id.*  at ¶¶12, 15-16.

     d.  JPMC's actions "significantly interfered with Plaintiffs' ability to transact business" and "caused Plaintiffs to suffer substantial damages."  *Id.* at ¶16.

26.     Courts in the Eleventh Circuit have upheld the removal of complaints that contain allegations similar to Monarch's allegations that JPMC has "significant interfered" with and

caused "substantial damage" to its business – a luxury business offering global private jet services on demand no less. *Shaker v. Akima Glob. Servs., LLC*, No. 1:16-CV-20146, 2016 WL 4641627, at *2 (S.D. Fla. Sept. 7, 2016) (holding that complaint seeking unspecified damages qualified for removal where it "outlines severe injuries for Plaintiff"); *Lee v. Altamil Corp.*, 457 F. Supp. 979, 981 (M.D. Fla. 1978) (holding that, although "the complaint contained no specific ad damnum clause," "the defendant should have petitioned for the removal of the case within thirty day of receipt" because it "alleged serious permanent injury, 'substantial medical expenses', 'great pain and suffering,' and a substantial loss of income").

27.     In addition to the allegations in the complaint, the March 26, 2021 letter referenced above further proves that the amount in controversy has been met here.

28.     Specifically, in that letter Mr. Gitman, makes representations regarding the alleged damage JPMC has caused Monarch.  Exhibit 2 at *2.  He wrote:

a.   "As of March 25, 2021 JPMC, has prevented dozens of transfers totaling more than $1.6m of funds going to Monarch's Wells Fargo account";

b.   That because of JPMC's actions, some of Monarch's customers had to "utilize a different method of payment such as a credit card, which on its own has resulted in a further loss of over $60k, due to processing fees";

c.   "[T]he reputational damage of losing repeat customers is significantly greater than the direct financial loss"; and

d.   "I want to make this clear: due to this interference with international commerce, there is a good chance that the GDP of the United States is effectively smaller because of JPMC";

29.     Even if one were to conservatively assume that the only direct financial loss to Monarch was the $60,000 in processing fees, Mr. Gitman asserted that the reputational damage to Monarch was "significantly greater" than that loss (i.e., significantly more than $60,000).  At a minimum, then, Mr. Gitman was estimating a loss of over $120,000, which is close to double that of the amount of controversy.

WHEREFORE, Defendant JPMorgan Chase Bank, N.A. respectfully requests, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and 12 U.S.C. § 632, that this action be removed in its entirety from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, to this Court, that this Court proceed with the case as if it was originally initiated in this Court, and that this Court make and enter such further orders as may be necessary and proper.

Dated: December 6, 2021

Respectfully submitted,

**Derek E. León**             
Derek E. León
  Florida Bar No. 625507
John R. Byrne
  Florida  Bar No. 126294
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 740-1975
Fascimile:  (305) 351-4029
Email:  jbyrne@leoncosgrove.com
Email:  dleon@leoncogrove.com
Email:  eperez@leoncosgrove.com
Email:  anoonan@leoncosgrove.com

*Counsel for JPMorgan Chase Bank, N.A.*

# TAB 5-1

# **COMPOSITE EXHIBIT 1**

## Monarch Air Group, LLC , et al Plaintiff vs. JPMorgan Chase Bank, N.A. Defendant

**Broward County Case Number:** CACE21019694
**State Reporting Number:** 062021CA019694AXXXCE
**Court Type:** Civil
**Case Type:** Other - Libel/Slander
**Incident Date:** N/A
**Filing Date:** 10/29/2021
**Court Location:** Central Courthouse
**Case Status:** Disposed
**Magistrate Id / Name:** N/A
**Judge ID / Name:** 05 Bidwill, Martin J.

### – Party(ies)

Total: 3

| Party Type | Party Name | ❓ Address | ❓ Attorneys / Address  ★ Denotes Lead Attorney |
|---|---|---|---|
| Plaintiff | **Monarch Air Group, LLC**  *Doing Business As*  **Mercury Jets** | | ★ Kon, Joshua  Retained  Bar ID: 0056147  One E Broward BLVD  STE 915  Fort Lauderdale, FL 33301  **Status: Active** |
| Defendant | **JPMorgan Chase Bank, N.A.** | | ★ Byrne, John Richard  Retained  Bar ID: 126294  Leon Cosgrove  255 Alhambra Cir Ste 800  Coral Gables, FL 33134  **Status: Active** |
| Plaintiff | **Gitman, David** | | ★ Kon, Joshua  Retained  Bar ID: 0056147  One E Broward BLVD  STE 915  Fort Lauderdale, FL 33301  **Status: Active** |

## − Disposition(s)

Total: 1

| Date | Statistical Closure(s) |
|------|------------------------|
| 12/01/2021 | Disposed by Other |

| Date | Disposition(s) | View | Page(s) |
|------|----------------|------|---------|
| 12/01/2021 | **Notice of Filing/Notice of Removal to Federal Court** | 📄 | 32 |

## − Event(s) & Document(s)

Total: 8

| Date | Description | Additional Text | View | Pages |
|------|-------------|-----------------|------|-------|
| 11/22/2021 | **Order Extending Time** | | 📄 | 2 |
| 11/19/2021 | **Motion for Enlargement of Time** | Party: *Defendant* JPMorgan Chase Bank, N.A. | 📄 | 3 |
| 11/18/2021 | **Notice of Appearance** | Party: *Defendant* JPMorgan Chase Bank, N.A. | 📄 | 2 |
| 11/01/2021 | **Clerk's Certificate of Compliance W-2020-73CIV/2020-74-UFC** | NONE | 📄 | 1 |
| 11/01/2021 | **eSummons Issuance** | JPMORGAN CHASE BANK, N.A | 📄 | 2 |
| 10/29/2021 | **Per AOSC20-23 Amd12, Case is determined General** | | | |
| 10/29/2021 | **Civil Cover Sheet** | Amount: $30,001.00 | 📄 | 3 |
| 10/29/2021 | **Complaint (eFiled)** | Party: *Plaintiff* Monarch Air Group, LLC *Plaintiff* Gitman, David | 📄 | 7 |

**—** Hearing(s)                                                        Total: 0

**There is no Disposition information available for this case.**

**—** Related Case(s)                                                  Total: 0

**There is no related case information available for this case.**

IN THE CIRCUIT COURT FOR THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY,
FLORIDA

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

      Plaintiffs,

                              CASE NO.:

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

      Defendant.

_____/

## COMPLAINT

Plaintiffs, MONARCH AIR GROUP, LLC ("Monarch"), a Florida limited liability
company, and DAVID GITMAN, an individual ("Gitman") (collectively, "Plaintiffs"), by and
through the undersigned counsel, hereby file this Complaint against Defendant, JPMORGAN
CHASE BANK, N.A. ("Chase" or "Defendant"), a foreign profit corporation.

### JURISDICTION AND VENUE

1.      This is an action for damages exceeding Thirty Thousand Dollars ($30,000.00),
exclusive of pre-judgment interest, attorney's fees and costs, and is, thus, within the exclusive
plenary jurisdiction of the Circuit Courts.

2.      Venue is proper in Broward County, Florida, the place the causes of action asserted
herein accrued, the place where the economic damages giving rise to this Complaint occurred, and
the place where Plaintiffs' principal place of business is located.

3.      Plaintiff, MONARCH AIR GROUP, LLC, d/b/a MERCURY JETS, is a Florida
limited liability company with its principal place of business in Broward County, Florida.

STOK KON + BRAVERMAN
1 E. Broward Boulevard, Suite 915 • Fort Lauderdale, FL 33301 • P.954.237.1777 • F.954.237.1737 • E-mail: service@stoklaw.com

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 10/29/2021 01:39:12 PM.****

4.     Plaintiff, DAVID GITMAN, is a sui juris individual doing business in Broward County, Florida.

5.     Defendant, JPMORGAN CHASE BANK, N.A., is a foreign profit corporation.

6.     All conditions precedent to the institution, maintenance, and prosecution of this lawsuit have been performed, excused, waived, or have otherwise occurred.

### GENERAL ALLEGATIONS

7.     Monarch is in the business of (a) providing on-demand, private aircraft charter services in Florida and across the globe; (b) providing aircraft management services to aircraft and fleet owners; (c) providing mission critical supplies to United States and non-governmental entities throughout the world; (d) providing aircraft acquisition and management services; and (e) providing specialized aviation solutions.

8.     Accordingly, Monarch transacts business with customers throughout the United States and the world.

9.     Monarch owns and controls several bank accounts for the purposes of transacting business with its customers. Gitman is a principal of Monarch and also owns and controls bank accounts for purposes of transacting business and paying non-commercial expenses.  Monarch accepts payments from its customers via wire and automated clearing house ("ACH") transfers in exchange for Monarch's services.

10.     Chase is one of the largest consumer banks in the world with over 5,100 branches in the United States alone.

11.     Many of Monarch's customers hold own bank accounts at and conduct their consumer banking affairs with Chase. Many of the individuals and businesses to who Gitman must process payments also own bank accounts and conduct their consumer banking affairs with Chase.

12.     Beginning in or around September 2020, Chase began rejecting, cancelling, and otherwise preventing individuals and business receiving payments from Monarch and Gitman and from transferring funds via wire and ACH transfer to and/or from the Plaintiffs. While Chase was blocking certain transfers to Monarch's account, Chase also permitted other transfers to clear into Monarch's account.

13.     Plaintiffs repeatedly contacted Chase to ascertain the reason(s) behind Chase's repeated rejections of the attempted transfers to and/or from the Plaintiffs.

14.     Notwithstanding Plaintiffs' repeated inquiries, Chase failed to provide a cognizable rationale for its repeated rejections.

15.     Upon further inquiry, Plaintiffs learned that Chase has been transmitting false information to Monarch's customers and Gitman's transferees, including, without limitation, falsely stating that that Monarch and/or Gitman are currently on the Office of Foreign Assets Control's ("OFAC's") ban list, sanctions lists, or another non-compliance lists together with other false allegations of purported criminal activity. Chase and its agents have also published and republished such false information internally and to third parties.

16.     Chase's rejections of wire and ACH transfers to and/or from Plaintiffs; Chase's publication of false information internally and to  third parties, which information is injurious to Plaintiffs' trade and profession; and Chase's failure to advise Plaintiffs of the issues that are preventing individuals and businesses from receiving or sending monies have significantly interfered with Plaintiffs' ability to transact business, have injured the Plaintiffs' reputation and goodwill, and have directly and proximately caused Plaintiffs to suffer substantial damages.

17.     Plaintiffs have retained the undersigned attorneys to prosecute this lawsuit on their behalf and are required to pay said attorneys a reasonable fee for their services.

18.     All conditions precedent to the institution and maintenance of this Action have been performed, excused or have otherwise occurred.

### Count I
### DEFAMATION (SLANDER)

19.     Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 18 as if fully set forth herein.

20.     Chase has made false statements about Plaintiffs to third parties, including, without limitation, falsely stating that Plaintiffs are on OFAC's ban list, sanctions lists, or another non-compliance lists together with other false allegations of purported criminal activity. Chase and its agents have also published and republished such false information internally and to third parties.

21.     Chase made the false statements with knowledge or reckless disregard as to their falsity, or at the very least Chase made the false statements negligently.

22.     Chase's false statements are defamatory *per se*, have significantly interfered with Plaintiffs' proper exercise of its lawful business, and have caused substantial harm to Plaintiffs' relationships with its customers. The false statements also tend to injure Plaintiffs in their trade and profession.

23.     As a direct and proximate result of Chase's defamatory statements, Plaintiffs have suffered substantial damages.

**WHEREFORE**, based on the foregoing, Plaintiffs respectfully demand judgment against Defendant, JP MORGAN CHASE BANK, N.A. for (a) compensatory and consequential damages, (b) court costs, (c) pre- and post-judgment interest, and (d) any such other and further relief as this Court deems just and proper.

## Count II
### DEFAMATION (LIBEL)

24.     Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 18 as if fully set forth herein.

25.     Chase has made false statements about Plaintiffs in writing, including, without limitation, falsely stating that Plaintiffs are on OFAC's ban list, sanctions lists, or another non-compliance lists together with other false allegations of purported criminal activity. Chase and its agents have also published and republished, in writing, such false information internally and to third parties.

26.     Chase made the false statements with knowledge or reckless disregard as to their falsity, or at the very least Chase made the false statements negligently.

27.     Chase's false statements are defamatory *per se*, have significantly interfered with Plaintiffs' proper exercise of their lawful business, and have caused substantial harm to Plaintiffs' relationships with their customers. The false statements also tend to injure Plaintiffs in their trade and profession.

28.     As a direct and proximate result of Chase's defamatory statements, Plaintiffs have suffered substantial damages.

**WHEREFORE**, based on the foregoing, Plaintiffs respectfully demand judgment against Defendant JP MORGAN CHASE BANK, N.A. for (a) compensatory and consequential damages, (b) court costs, (c) pre- and post-judgment interest, and (d) any such other and further relief as this Court deems just and proper.

## Count III
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

29.     Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 18 as if fully set forth herein.

30.     Monarch has business relationships with many customers who have attempted to transfer funds to Monarch's account(s) in exchange for Monarch's services.

31.     Chase had knowledge of Monarch's business relationship with its customers.

32.     Chase intentionally and unjustifiably interference with Monarch's relationships with its customers by making false statements about Monarch to its customers, causing Monarch's customers to breach, terminate, and/or discontinue their business relationships with Monarch.

33.     As a direct and proximate cause of Chase's intentional interference and the ensuing breaches, terminations, and/or discontinuations of the business relationships between Monarch and its customers, Monarch has suffered substantial damages.

**WHEREFORE**, based on the foregoing, MONARCH AIR GROUP, LLC d/b/a MERCURY JETS, respectfully demands judgment against Defendant JP MORGAN CHASE BANK, N.A.  for (a) compensatory and consequential damages, (b) court costs, (c) pre- and post-judgment interest, and (d) any such other and further relief as this Court deems just and proper

### JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: October 29, 2021.

Respectfully submitted,

STOK KON + BRAVERMAN
*Attorneys for Plaintiffs*
One East Broward Blvd.
Suite 915
Fort Lauderdale, Florida 33301
P.954.237.1777
F.954.237.1737
Email: service@stoklaw.com

*/s/ Joshua R. Kon*
JOSHUA R. KON, ESQ.
Florida Bar No.: 56147
YOSEF KUDAN, ESQ.
Florida Bar No.: 1010261

Case 0:21-cv-62429-WPD Document 539 Entered on FLSD Docket 12/06/2021 Page 12 of 24

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.     **CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>SEVENTEENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>BROWARD</u>  COUNTY, FLORIDA

<u>Monarch Air Group, LLC d/b/a Mercury Jets, David Gitman</u>
 Plaintiff                                                     Case # _____
                                                              Judge _____

 vs.

<u>JP Morgan Chase Bank, N.A.</u>
 Defendant

II.     **AMOUNT OF CLAIM**
Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐ $8,001 - $30,000
☒ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☐ over $100,000.00

III.     **TYPE OF CASE**     (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 10/29/2021 01:39:12 PM.****

## CIRCUIT CIVIL

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
      ☐ Business governance
      ☐ Business torts
      ☐ Environmental/Toxic tort
      ☐ Third party indemnification
      ☐ Construction defect
      ☐ Mass tort
      ☐ Negligent security
      ☐ Nursing home negligence
      ☐ Premises liability—commercial
      ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
      ☐ Commercial foreclosure
      ☐ Homestead residential foreclosure
      ☐ Non-homestead residential foreclosure
      ☐ Other real property actions

☐ Professional malpractice
      ☐ Malpractice—business
      ☐ Malpractice—medical
      ☐ Malpractice—other professional
☒ Other
      ☐ Antitrust/Trade regulation
      ☐ Business transactions
      ☐ Constitutional challenge—statute or ordinance
      ☐ Constitutional challenge—proposed amendment
      ☐ Corporate trusts
      ☐ Discrimination—employment or other
      ☐ Insurance claims
      ☐ Intellectual property
      ☒ Libel/Slander
      ☐ Shareholder derivative action
      ☐ Securities litigation
      ☐ Trade secrets
      ☐ Trust litigation

## COUNTY CIVIL

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

    **IV.**    **REMEDIES SOUGHT** (check all that apply):
    ☒ Monetary;
    ☐ Nonmonetary declaratory or injunctive relief;
    ☐ Punitive

    **V.**    **NUMBER OF CAUSES OF ACTION:** [   ]
    (Specify)

     3

    **VI.**    **IS THIS CASE A CLASS ACTION LAWSUIT?**
        ☐ yes
        ☒ no

    **VII.**    **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
        ☒ no
        ☐ yes If "yes," list all related cases by name, case number, and court.

    **VIII.**    **IS JURY TRIAL DEMANDED IN COMPLAINT?**
        ☒ yes
        ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Robert A. Stok               Fla. Bar # 857051
         Attorney or party                    (Bar # if attorney)

Robert A. Stok                  10/29/2021
   (type or print name)             Date

IN THE CIRCUIT COURT FOR THE
SEVENTEENTH JUDICIAL CIRCUIT IN
AND FOR BROWARD COUNTY, FLORIDA

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

      Plaintiffs,

v.

                             CASE NO.: CACE-21-019694

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

      Defendant.

_____/

## SUMMONS

THE STATE OF FLORIDA:

To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this Summons and a copy of the Complaint filed in this action, on Defendant, JP Morgan Chase Bank, N.A., by serving:

**JPMORGAN CHASE BANK, N.A.**
c/o  CT Corporation Systems
1200 S Pine Island Road, Plantation FL 33324

      Defendant is required to serve written defenses to the Complaint on Joshua R. Kon, Esq. and Yosef Kudan, Esq., Plaintiff's attorneys, whose address is: STOK KON + BRAVERMAN, One East Broward Boulevard, Suite 915, Fort Lauderdale, Florida 33301 within twenty (20) days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter.  If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Amended Complaint

Dated:      NOV 02 2021   , 2021                     Clerk of the Court

                                     BY: _____

                                       As Deputy Clerk

**BRENDA D. FORMAN**

{00652907}

## IMPORTANT

A lawsuit has been filed against you.  You have twenty (20) calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court.  A phone call will not protect you.  Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case.   If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court.  There are other legal requirements. You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you may also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named above.

## IMPORTANTE

Usted ha sido demandado legalmente.   Tiene veinte (20) días, contados a partir de la recepción de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefónica no lo protegerá.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.   Existen otros requisitos legales.   Si lo desea, puede usted consultar a un abogado inmediatamente.   Se no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, deberá usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites judiciares ont ete entreprises contre vous.   Vous avez vingt (20) jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal.   Un simple coup de telephone est insuffisant pour vous proteger.  Vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entede votre cause. Se vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal.   Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocat, ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme cidessous.

{00652907}

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN**
**AND FOR BROWARD COUNTY, FLORIDA**

Case No: _CACE-21-019694_

MONarch Air Group,
Plaintiff LLC

Judge Division:_____05____

VS

J.P. Morgan Chase
Defendant
Bank, N.A.

F I L E D
NOV 0 1 2021
By_____

**CLERK'S CERTIFICATE OF COMPLIANCE**

I hereby certify that pursuant to Administrative Order, No. 2020-73Civ/2020-74-UFC:
"**ADMINISTRATIVE ORDER DIRECTING CLERK OF COURTS WITH REGARD TO
DISMISSED CIVIL OR FAMILY CASES**",

The Clerk has conducted a search for all previous existing civil cases related to
these two parties.

Listed below are all the aforementioned related cases:  NONE

Brenda D. Forman
Circuit and County Courts

By: _____

Deputy Clerk

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. CACE-21-019694

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
Liability company, and DAVID GITMAN,

      Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

      Defendant.

_____/

## **NOTICE OF APPEARANCE AND DESIGNATION OF E-MAIL ADDRESSES**

Please take notice that the law firm of León Cosgrove LLP appears in this case as counsel for Defendant JPMorgan Chase Bank, N.A. All parties are requested to forward copies of all correspondence and pleadings to the undersigned counsel at the address listed below. In addition, all pleadings and papers in this action shall be served by e-mail under Fla. R. Jud. Admin. 2.516 to the following:

| | Primary e-mail address | Secondary e-mail address |
|---|---|---|
| Derek E. León, Esq. | dleon@leoncosgrove.com | eperez@leoncosgrove.com |
| John R. Byrne | jbyrne@leoncosgrove.com | anoonan@leoncosgrove.com |

Dated: November 18, 2021

Respectfully submitted,

*s/ John R. Byrne*

John R. Byrne
  Florida  Bar No. 126294
Derek E. León
  Florida Bar No. 625507
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 740-1975
Fascimile:  (305) 351-4029
Email:  jbyrne@leoncosgrove.com
Email:  dleon@leoncogrove.com
Email:  anoonan@leoncosgrove.com
Email:  eperez@leoncosgrove.com

*Counsel for Defendant JPMorgan Chase Bank, N.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that November 18, 2021the forgoing was electronically filed

with the Clerk of the Courts using the Florida Courts E-Filing Portal, which will send a notice of

electronic filing.

Joshua R. Kon, Esq.
Yosef Kudan, Esq.
STOK KON + BRAVERMAN
One East Broward Blvd., Suite 915
Fort Lauderdale, FL 33301
Telephone: (954) 237-1777
Fascimile:  (954) 237-1737
Email:  service@stoklaw.com

*Counsel for Plaintiff*

*s/ John R. Byrne*
John R. Byrne

IN THE CIRCUIT COURT OF THE 17th
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. CACE-21-019694

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
Liability company, and DAVID GITMAN,

       Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

       Defendant.

_____/

## MOTION FOR ENLARGEMENT OF TIME

      Defendant JPMORGAN CHASE BANK, N.A. ("JPMC"), by and through undersigned

counsel, respectfully requests an extension of time to respond to Plaintiffs' Complaint in the above-

referenced matter. In support, JPMC states the following:

      1.     On November 4, 2021, Plaintiffs served JPMC with a copy of the Complaint in the

above-referenced matter.

      2.     JPMC's response to the Complaint is currently due on November 24, 2021.

      3.     Plaintiffs' Complaint contains allegations requiring investigation before JPMC can

form an appropriate response.

      4.     Accordingly, JPMC is requesting a two-week enlargement of time to respond to the

Complaint, through and including December 8, 2021.

      5.     On November 18, 2021, Counsel for JPMC emailed counsel for Plaintiffs to confer

about the relief requested, but, to date, Plaintiffs' counsel has not responded.

      6.     This motion is made in good faith and not for the purpose of delay, and granting

the requested extension will not prejudice any party to this action.

WHEREFORE, JPMC respectfully requests this Court enter an order granting this motion and providing JPMC a two-week enlargement, up to and including December 8, 2021  to respond to JPMC, and such other relief as the Court deems just and proper.

Dated: November 19, 2021

Respectfully submitted,

*s/ John R. Byrne*

Derek E. León
  Florida Bar No. 625507
John R. Byrne
  Florida  Bar No. 126294
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 740-1975
Fascimile:  (305) 351-4029
Email:  jbyrne@leoncosgrove.com
Email:  dleon@leoncogrove.com
Email:  anoonan@leoncosgrove.com
Email:  eperez@leoncosgrove.com

*Counsel for Defendant JPMorgan Chase Bank, N.A.*

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that November 19, 2021the forgoing was electronically filed

with the Clerk of the Courts using the Florida Courts E-Filing Portal, which will send a notice of

electronic filing.

Joshua R. Kon, Esq.
Yosef Kudan, Esq.
STOK KON + BRAVERMAN
One East Broward Blvd., Suite 915
Fort Lauderdale, FL 33301
Telephone: (954) 237-1777
Fascimile: (954) 237-1737
Email: service@stoklaw.com

*Counsel for Plaintiff*

*s/ John R. Byrne*
John R. Byrne

3

Case 0:21-cv-62429-WPD   Document 5-1   Entered on FLSD Docket 12/06/2021   Page 23 of 24

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. <u>CACE21019694</u>   DIVISION <u>05</u>   JUDGE <u>Martin Bidwill</u>

**Monarch Air Group, LLC , et al**

Plaintiff(s) / Petitioner(s)

v.

**JPMorgan Chase Bank, N.A.**

Defendant(s) / Respondent(s)

_____/

## AGREED ORDER GRANTING MOTION FOR ENLARGEMENT OF TIME

**THIS CAUSE** came before the Court upon Defendant JPMorgan Chase Bank, N.A.'s ("JPMC" ) Motion for Enlargement of Time to respond to Plaintiff's Complaint.  The Court being advised of the parties' agreement and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Motion is hereby **GRANTED**.  JPMC shall have up to and including December 8, 2021, to respond to Plaintiff's Complaint.

**DONE** and **ORDERED** in Chambers, at Broward County, Florida on <u>11-22-2021</u>.

CACE21019694 11-22-2021 4:54 PM

Hon. Martin Bidwill

**CIRCUIT JUDGE**

Electronically Signed by Martin Bidwill

**Copies Furnished To:**

DEREK E. LEON , E-mail : dleon@leoncosgrove.com
DEREK E. LEON , E-mail : eperez@leoncosgrove.com
John Richard Byrne , E-mail : jbyrne@leoncosgrove.com
John Richard Byrne , E-mail : anoonan@leoncosgrove.com
Joshua Kon , E-mail : service@stoklaw.com
Joshua Kon , E-mail : jkon@stoklaw.com
Joshua Kon , E-mail : gortiz@stoklaw.com
Robert A. Stok , E-mail : service@stoklaw.com

Robert A. Stok , E-mail : ssolis@stoklaw.com

**TAB 5-2**

# Exhibit 2



610 SW 34th St
Building 3 Suite 307
Ft. Lauderdale, FL 33315
Ft. Lauderdale Int Airport (KFLL)
fly@monarchairgroup.com

March 26, 2021

To: The US House Committee on Financial Services
Attention: The Honorable Maxine Waters
Chairwoman
US House Committee on Financial Services
2129 Rayburn House Office Building
Washington, DC, 20515

Cc: Mr. Jamie Dimon
Chairman and CEO
JP Morgan Chase
270 Park Avenue
New York, NY 10017

## Subject: request for assistance to prevent JP Morgan Chase from actively destroying (at least) one small business

Dear Representative Waters,

Our team has had the honor of accommodating yours, the Honorable Mr. Williams, and the Chief Counsel for the Committee, Ms. Esther Kahng, during your Nassau-Marsh Harbor-Nassau air charter on October 9, 2019, aimed at evaluating the damages caused by Hurricane Dorian. Before anything else, I want to thank you for creating and curating a system that allows small businesses to compete for Government contracts and, of course, for using our services.

This correspondence is a request for assistance to Monarch Air Group, a small business based in Fort Lauderdale, FL. Monarch provides dedicated aircraft to private families, businesses, the US government and world leading NGOs. Our services include air ambulance, rapid transportation of donor organs, mission critical logistics such as pre-disaster evacuation and post disaster resupply. We provided the first commercial service in rural Haiti (second only to the US Military) after Hurricane Matthew in 2016. We have conducted dozens of flights to resupply and evacuate Puerto Rico, including the evacuation of a hospital by a Boeing 767, after the devastating hurricane Maria in 2017. When hurricane Dorian hit the Bahamas in 2019, Monarch was there providing much needed airlift support, resupply and evacuation, including your chartered flight.

1

When the pandemic hit in early 2020 our team adapted quickly to working from home and handled constantly changing international regulations, closed borders, grounded aircraft and a business that came to a screeching halt. We worked with US embassies around the world to literally open borders and bring people home. Our business changed overnight from providing a comfortable service to transporting people in a high-risk category and repatriating Americans stranded in foreign countries.

As commercial airlines cancelled flights, we picked up the pace and came back to doing what we do best: assisting people in a time of need. Monarch has shuttled NGO employees in Africa and Afghanistan, transported mission critical personnel across closed borders and brought families together. Our business returned to pre pandemic levels and kept growing.

This was about to change. In September 2020, a customer of ours who banks with JP Morgan Chase (JPMC) alerted that a wire sent to our Wells Fargo business account was rejected. We soon learned that JPMC began actively preventing payments scheduled to Monarch Air Group, LLC. On repeated occasions when JPMC was instructed to send an ACH or wire to Monarch, the payments were blocked. The reason: "sanctions and/or internal policy."

JPMC's customers, that have a good relationship with their banker, are actually being advised not to do business with Monarch as there is "a reason" the wires are being stopped. As of March 25th, 2021 JPMC, has prevented dozens of transfers totaling more than **$1.6m** of funds going to Monarch's Wells Fargo account. Of those, $187k were international wires being sent to Monarch by our customers, and from Monarch to our vendors in Canada, but because JPMC was the correspondent bank, the funds were returned to sender.

I want to make this clear: due to this interference with international commerce, there is a good chance that the GDP of the United States is effectively smaller because of JPMC.

While some customers are non plussed and utilize a different method of payment such as a credit card, which on its own has resulted in a further loss of over $60k, due to processing fees, many customers have chosen not to use our services any longer simply because a major financial institution is declining to do business with us because the company is allegedly under sanctions.  Each of the stopped transactions is a lost customer who could have the potential to generate return revenue for years to come. Moreover, the reputational damage of losing repeat customers is significantly greater than the direct financial loss.

Monarch has contacted JPMC's corporate office through counsel. After several months of empty back and forth correspondence, a Vice President's and Assistant General Counsel of JPMC stated that: *"Chase **has no obligation** to permit transactions between its customers and Monarch."*

JPMC has effectively implemented financial sanctions on a South Florida small business. These actions are similar to the ones Congress implements on terror organizations, supporters of rogue regimes, arms and drugs dealers.

2

JPMC is denying Monarch access not only to their 63 million US account holders (data from depositaccounts.com) but also to a huge portion of the global financial system, as we cannot work with *any* international bank that uses JPMC as a correspondent bank.

Moreover, some investment companies, such as Fidelity, use JPMC to transfer their customers funds from their investment account. Fidelity will no longer accommodate payments to Monarch, clearly stating that JPMC will not process these transactions due to "sanctions."

This is not a "typo" or "computer error". The Executive office of JPMC is well aware of this situation. Knowingly, JPMC is conducting the following actions:

1. Preventing the 63 million JPMC account holders in the US from doing business with (at least) one specific Florida based small business,
2. Preventing access of Monarch Air Group, a US based corporation, to the global banking system, as JPMC is often the correspondent bank.
3. Preventing customers of Fidelity Investments to use Monarch Air Group's services because Fidelity Investments utilizes Chase as a third party to send ACH and wire transfers.

While we do not know the reason for such actions, we can safely assume one of the following:

    A.  JPMC truly believes that Monarch is on the OFAC SDN list

We have clearly advised the JPMC Executive office that this is simply not true, and the Executive team of the bank has confirmed that the reason for not transferring funds is not OFAC related, but JPMC still regularly advises their customers that Monarch is on the sanctions list.

Or:

    B.  JPMC suspects that Monarch is engaged in an illicit activity

This is factually incorrect. Regardless, they should request additional information, notify law enforcement, and conduct a proper and diligent investigation. This, of course, takes time and money, and it is easier to simply implement sanctions, as JPMC is "not obligated" to transfer funds. JPMC is effectively denying Monarch due process, the right to face our accuser or to simply have an idea of what we are being accused of.

Mrs. Waters, from a global pandemic to a fatal assault on Capitol Hill, we as individuals, and as a country have had a year of many firsts. But still, the American people have not yet entrusted Congressional powers (like implementing sanctions) into the hands of JPMC.

I am writing this letter to the US House Committee on Financial Services because the actions of this raging giant go well outside the realm of Monarch Air Group.

3

Specifically, the current status quo maintains the following:

1. JPMC has a "license to kill" every business, social movement, political party

The ability to legally prevent the flow of funds de-facto allows JPMC, along with other financial institutions, to decide the fate of almost every organization. Today its Monarch Air Group, and probably many other small businesses, tomorrow it's a business owned by an executive's ex-spouse, and the day after it will be a social movement that the CEO does not like or a political party some stake holder does not agree with. If they can get away with blocking payment because they are under "no obligation" to do so, they are de-facto the judge, jury and executioner of every organization.

I am writing to the Committee because a major US financial institution is operating in the shadows, without the slightest transparency or accountability, like the secret police of a doomed dictatorship. With a revenue double the GDP of the Bahamas, JPMC is expected to have more accountability.

2. JPMC's actions are detrimental to law enforcement efforts

While I am not an expert on law enforcement, it seems pretty obvious to me that if JPMC (or any other financial institution) would have prevented transfer of funds to an actual criminal enterprise or individual, this person or organization would have stopped doing what they are doing, destroyed evidence and relocated. Alerting criminals to their activity is probably not very welcomed by law enforcement. I highly doubt that these criminals, if faced with this situation, would have been writing letters to JPMCs corporate office, not to mention the House Committee on Financial Services. Maybe a thank you note.

3. Legitimatizing an illegitimate system

When a legitimate business, like Monarch Air Group, and likely many other businesses, cannot use an official and legitimate financial system, these businesses turn to legal but less popular systems. Be it cash, crypto, stock, real estate, gold bars or other commodities - commerce will continue whether JPMC likes it or not. Considering that necessity is the mother of innovation, rivaled only by the American small business owner, these kind of actions by a major financial institution are in fact detrimental to the entire financial system.

4

Mrs. Waters,

Three different attorneys advised me that we have a solid case for two claims: defamation (their private bankers really do talk a lot) and tortuous interference. JPMC will drag this legal case across many years and even more millions of dollars, making this truly a David and Goliath confrontation, but as a small business owner, I handle the equivalent of three Goliath's every morning. And we all know who won that battle.

Having said that, I cordially request the assistance of the House Committee on Financial Services to stop JPMC from destroying (at least) one small business.

Respectfully,

David Gitman
President
█████@monarchairgroup.com
954-359-████

# TAB 21

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

MONARCH AIR GROUP, LLC d/b/a       **Case No.** 21-62429-CIV-DIMITROULEAS
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

     Plaintiff,

vs.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

     Defendant.

_____/

### AMENDED COMPLAINT

Plaintiffs, MONARCH AIR GROUP, LLC ("Monarch"), a Florida limited liability company, and DAVID GITMAN, an individual ("Gitman") (collectively, "Plaintiffs"), by and through the undersigned counsel, hereby file this Amended Complaint against Defendant, JPMORGAN CHASE BANK, N.A. ("Chase" or "Defendant"), a foreign profit corporation, seeking damages and injunctive relief.

### JURISDICTION AND VENUE

1.     The Court has subject matter jurisdiction under 28 U.S.C. §1332, as the Plaintiff is a foreign citizen, and the Defendant is a citizen of the State of Florida, and the amount in controversy exceeds $75,000.00, exclusive of interest, attorney's fees, and costs.

2.     Venue is proper in the Southern District Court of Florida, Fort Lauderdale Division under 28 U.S.C. § 1446(a) as the District and Division to where this was pending when Chase removed this Action.

3.     Plaintiff, MONARCH AIR GROUP, LLC, d/b/a MERCURY JETS, is a Florida limited liability company with its principal place of business in Broward County, Florida, and is a Florida citizen.

4.     Plaintiff, DAVID GITMAN, is a sui juris individual doing business in Broward County, Florida, and is a citizen of Florida.

5.     Defendant, JPMORGAN CHASE BANK, N.A., is a citizen of Ohio.

6.     All conditions precedent to the institution, maintenance, and prosecution of this lawsuit have been performed, excused, waived, or have otherwise occurred.

<u>GENERAL ALLEGATIONS</u>

7.     Monarch is in the business of (a) providing on-demand, private aircraft charter services in Florida and across the globe; (b) providing aircraft management services to aircraft and fleet owners; (c) providing mission critical supplies to United States and non-governmental entities throughout the world; (d) providing aircraft acquisition and management services; and (e) providing specialized aviation solutions.

8.     Accordingly, Monarch transacts business with customers throughout the United States and the world.

9.     Monarch owns and controls several bank accounts for the purposes of transacting business with its customers. Gitman is a principal of Monarch and also owns and controls bank accounts for purposes of transacting business and paying non-commercial expenses. Monarch accepts payments from its customers via wire and automated clearing house ("ACH") transfers in exchange for Monarch's services.

10.    Chase is one of the largest consumer banks in the world with over 5,100 branches in the United States alone.

11.     Many of Monarch's customers hold, own bank accounts at, and conduct their consumer banking affairs with Chase. Many of the individuals and businesses to who Gitman must process payments also own bank accounts and conduct their consumer banking affairs with Chase.

12.     Beginning in or around September 2020, Chase began rejecting, cancelling, and otherwise preventing individuals and business receiving payments from Monarch and Gitman and from transferring funds via wire and ACH transfer to and/or from the Plaintiffs. While Chase was blocking certain transfers to Monarch's account, Chase also permitted other transfers to clear into Monarch's account.

13.     Plaintiffs repeatedly contacted Chase to ascertain the reason(s) behind Chase's repeated rejections of the attempted transfers to and/or from the Plaintiffs.

14.     Notwithstanding Plaintiffs' repeated inquiries, Chase failed to provide a cognizable rationale for its repeated rejections.

15.     Upon further inquiry, Plaintiffs learned that Chase has been transmitting false information to Monarch's customers and Gitman's transferees, including, without limitation, falsely stating that that Monarch and/or Gitman are currently on the Office of Foreign Assets Control's ("OFAC's") ban list, sanctions lists, or another non-compliance lists together with other false allegations and/or implications of purported criminal, risky, untrustworthy or other nefarious activity. Chase and its agents have also published and republished such false information internally and to third parties.

16.     Specifically, Chase, through written and electronic communications told the following customers[1] that Monarch and/or Gitman are currently on the Office of Foreign Assets Control's ("OFAC's") ban list, sanctions lists, or another non-compliance lists:

---

[1] Plaintiffs set out the names of their customers by initials and will provide the full names to Defendant upon the entry of a confidentiality order. Plaintiffs conferred with Defendant about this process.

    a.  P.T. 4/21/2021

    b.  J.H. 3/22/2021

    c.  V.V. 3/17/2021

    d.  P.Z. 4/14/2021

    e.  S.N. 1/5/2021

17.    Specifically, Chase made false and defamatory statements to the following Monarch customers:

    a.  S.R. 7/20/2021 "sending money to Monarch is risky and indicates that Monarch is not trustworthy"

    b.  A.A. 7/16/2021 "wire put on hold due to technical or money laundering suspicion"

    c.  M.F. 4/2/2021 Chase Banker told customer "Wire could not be processed because [Monarch] dealt with an OFAC country at some point. Those are countries like North Korea, Syria, etc. that are on a US list of countries not to do business with."

    d.  M.B. 4/14/2021 "Monarch has compliance issues"

    e.  S.E. 4/24/2021 "'Monarch Air' was flagged for having sanctions with the government. This Company was flagged for being 'against compliance.'"

18.    Upon information and belief, Chase made additional defamatory statements, both orally and in writing, that, without the benefit of discovery, Plaintiffs are unable to assert with more particularity. The sum and substance of the statements was that Plaintiffs are on sanction(s) lists because of criminal activity or are engaging in other suspicious business activities, all of which are absolutely false. Chase is in possession, custody, and control of the documents and records that Plaintiffs need to sufficiently identify additional instances of libel and slander.

STOK KON + BRAVERMAN

1 E. Broward Boulevard, Suite 915 • Fort Lauderdale, FL 33301 • P.954.237.1777 • F.954.237.1737 • E-mail: service@stoklaw.com

19.     Chase's rejections of wire and ACH transfers to and/or from Plaintiffs; Chase's publication of false information internally and to third parties, which information is injurious to Plaintiffs' trade and profession; and Chase's failure to advise Plaintiffs of the issues that are preventing individuals and businesses from receiving or sending monies have significantly interfered with Plaintiffs' ability to transact business, have injured the Plaintiffs' reputation and goodwill, and have directly and proximately caused Plaintiffs to suffer substantial damages.

20.     Plaintiffs have retained the undersigned attorneys to prosecute this lawsuit on their behalf and are required to pay said attorneys a reasonable fee for their services.

21.     All conditions precedent to the institution and maintenance of this Action have been performed, excused or have otherwise occurred.

### Count I
### DEFAMATION (SLANDER)

22.     Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 21 as if fully set forth herein.

23.     Chase has made false statements about Plaintiffs to third parties, including, without limitation, falsely stating that Plaintiffs are on OFAC's ban list, sanctions lists, or another non-compliance lists together with other false allegations of purported criminal activity. Chase and its agents have also published and republished such false information internally and to third parties.

24.     Chase made the false statements with knowledge or reckless disregard as to their falsity, or at the very least Chase made the false statements negligently, because Chase confirmed that Plaintiffs were not subject to sanctions or on any OFAC sanctions list before making those false and defamatory statements to Plaintiff's customers.

25.     Chase's false statements are defamatory *per se*, have significantly interfered with Plaintiffs' proper exercise of its lawful business, and have caused substantial harm to Plaintiffs'

relationships with its customers. The false statements also tend to injure Plaintiffs in their trade and profession.

26.     As a direct and proximate result of Chase's defamatory statements, Plaintiffs have suffered substantial damages.

**WHEREFORE**, based on the foregoing, Plaintiffs respectfully demand judgment against Defendant, JP MORGAN CHASE BANK, N.A.  for (a) compensatory and consequential damages, (b) court costs, (c) pre- and post-judgment interest, and (d) any such other and further relief as this Court deems just and proper.

## Count II
### DEFAMATION (LIBEL)

27.     Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 21 as if fully set forth herein.

28.     Chase has made false statements about Plaintiffs in writing, including, without limitation, falsely stating that Plaintiffs are on OFAC's ban list, sanctions lists, or another non-compliance lists together with other false allegations of purported criminal activity. Chase and its agents have also published and republished, in writing, such false information internally and to third parties.

29.     Chase made the false statements with knowledge or reckless disregard as to their falsity, or at the very least Chase made the false statements negligently because Chase confirmed that Plaintiffs were not subject to sanctions or on any OFAC sanctions list before making those false and defamatory statements to Plaintiff's customers.

30.     Chase's false statements are defamatory *per se*, have significantly interfered with Plaintiffs' proper exercise of their lawful business, and have caused substantial harm to Plaintiffs'

relationships with their customers. The false statements also tend to injure Plaintiffs in their trade and profession.

31.     As a direct and proximate result of Chase's defamatory statements, Plaintiffs have suffered substantial damages.

**WHEREFORE**, based on the foregoing, Plaintiffs respectfully demand judgment against Defendant JP MORGAN CHASE BANK, N.A.  for (a) compensatory and consequential damages, (b) court costs, (c) pre- and post-judgment interest, and (d) any such other and further relief as this Court deems just and proper.

**Count III**
**DEFAMATION BY IMPLICATION**

32.     Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 21 as if fully set forth herein.

33.     Chase published information about Plaintiffs to its customers and prospective customers, as set out in the general allegations by juxtaposing and/or conveying incomplete information and/or omitting facts so as to imply a defamatory connection between Plaintiffs and the OFAC sanctions list, and thereby, falsely implying that Plaintiffs were subject to sanctions from the United States government.

34.     Chase made the false statements with malice and knowledge or reckless disregard as to their falsity as Chase has confirmed that Plaintiffs' wires and transactions were not denied because of any OFAC or other sanctions concerns.

35.     As a direct and proximate result of Chase's defamatory statements, Plaintiffs have suffered substantial damages.

**WHEREFORE**, based on the foregoing, Plaintiffs respectfully demand judgment against Defendant JP MORGAN CHASE BANK, N.A.  for (a) compensatory and consequential damages,

(b) court costs, (c) pre- and post-judgment interest, and (d) any such other and further relief as this Court deems just and proper.

**Count IV**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP**

36.    Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 21 as if fully set forth herein.

37.    Monarch has business relationships with many customers, specifically identified in paragraphs 16-17 who have attempted to transfer funds to Monarch's account(s) in exchange for Monarch's services, such as charter flights.

38.    Chase had knowledge of Monarch's business relationship with its customers from Monarch's customers and potential customers initiating wire transfers to pay for Monarch's services.

39.    Chase intentionally and unjustifiably interference with Monarch's relationships with its customers by falsely stating to its customers that Monarch was the subject of sanctions or on the OFAC sanctions list, when Chase knew that Monarch was not on any OFAC sanctions list, causing Monarch's customers to breach, terminate, and/or discontinue their business relationships with Monarch because Monarch's customer and prospective customers did not want to conduct business with Monarch based on Chase's false claims that Monarch was sanctioned by the United States government, as they informed Monarch.

40.    As a direct and proximate cause of Chase's intentional interference and the ensuing breaches, terminations, and/or discontinuations of the business relationships between Monarch and its customers, Monarch has suffered substantial damages.

**WHEREFORE**, based on the foregoing, MONARCH AIR GROUP, LLC d/b/a MERCURY JETS, respectfully demands judgment against Defendant JP MORGAN CHASE

STOK KON + BRAVERMAN

1 E. Broward Boulevard, Suite 915 • Fort Lauderdale, FL 33301 • P.954.237.1777 • F.954.237.1737 • E-mail: service@stoklaw.com

BANK, N.A.  for (a) compensatory and consequential damages, (b) a preliminary and permanent

injunction (c) court costs, (d) pre- and post-judgment interest, and (e) any such other and further

relief as this Court deems just and proper

### **JURY DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: January 21, 2022.

Respectfully submitted,
**STOK KON+ BRAVERMAN**

Attorneys for Plaintiffs
One East Broward Boulevard
Suite 915
Fort Lauderdale, Florida 33301
Tel.: (954) 237-1777
Fax: (954) 237-1737
Email: jkon@stoklaw.com
Secondary:service@stoklaw.com

BY: /s/  *Joshua R. Kon, Esq.*
JOSHUA R. KON, ESQ.
Florida Bar No. 56147
(jkon@stoklaw.com)
YOSEF KUDAN, ESQ.
Florida Bar No. 1010261
(ykudan@stoklaw.com)

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed and served via the CM/ECF filer on this 21st day of January 2022, on all parties and counsel of record:

LEÓN COSGROVE, LLP 255 Alhambra Circle, 8th Floor  Miami, Florida 33134, Derek E. León, Esq.   dleon@leoncogrove.com;   jbyrne@leoncosgrove.com;   eperez@leoncosgrove.com; anoonan@leoncosgrove.com.

# TAB 25

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(FT. LAUDERDALE DIVISION)**

Case No.: 21-cv-62429-WPD

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

      Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

      Defendant.

_____/

**JPMORGAN CHASE BANK, N.A.'S ANSWER**
**AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT**

Defendant JPMorgan Chase Bank, N.A. ("JPMC") files its Answer and Affirmative Defenses to the Amended Complaint in this action [ECF No. 21], and states as follows:

**ANSWER**

**JURISDICTION AND VENUE**

1.      JPMC admits that the Court has subject matter jurisdiction over this action. Otherwise, JPMC denies the allegations in paragraph 1.

2.      For venue purposes only, JPMC admits the allegations in paragraph 2.

3.      JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 3 and, therefore, denies the allegations.

4.      JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 4 and, therefore, denies the allegations.

5.      JPMC admits the allegations in paragraph 5.

6.      JPMC denies the allegations in paragraph 6.

## GENERAL ALLEGATIONS

7.      JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 7 and, therefore, denies the allegations.

8.      JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 8 and, therefore, denies the allegations.

9.      JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 9 and, therefore, denies the allegations.

10.     JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 10 and, therefore, denies the allegations.

11.     JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 11 and, therefore, denies the allegations.

12.     JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 12 and, therefore, denies the allegations.

13.     JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 13 and, therefore, denies the allegations.

14.     JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 14 and, therefore, denies the allegations.

15.     JPMC denies the allegations in paragraph 15.

16.     The allegations in paragraph 16 fail to provide the identity of any customers, making it impossible to either admit or deny the allegations at the present juncture.  Therefore, JPMC denies the allegations in paragraph 16 and its subparts.

17.     The allegations in paragraph 17 fail to provide the identity of any customers, making it impossible to either admit or deny the allegations at the present juncture.  Further, the allegations in paragraph 17 are legal conclusions to which no response is required.  To the extent a response is required, JPMC denies the allegations in paragraph 17 and its subparts.

18.     The allegations in paragraph 18 contain legal conclusions to which no response is required.  To the extent a response is required, JPMC denies the allegations in paragraph 18.

19.     JPMC denies the allegations in paragraph 19.

20.     JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 20 and, therefore, denies the allegations.

21.     JPMC denies the allegations in paragraph 21.

**Count I**
**DEFAMATION (SLANDER)**

22.     JPMC incorporates by reference its responses to the allegations set forth in paragraphs 1 through 21 above.

23.     JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 23 and, therefore, denies the allegations.

24.     The allegations in paragraph 24 contain legal conclusions to which no response is required.  To the extent a response is required, JPMC denies the allegations in paragraph 24.

25.     JPMC denies the allegations in paragraph 25.

26.     JPMC denies the allegations in paragraph 26.

Plaintiffs' prayer for relief contains no allegations and, therefore, no response is required.  To the extent a response is required, JPMC denies the allegations and the prayer for relief.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  | WWW.LEONCOSGROVE.COM

**Count II**
**DEFAMATION (LIBEL)**

27.     JPMC incorporates by reference its responses to the allegations set forth in paragraphs 1 through 21 above.

28.     JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 28 and, therefore, denies the allegations.

29.     The allegations in paragraph 29 contain legal conclusions to which no response is required.  To the extent a response is required, JPMC denies the allegations in paragraph 29.

30.     JPMC denies the allegations in paragraph 30.

31.     JPMC denies the allegations in paragraph 31.

Plaintiffs' prayer for relief contains no allegations and, therefore, no response is required. To the extent a response is required, JPMC denies the allegations and the prayer for relief.

**COUNT III**
**DEFAMATION BY IMPLICATION**

32.     JPMC incorporates by reference its responses to the allegations set forth in paragraphs 1 through 21 above.

33.     The allegations in paragraph 33 are legal conclusions to which no response is required.  To the extent a response is required, JPMC denies the allegations in paragraph 33.

34.     JPMC denies the allegations in paragraph 34.

35.     JPMC denies the allegations in paragraph 35.

Plaintiffs' prayer for relief contains no allegations and, therefore, no response is required. To the extent a response is required, JPMC denies the allegations and the prayer for relief.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975 | WWW.LEONCOSGROVE.COM

**COUNT IV**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP**

36.     JPMC incorporates by reference its responses to the allegations set forth in paragraphs 1 through 21 above.

37.     JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 37 and, therefore, denies the allegations.

38.     JPMC is without sufficient knowledge to admit or deny the allegations in paragraph 38 and, therefore, denies the allegations.

39.     JPMC denies the allegations in paragraph 39.

40.     JPMC denies the allegations in paragraph 40.

Plaintiffs' prayer for relief contains no allegations and, therefore, no response is required. To the extent a response is required, JPMC denies the allegations and the prayer for relief.

**AFFIRMATIVE DEFENSES**

**First Affirmative Defense**
**(Truth or Substantial Truth)**

The Plaintiffs cannot prevail on their claims because some or all of the statements allegedly made by JPMC were true or substantially true.

**Second Affirmative Defense**
**(Qualified Privilege)**

The Plaintiffs cannot prevail on their claims because any verbal or written statements by JPMC were made pursuant to a qualified privilege.  Under Florida law, "[t]he essential elements of a qualified privilege include: (1) good faith; (2) an interest in the subject by the speaker or a subject in which the speaker has a duty to speak; (3) a corresponding interest or duty in the listener or reader; (4) a proper occasion; and (5) publication in a proper manner." *Falic v. Legg Mason*

5

*Wood Walker*, Inc., 347 F. Supp. 2d 1260, 1264 (S.D. Fla. 2004).  Given the allegations of the Amended Complaint, the qualified privilege applies.

First, JPMC spoke or wrote in good faith because, according to the alleged statements, JPMC expressed concern about the trustworthiness or legally compliant nature of Monarch Air Group ("Monarch Air") and/or David Gitman ("Gitman").

Second, based on the allegations in the Amended Complaint, JPMC clearly had an interest in the subject of the statements.  As alleged by Plaintiffs, JPMC "is one of the largest consumers banks in the world" and one whose own customers allegedly do business with Monarch Air and/or Gitman.  Most critically, JPMC allegedly wrote or spoke to a narrow subset of persons, namely, customers of Monarch Air who were banking (or attempting to bank)—***through*** JPMC—with either Monarch Air and/or Gitman.   Under these circumstances, JPMC's interest in the trustworthiness or legally compliant nature of Monarch Air and/or Gitman is readily apparent.

Third, the "listener[s] or reader[s]" had "a corresponding interest" in the subject of the statements.  According to the Plaintiffs, these listeners or readers were customers of Monarch Air and/or Gitman who were attempting to bank with Monarch Air and/or Gitman.  Such persons would have had an obvious interest in the trustworthiness or legally compliant nature of Monarch Air and/or Gitman.

Fourth, JPMC spoke or wrote on a "proper occasion."  Again, JPMC was speaking or writing to Monarch Air customers who were banking (or attempting to bank) with either Monarch Air and/or Gitman through JPMC.

Fifth, and finally, JPMC spoke or wrote in a "proper manner."  The Amended Complaint does not allege that JPMC widely broadcasted its alleged statements to large groups of people.  To

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

the contrary, it alleges that JPMC made ten discrete statements to ten different Monarch Air customers over the course of six-plus months.

**Third Affirmative Defense**
**(Plaintiffs are Defamation-Proof)**

The Plaintiffs cannot prevail on their claims because they are defamation-proof. Specifically, the Plaintiffs allege that JPMC made approximately ten false and defamatory statements about them, with the first occurring on January 5, 2021 and the last on July 20, 2021. Before JPMC made these statements, multiple news outlets had published stories about Monarch Air.  First, on March 14, 2019, a publicly accessible website titled "The Stern Facts" published an article alleging that "Monarch Air is allegedly a Russian mob front" and that persons used "Monarch to funnel money and drugs on behalf of the Russian Mafia."  Second, on November 27, 2020, a publicly accessible website titled "Organized Crime and Corruption Reporting Project" published a lengthy article titled, "Flight of the Monarch: US Gov't Contracted Airline Once Owned by Criminals with Ties to Russian Mob" about Monarch Air.  That article alleged, among other things, (1) that Monarch Air "was once part-owned by two men who worked with a major Russian-American organized crime group"; (2) that in 2017, Jacob Gitman, whom the article identified as David Gitman's father and a prior owner of 90 percent of Monarch Air, "was found liable in a civil lawsuit of misleading investors about technology, expertise, and potential profits from an operation to supposedly convert used tires into fuel"; and (3) that Monarch Air's "air carrier certificate was revoked in February 2018."

Given the representations in these articles, which remained publicly accessible as of the date of this filing, JPMC's alleged statements could not have caused Monarch Air any further reputational harm.

### Fourth Affirmative Defense
### (Mitigation of Damages)

The Plaintiffs' damages are barred in whole or in part by their failure to mitigate damages.

### Fifth Affirmative Defense
### (Limitation of Damages)

The Plaintiffs' claims for consequential, or any indirect or special damages, are barred by Monarch Air Group, LLC's deposit agreement with JPMC. Under that deposit agreement, the Plaintiffs agreed that "[JPMC] WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES."

### Sixth Affirmative Defense
### (Conduct Permitted by Agreement)

The Plaintiffs' claims for any damages suffered in connection with any blocking of transactions or any closing of accounts are barred by Monarch Air Group, LLC's deposit agreement with JPMC. Under the deposit agreement, the Plaintiffs agreed that JPMC may (1) "decline or prevent any or all transactions to or from your account"; (2) "refuse, freeze, reverse or delay any specific withdrawal, payment or transfer of funds to or from your account"; and (3) "close your account (other than a CD) at any time for any reason or no reason without prior notice."

### Seventh Affirmative Defense
### (Causation)

The Plaintiffs' claims against JPMC are barred, in whole or in part, because any damages allegedly suffered by Plaintiffs were the result, in whole or in part, of Plaintiffs' own legal fault or the fault of third parties over which JPMC has no control.

### **JPMC'S RIGHT TO AMEND**

JPMC reserves the right to amend its affirmative defenses.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

## <u>CONCLUSION</u>

WHEREFORE, JPMC prays as follows:

1. That judgment be entered in favor of JPMC and against Plaintiffs;

2. That this honorable Court award JPMC such other relief as it deems just and proper.

Dated:  February 18, 2022

Respectfully submitted,

<u>**Derek E. León**</u>
Derek E. León
  Florida Bar No. 625507
John R. Byrne
  Florida Bar No. 126294
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone:  305.740.1975
Facsimile:  305.351.4059
Email:  dleon@leoncosgrove.com
Email:  jbyrne@leoncosgrove.com
*Counsel for JPMorgan Chase Bank, N.A.*

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

# TAB 78

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

MONARCH AIR GROUP, LLC d/b/a      **Case No.** 21-62429-CIV-DIMITROULEAS
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

      Plaintiff,

vs.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

      Defendant.

_____/

### SECOND AMENDED COMPLAINT

Plaintiffs, MONARCH AIR GROUP, LLC ("Monarch"), a Florida limited liability company, and DAVID GITMAN, an individual ("Gitman") (collectively, "Plaintiffs"), by and through the undersigned counsel, hereby file this Second Amended Complaint against Defendant, JPMORGAN CHASE BANK, N.A. ("Chase" or "Defendant"), a foreign profit corporation, seeking damages and injunctive relief.

### JURISDICTION AND VENUE

1.  The Court has subject matter jurisdiction under 28 U.S.C. §1332, as the Plaintiff is a foreign citizen, and the Defendant is a citizen of the State of Florida, and the amount in controversy exceeds $75,000.00, exclusive of interest, attorney's fees, and costs.

2.  Venue is proper in the Southern District Court of Florida, Fort Lauderdale Division under 28 U.S.C. § 1446(a) as the District and Division to where this was pending when Chase removed this Action.

3.      Plaintiff, MONARCH AIR GROUP, LLC, d/b/a MERCURY JETS, is a Florida limited liability company with its principal place of business in Broward County, Florida, and is a Florida citizen.

4.      Plaintiff, DAVID GITMAN, is a sui juris individual doing business in Broward County, Florida, and is a citizen of Florida.

5.      Defendant, JPMORGAN CHASE BANK, N.A., is a citizen of Ohio.

6.      All conditions precedent to the institution, maintenance, and prosecution of this lawsuit have been performed, excused, waived, or have otherwise occurred.

<u>**GENERAL ALLEGATIONS**</u>

7.      Monarch is in the business of (a) providing on-demand, private aircraft charter services in Florida and across the globe; (b) providing aircraft management services to aircraft and fleet owners; (c) providing mission critical supplies to United States and non-governmental entities throughout the world; (d) providing aircraft acquisition and management services; and (e) providing specialized aviation solutions.

8.      Accordingly, Monarch transacts business with customers throughout the United States and the world.

9.      Monarch owns and controls several bank accounts for the purposes of transacting business with its customers. Gitman is a principal of Monarch and also owns and controls bank accounts for purposes of transacting business and paying non-commercial expenses. Monarch accepts payments from its customers via wire and automated clearing house ("ACH") transfers in exchange for Monarch's services.

10.     Chase is one of the largest consumer banks in the world with over 5,100 branches in the United States alone.

11.     Many of Monarch's customers hold, own bank accounts at, and conduct their consumer banking affairs with Chase. Many of the individuals and businesses to who Gitman must process payments also own bank accounts and conduct their consumer banking affairs with Chase.

12.     Beginning in or around September 2020, Chase began rejecting, cancelling, and otherwise preventing individuals and business receiving payments from Monarch and Gitman and from transferring funds via wire and ACH transfer to and/or from the Plaintiffs. While Chase was blocking certain transfers to Monarch's account, Chase also permitted other transfers to clear into Monarch's account.

13.     Plaintiffs repeatedly contacted Chase to ascertain the reason(s) behind Chase's repeated rejections of the attempted transfers to and/or from the Plaintiffs.

14.     Notwithstanding Plaintiffs' repeated inquiries, Chase failed to provide a cognizable rationale for its repeated rejections.

15.     Upon further inquiry, Plaintiffs learned that Chase has been transmitting false information to Monarch's customers and Gitman's transferees, including, without limitation, falsely stating that that Monarch and/or Gitman are currently on the Office of Foreign Assets Control's ("OFAC's") ban list, sanctions lists, or another non-compliance lists together with other false allegations and/or implications of purported criminal, risky, untrustworthy or other nefarious activity. Chase and its agents have also published and republished such false information internally and to third parties, including other banks.

16.     Specifically, Chase, through written and electronic communications told the following customers[1] that Monarch and/or Gitman are currently on the Office of Foreign Assets Control's ("OFAC's") ban list, sanctions lists, or another non-compliance lists:

---

[1] Plaintiffs set out the names of their customers by initials and provided the full names to Defendant after the Court entered a confidentiality order. [DE 47].

STOK KON + BRAVERMAN

1 E. Broward Boulevard, Suite 915 • Fort Lauderdale, FL 33301 • P.954.237.1777 • F.954.237.1737 • E-mail: service@stoklaw.com

    a.  P.T. 4/21/2021

    b.  D.G. 3/22/2021

    c.  V.V. 3/17/2021

    d.  P.Z. 4/14/2021

    e.  S.N. 1/5/2021

17.    Specifically, Chase, through written and electronic communications told the following customers[2] that they could not execute a transaction with Monarch and/or Gitman "due to sanctions…."[3]

    a.  C. O. 9/20/2020

    b.  J.A. 9/29/2020, 11/3/2020, 3/2/2021

    c.  M.K. 9/21/2021

    d.  R.M. 9/30/2020,11/16/2020, 12/8/2020

    e.  T.E. 11/30/2020

    f.  M.K. 12/18/2020

    g.  B.M. 12/18/2020

    h.  *Illegible* 1/12/2021

    i.  T.C.R. 1/19/2021, 1/20/2021

    j.  S.M. 1/21/2021

    k.  Mr. S. 2/19/2021

    l.  M.M.B. 2/24/2021, 11/1/2021

    m.  A.O.B. LLC  3/8/2021

---

[2] These customers were identified from documents Chase produced to Plaintiffs. At the time this Complaint is being drafted, Chase has not yet produced legible documents sufficient to identify several customer to whom the statements were made.

[3] The remainder of the sentence included the non-defamatory statement "and/or Internal JPM Policy."

STOK KON + BRAVERMAN

1 E. Broward Boulevard, Suite 915 • Fort Lauderdale, FL 33301 • P.954.237.1777 • F.954.237.1737 • E-mail: service@stoklaw.com

n.  V.H. LLC 3/16/2021

o.  Illegible 3/19/2021

p.  C.C.H. LLC 4/15/2021, 4/19/2021

q.  S.C.R. LLC 5/10/2021

r.  D.I.I. 5/24/2021, 5/25/2021

s.  J.A 5/28/2021

t.  E.U. Inc. 6/2/2021

u.  Illegible 6/14/2021

v.  M.W.H 7/1/2021

w.  E.P.S. LLC 7/1/2021

x.  Illegible 7/2/2021

y.  D.P.S. 7/7/2021

z.  W.A.G. 7/12/2021

aa. D.A. LLC 7/12/2021

bb. L.H.P. 7/15/2021

cc. S.R. 7/19/2021

dd. L.S.J. 7/20/2021

ee. C.L.C. LLC 8/5/2021

ff.  A.B. 8/5/2021

gg. R.R. LLC 9/13/2021

hh. A.R.F.9/17/2021

ii.  K.O.A. 9/21/2021

jj.  A.U. LLC 9/24/2021

STOK KON + BRAVERMAN

1 E. Broward Boulevard, Suite 915 • Fort Lauderdale, FL 33301 • P.954.237.1777 • F.954.237.1737 • E-mail: service@stoklaw.com

kk. N.A. LLC 9/27/2021

ll.  E.J. 9/29/2021

mm.      P.J.M. 10/21/2021

nn. E.F.T. LLC 11/12/2021

oo. T.M. 11/19/2021

pp. F.Z. LLC 11/22/2021

qq. M.J.P. 11/24/2021

rr.  Illegible 12/15/2021

ss. Illegible 12/29/2021

18.    Specifically, Chase made false and defamatory statements to the following Monarch customers:

a.  S.R. 7/20/2021 "sending money to Monarch is risky and indicates that Monarch is not trustworthy"

b. A.A. 7/16/2021 "wire put on hold due to technical or money laundering suspicion"

c. M.F. 4/2/2021 Chase Banker told customer "Wire could not be processed because [Monarch] dealt with an OFAC country at some point. Those are countries like North Korea, Syria, etc. that are on a US list of countries not to do business with."

d. M.B. 4/14/2021 "Monarch has compliance issues"

e. S.E. 4/24/2021 "'Monarch Air' was flagged for having sanctions with the government. This Company was flagged for being 'against compliance.'"

19.    Upon information and belief, Chase made additional defamatory statements, both orally and in writing, that, without the benefit of discovery, Plaintiffs are unable to assert with more particularity. The sum and substance of the statements was that Plaintiffs are on sanction(s)

STOK KON + BRAVERMAN

1 E. Broward Boulevard, Suite 915 • Fort Lauderdale, FL 33301 • P.954.237.1777 • F.954.237.1737 • E-mail: service@stoklaw.com

lists because of criminal activity or are engaging in other suspicious business activities, all of which are absolutely false. Chase is in possession, custody, and control of the documents and records that Plaintiffs need to sufficiently identify additional instances of libel and slander.

20.    Chase made all of the above defamatory statements while knowing that Plaintiffs were not sanctioned or any OFAC lists.

21.    The reason that Chase decided not to do business with Plaintiffs is because it was concerned negative media coverage. Chase's Global Payments Anti-Money Laundering Oversight Committee placed Plaintiffs on an internal list that automatically resulted in all transactions to or from them being cancelled. At the time Chase was communicating the above communications to Plaintiffs' customers and vendors, a Senior Compliance Officer with Chase's Global Sanctions Compliance department communicated to Chase's customer service representatives that the transactions were not cancelled for "sanctions."

22.    Rather than communicate that to Plaintiffs' customers and vendors, Chase intentionally instructed their agents to communicate that transactions could not be completed "due to sanctions."

23.    Chase's rejections of wire and ACH transfers to and/or from Plaintiffs; Chase's publication of false information internally and to third parties, which information is injurious to Plaintiffs' trade and profession; and Chase's failure to advise Plaintiffs of the issues that are preventing individuals and businesses from receiving or sending monies have significantly interfered with Plaintiffs' ability to transact business, have injured the Plaintiffs' reputation and goodwill, and have directly and proximately caused Plaintiffs to suffer substantial damages.

24.    Plaintiffs have retained the undersigned attorneys to prosecute this lawsuit on their behalf and are required to pay said attorneys a reasonable fee for their services.

25.     All conditions precedent to the institution and maintenance of this Action have been performed, excused or have otherwise occurred.

## Count I
### DEFAMATION (SLANDER)

26.     Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 25 as if fully set forth herein.

27.     Chase has made false statements about Plaintiffs to third parties, including, without limitation, falsely stating that Plaintiffs are on OFAC's ban list, sanctions lists, or another non-compliance lists together with other false allegations of purported criminal activity. Chase and its agents have also published and republished such false information internally and to third parties.

28.     Chase made the false statements with knowledge or reckless disregard as to their falsity, or at the very least Chase made the false statements negligently, because Chase confirmed that Plaintiffs were not subject to sanctions or on any OFAC sanctions list before making those false and defamatory statements to Plaintiff's customers.

29.     Chase's false statements are defamatory *per se*, have significantly interfered with Plaintiffs' proper exercise of its lawful business, and have caused substantial harm to Plaintiffs' relationships with its customers. The false statements also tend to injure Plaintiffs in their trade and profession.

30.     As a direct and proximate result of Chase's defamatory statements, Plaintiffs have suffered substantial damages.

31.     Chase's misconduct, as described herein, was willful, wanton, and malicious. If such misconduct were permitted without rebuke it would encourage others to engage in such willful misconduct.

**WHEREFORE**, based on the foregoing, Plaintiffs respectfully demand judgment against Defendant, JP MORGAN CHASE BANK, N.A.  for (a) compensatory and consequential damages, (b) punitive damages, (c) court costs, (d) pre- and post-judgment interest, and (e) any such other and further relief as this Court deems just and proper.

### Count II
### <u>DEFAMATION (LIBEL)</u>

32.     Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 25 as if fully set forth herein.

33.     Chase has made false statements about Plaintiffs in writing, including, without limitation, falsely stating that Plaintiffs are on OFAC's ban list, sanctions lists, or another non-compliance lists together with other false allegations of purported criminal activity. Chase and its agents have also published and republished, in writing, such false information internally and to third parties.

34.     Chase made the false statements with knowledge or reckless disregard as to their falsity, or at the very least Chase made the false statements negligently because Chase confirmed that Plaintiffs were not subject to sanctions or on any OFAC sanctions list before making those false and defamatory statements to Plaintiff's customers.

35.     Chase's false statements are defamatory *per se*, have significantly interfered with Plaintiffs' proper exercise of their lawful business, and have caused substantial harm to Plaintiffs' relationships with their customers. The false statements also tend to injure Plaintiffs in their trade and profession.

36.     As a direct and proximate result of Chase's defamatory statements, Plaintiffs have suffered substantial damages.

37.     Chase's misconduct, as described herein, was willful, wanton, and malicious. If such misconduct were permitted without rebuke it would encourage others to engage in such willful misconduct.

**WHEREFORE**, based on the foregoing, Plaintiffs respectfully demand judgment against Defendant, JP MORGAN CHASE BANK, N.A.  for (a) compensatory and consequential damages, (b) punitive damages, (c) court costs, (d) pre- and post-judgment interest, and (e) any such other and further relief as this Court deems just and proper.

**Count III**
**DEFAMATION BY IMPLICATION**

38.     Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 25 as if fully set forth herein.

39.     Chase published information about Plaintiffs to its customers and prospective customers, as set out in the general allegations by juxtaposing and/or conveying incomplete information and/or omitting facts so as to imply a defamatory connection between Plaintiffs and the OFAC sanctions list, and thereby, falsely implying that Plaintiffs were subject to sanctions from the United States government.

40.     Chase made the false statements with malice and knowledge or reckless disregard as to their falsity as Chase has confirmed that Plaintiffs' wires and transactions were not denied because of any OFAC or other sanctions concerns.

41.     As a direct and proximate result of Chase's defamatory statements, Plaintiffs have suffered substantial damages.

42.     Chase's misconduct, as described herein, was willful, wanton, and malicious. If such misconduct were permitted without rebuke it would encourage others to engage in such willful misconduct.

**WHEREFORE**, based on the foregoing, Plaintiffs respectfully demand judgment against Defendant, JP MORGAN CHASE BANK, N.A. for (a) compensatory and consequential damages, (b) punitive damages, (c) court costs, (d) pre- and post-judgment interest, and (e) any such other and further relief as this Court deems just and proper.

## Count IV
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

43.     Plaintiffs reallege and reincorporate the allegations in paragraphs 1 through 25 as if fully set forth herein.

44.     Monarch has business relationships with many customers, specifically identified in paragraphs 16-17 who have attempted to transfer funds to Monarch's account(s) in exchange for Monarch's services, such as charter flights.

45.     Chase had knowledge of Monarch's business relationship with its customers from Monarch's customers and potential customers initiating wire transfers to pay for Monarch's services.

46.     Chase intentionally and unjustifiably interference with Monarch's relationships with its customers by falsely stating to its customers that Monarch was the subject of sanctions or on the OFAC sanctions list, when Chase knew that Monarch was not on any OFAC sanctions list, causing Monarch's customers to breach, terminate, and/or discontinue their business relationships with Monarch because Monarch's customer and prospective customers did not want to conduct business with Monarch based on Chase's false claims that Monarch was sanctioned by the United States government, as they informed Monarch.

47.     As a direct and proximate cause of Chase's intentional interference and the ensuing breaches, terminations, and/or discontinuations of the business relationships between Monarch and its customers, Monarch has suffered substantial damages.

STOK KON + BRAVERMAN

1 E. Broward Boulevard, Suite 915 • Fort Lauderdale, FL 33301 • P.954.237.1777 • F.954.237.1737 • E-mail: service@stoklaw.com

48.     Chase's misconduct, as described herein, was willful, wanton, and malicious. If such misconduct were permitted without rebuke it would encourage others to engage in such willful misconduct.

**WHEREFORE**, based on the foregoing, Plaintiffs respectfully demand judgment against Defendant, JP MORGAN CHASE BANK, N.A.  for (a) compensatory and consequential damages, (b) punitive damages, (c) court costs, (d) pre- and post-judgment interest, and (e) any such other and further relief as this Court deems just and proper.

<u>**JURY DEMAND**</u>

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: December 20, 2022.


                                        Respectfully submitted,
                                        **STOK KON+ BRAVERMAN**

                                        Attorneys for Plaintiffs
                                        One East Broward Boulevard
                                        Suite 915
                                        Fort Lauderdale, Florida 33301
                                        Tel.: (954) 237-1777
                                        Fax: (954) 237-1737
                                        Email: jkon@stoklaw.com
                                        Secondary:service@stoklaw.com


                                        BY: /s/  *Joshua R. Kon, Esq.*
                                        JOSHUA R. KON, ESQ.
                                        Florida Bar No. 56147
                                        (jkon@stoklaw.com)
                                        YOSEF KUDAN, ESQ.
                                        Florida Bar No. 1010261
                                        (ykudan@stoklaw.com)

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed and served via the CM/ECF filer on this December 20, 2022, on all parties and counsel of record: Derek E. León, Esq., dleon@leoncogrove.com; Benjamin Weinberg, Esq., bweinberg@leoncosgrove.com, eperez@leoncosgrove.com; Sofia Manzo, Esq., smanzo@leoncosgrove.com, aquezada@leoncosgove.com; LEÓN COSGROVE, LLP 255 Alhambra Circle, 8th Floor Miami, Florida 33134.

Respectfully submitted,

**STOK KON + BRAVERMAN**
Attorneys for Plaintiffs
One East Broward Boulevard
Suite 915
Fort Lauderdale, Florida 33301
Tel.: (954) 237-1777
Fax: (954) 237-1737
Email: service@stoklaw.com


/s/ Joshua R. Kon, Esq.
JOSHUA R. KON, ESQ.
Florida Bar No. 56147
(jkon@stoklaw.com)
YOSEF KUDAN, ESQ.
Florida Bar No. 1010261
(ykudan@stoklaw.com)
ALEX KAPLAN, ESQ.
Florida Bar No. 1030761
(akaplan@stoklaw.com)

# TAB 85

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### (FT. LAUDERDALE DIVISION)

Case No.: 21-cv-62429-WPD

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

      Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

      Defendant.

_____/

## JPMORGAN CHASE BANK, N.A.'S ANSWER, DEFENSES
## AND AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT

Defendant JP Morgan Chase Bank, N.A.'s ("Chase") Answer, Defenses and Affirmative

Defenses to the Second Amended Complaint [ECF No. 78] follows:

### ANSWER

### JURISDICTION AND VENUE

1.    Chase admits that the Court has subject matter jurisdiction over this action.

Otherwise, Chase denies the allegations in paragraph 1.

2.    For venue purposes only, Chase admits the allegations in paragraph 2.

3.    Chase is without sufficient knowledge to admit or deny the allegations in paragraph

3 and, therefore, denies the allegations.

4.    Chase is without sufficient knowledge to admit or deny the allegations in paragraph

4 and, therefore, denies the allegations.

5.    Chase admits the allegations in paragraph 5.

6.      Chase denies the allegations in paragraph 6.

## GENERAL ALLEGATIONS

7.      Chase is without sufficient knowledge to admit or deny the allegations in paragraph 7 and, therefore, denies the allegations.

8.      Chase is without sufficient knowledge to admit or deny the allegations in paragraph 8 and, therefore, denies the allegations.

9.      Chase is without sufficient knowledge to admit or deny the allegations in paragraph 9 and, therefore, denies the allegations.

10.     Chase is without sufficient knowledge to admit or deny the allegations in paragraph 10 and, therefore, denies the allegations.

11.     Chase is without sufficient knowledge to admit or deny the allegations in paragraph 11 and, therefore, denies the allegations.

12.     Chase denies the allegations in paragraph 12.

13.     Chase admits that counsel for Plaintiffs contacted Chase to inquire about cancelled wire transactions, and denies the remaining allegations in paragraph 13.

14.     Chase denies the allegations in paragraph 14.

15.     Chase denies the allegations in paragraph 15.

16.     Chase denies the allegations in paragraph 16 and its subparts.

17.     Chase denies the allegations in paragraph 17 and its subparts.

18.     Chase denies the allegations in paragraph 18 and its subparts.

19.     Chase denies the allegations in paragraph 19.

20.     Chase denies the allegations in paragraph 20.

21.     Chase denies the allegations in paragraph 21.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

22.     Chase denies the allegations in paragraph 22.

23.     Chase denies the allegations in paragraph 23.

24.     Chase is without sufficient knowledge to admit or deny the allegations in paragraph 24 and, therefore, denies the allegations.

25.     Chase denies the allegations in paragraph 25.

**Count I**
**DEFAMATION (SLANDER)**

26.     Chase incorporates herein by reference its responses above to the allegations set forth in paragraphs 1 through 25.

27.     Chase denies the allegations in paragraph 27.

28.     Chase denies the allegations in paragraph 28.

29.     Chase denies the allegations in paragraph 29.

30.     Chase denies the allegations in paragraph 30.

31.     Chase denies the allegations in paragraph 31.

The "WHEREFORE" clause beneath paragraph 31 contains no factual allegations and, therefore, no response is required. Chase, however, denies that Plaintiffs are entitled to any relief.

**Count II**
**DEFAMATION (LIBEL)**

32.     Chase incorporates herein by reference its responses to the allegations set forth in paragraphs 1 through 25 above.

33.     Chase denies the allegations in paragraph 33.

34.     Chase denies the allegations in paragraph 34.

35.     Chase denies the allegations in paragraph 35.

36.     Chase denies the allegations in paragraph 36.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

37.     Chase denies the allegations in paragraph 37.

The "WHEREFORE" clause beneath paragraph 37 contains no factual allegations and, therefore, no response is required. Chase, however, denies that Plaintiffs are entitled to any relief.

## COUNT III
## DEFAMATION BY IMPLICATION

38.     Chase incorporates herein by reference its responses above to the allegations set forth in paragraphs 1 through 25.

39.     Chase denies the allegations in paragraph 39.

40.     Chase denies the allegations in paragraph 40.

41.     Chase denies the allegations in paragraph 41.

42.     Chase denies the allegations in paragraph 42.

The "WHEREFORE" clause beneath paragraph 42 contains no factual allegations and, therefore, no response is required. Chase, however, denies that Plaintiffs are entitled to any relief.

## COUNT IV
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

43.     Chase incorporates herein by reference its responses above to the allegations set forth in paragraphs 1 through 25.

44.     Chase is without sufficient knowledge to admit or deny the allegations in paragraph 44 and, therefore, denies the allegations.

45.     Chase denies the allegations in paragraph 45.

46.     Chase denies the allegations in paragraph 46.

47.     Chase denies the allegations in paragraph 47.

48.     Chase denies the allegations in paragraph 48.

The "WHEREFORE" clause beneath paragraph 48 contains no factual allegations and, therefore, no response is required. Chase, however, denies that Plaintiffs are entitled to any relief.

4

## DEFENSES AND AFFIRMATIVE DEFENSES

### (Truth or Substantial Truth)

The Plaintiffs cannot prevail on their claims because some or all of the statements allegedly made by Chase were true or substantially true.

### (Privilege)

The Plaintiffs cannot prevail on their claims because any verbal or written statements by Chase were made pursuant to a conditional privilege. The statements were made in good faith. Chase allegedly wrote or spoke to a narrow subset of persons, namely, Chase accountholders whose transactions Chase was unable execute. Chase allegedly wrote or spoke to those accountholders about those transactions. Chase, therefore, had an interest or duty in the subject matter of the statements, and the statements were made to another person having a corresponding interest or duty in the subject matter of the statements. Chase also wrote or spoke to those accountholders in a proper manner. The alleged statements were also limited in scope to the transactions Chase was unable execute and the reasons Chase was unable execute the transactions. The information was not disclosed to additional persons.

### (Plaintiffs are Defamation-Proof)

The Plaintiffs cannot prevail on their claims because they are defamation-proof.  Before Chase made the alleged defamatory statements, multiple news outlets had published stories about Monarch Air Group, LLC ("Monarch"). On March 14, 2019, a publicly accessible website titled "The Stern Facts" published an article alleging that "Monarch Air is allegedly a Russian mob front" and that persons used "Monarch to funnel money and drugs on behalf of the Russian Mafia." On November 27, 2020, a publicly accessible website titled "Organized Crime and Corruption Reporting Project" published a lengthy article titled, "Flight of the Monarch: US Gov't Contracted Airline Once Owned by Criminals with Ties to Russian Mob" about Monarch Air.  That article

5

alleged, among other things, (1) that Monarch Air "was once part-owned by two men who worked with a major Russian-American organized crime group"; (2) that in 2017, Jacob Gitman, whom the article identified as David Gitman's father and a prior owner of 90 percent of Monarch Air, "was found liable in a civil lawsuit of misleading investors about technology, expertise, and potential profits from an operation to supposedly convert used tires into fuel"; and (3) that Monarch Air's "air carrier certificate was revoked in February 2018."

Given the representations in these articles, which remain publicly accessible as of the date of this filing, Chase's alleged statements could not have caused Monarch any further reputational harm.

### (Mitigation of Damages)

The Plaintiffs' damages are barred in whole or in part by their failure to mitigate damages.

### (Limitation of Damages)

The Plaintiffs' claims for consequential, or any indirect or special damages, are barred by Plaintiffs' deposit agreements with Chase. Under that deposit agreements, Plaintiffs agreed that "[Chase] WILL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES."

### (Conduct Permitted by Agreement)

Plaintiffs' claims for any damages suffered in connection with any cancellation of transactions or any closing of accounts are barred by their deposit agreements with Chase. Under the deposit agreements, Plaintiffs agreed that Chase may (1) "decline or prevent any or all transactions to or from your account"; (2) "refuse, freeze, reverse or delay any specific withdrawal, payment or transfer of funds to or from your account"; and (3) "close your account (other than a CD) at any time for any reason or no reason without prior notice."

**(Causation)**

The Plaintiffs' claims against Chase are barred, in whole or in part, because any damages allegedly suffered by Plaintiffs were the result, in whole or in part, of Plaintiffs' own legal fault or the fault of third parties over which Chase has no control.

**(Failure to State a Cause of Action)**

Plaintiffs' Second Amended Complaint fails to state any viable cause of action under Florida law.

**(Single Action Rule)**

Plaintiffs' claim for tortious interference is barred by the "single action rule." The single action rule does not permit multiple actions to be maintained when they arise from the same publication upon which a defamation claim is based. Plaintiffs' claim for tortious interference is based upon the same allegedly defamatory statements as their claims for defamation, slander, and defamation by implication.

## CHASE'S RIGHT TO AMEND

Chase reserves the right to amend its affirmative defenses.

## CONCLUSION

WHEREFORE, Chase prays as follows:

1.      That judgment be entered in favor of Chase and against Plaintiffs;

2.      That this honorable Court award Chase such other relief as it deems just and proper.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR  |  MIAMI, FL 33134  |  T 305.740.1975  |  WWW.LEONCOSGROVE.COM

Dated:  January 3, 2023

Respectfully submitted,

**Benjamin Weinberg**

Derek E. León
  Florida Bar No. 625507
Benjamin Weinberg
  Florida Bar No. 061519
**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone:  305.740.1975
Facsimile:  305.351.4059
Email:  dleon@leoncosgrove.com
Email:  bweinberg@leoncosgrove.com

*Counsel for JPMorgan Chase Bank, N.A.*

# TAB 86

**(FILED UNDER SEAL)**

# TAB 88

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
(FT. LAUDERDALE DIVISION)

MONARCH AIR GROUP, LLC d/b/a                          CASE NO.: 21-cv-62429-WPD
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

       Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

       Defendant.

_____/

**PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

      Plaintiffs, Monarch Air Group, LLC d/b/a Mercury Jets, a Florida limited liability company

("Monarch") and David Gitman, an individual ("Gitman") (collectively, "Plaintiffs") by and

through the undersigned counsel, pursuant to Local Rule 56.1, hereby submits this Statement of

Undisputed Material Facts in Support of their Motion for Partial Summary Judgment.

      1.     Chase communicated to Monarch's customers and vendors that it could not

complete their wire transfers to Monarch "due to Sanctions and/or Internal JPMC Policy." [DE

86-1, 86-3, JPMC_1780-1902, 86-6 at 13].

      2.     Chase knew at the time it communicated to Monarch's customers and vendors that

it could not complete their wire transfers to Monarch "due to Sanctions and/or Internal JPMC

Policy" that Monarch was not subject to sanctions and that was not the reason that the wire

transfers to Monarch were cancelled. [DE 86-2, 86-4, 86-5 at 44:2-20;49:24-25;50:1-9, 86-7, 86-

8].

3.      Cancelling a wire due to "JPMC Internal Policy" is distinct from being cancelled due to "sanctions." [DE 86-5 at 56:23-25;57:1-25;57:1-3].

4.      Chase commingles its sanctions compliance with its other internal policy compliance procedures. [DE 86-5 at 58:9-59:18, 86-12, 86-16 at 29:19-30:1;32:16-25].

5.      Chase's communications to Monarch's customers and vendors regarding cancelled wires resulted in Monarch being subject to distrust and caused serious harm to the function of its business and reputation. [DE 86-6, 1-25].

6.      Chase was fully capable of communicating non-defamatory statements to Monarch's customers, i.e., communications that did not mention sanctions as a reason for the cancellation of wire transfers, as it did on at least one occasion. [DE 86-3, JPMC_1823].

7.      Chase admits that replacing "and/or" with "and" in its statement to Monarch's customers and vendors that their wire transfers could not be completed due to "sanctions and/or internal JPMC policy" would lead to Chase making a false statement regarding Monarch. [DE 86-5 at 46:19-25;47:1].

8.      The phrase "and/or" indicates that the surrounding two words or expressions are to be taken together or individually. [DE 86-14, 86-15, 86-5 at 72:22-25;73:1-9, 86-16 at 35:15-19;44:6-16].

9.      After seeing in internal communications that Chase cancelled Monarch's wires "due to Sanctions and/or Internal JPMC Policy," Chase's own employees believed the cause of the cancellation was due to sanctions, and not because of internal Chase policy. [DE 86-5 at 61:10-25;62:1-12;108:16-25;109:1-8;120:3-15;121:5-12, 86-10, 86-11].

10.     Chase's Corporate Representative failed to testify regarding what "good faith" reliance Chase did to confirm the internal "investigation" that led to Monarch being placed on

Chase's AML Interdiction List. The Corporate Representative did not talk to (i) the GFIU unit who came up with these false "facts" about Monarch; (ii) the Chase employees in the separate sanctions department who confirmed it was not sanctions yet continued to tell Monarch's customers and vendors that they were; or (iii) those at Chase charged with communicating with Monarch's customers and vendors who supposedly acted in good faith. [DE 86-5 at 20:13-15; 20:21-24;51:13-25; 52:1-2;69:2-12;97:11-12;132:21-24].

11.     Monarch attempted to mitigate its damages by (i) charging Monarch's customers' credit cards when a wire with Chase was cancelled; and (ii) having protocols and policies now in place to screen for Chase customers before they try to send wires and are told it will be cancelled because Monarch is engaging in criminal conduct such that doing business with them is illegal – i.e., sanctions. [DE 86-18].

12.     Chase terminated its contractual and business relationship with Plaintiffs effective December 27, 2019. [DE 86-4, 86-17].

**[CERTIFICATE OF SERVICE TO FOLLOW]**

## <u>CERTIFICATE OF SERVICE</u>

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed and served via the CM/ECF filer on **January 4, 2023**, on all parties and counsel of record: Derek E. León, Esq., dleon@leoncogrove.com; Benjamin Weinberg, Esq., bweinberg@leoncosgrove.com, eperez@leoncosgrove.com; Sofia Manzo, Esq., smanzo@leoncosgrove.com, aquezada@leoncosgove.com; LEÓN COSGROVE, LLP 255 Alhambra Circle, 8th Floor  Miami, Florida 33134.

Respectfully submitted,

STOK KON + BRAVERMAN
Attorneys for Plaintiffs
One East Broward Boulevard
Suite 915
Fort Lauderdale, Florida 33301
Tel.: (954) 237-1777
Fax: (954) 237-1737
Email:  service@stoklaw.com


*/s/Joshua R. Kon, Esq.*
JOSHUA R. KON, ESQ.
Florida Bar No. 56147
(jkon@stoklaw.com)
YOSEF KUDAN, ESQ.
Florida Bar No. 1010261
(ykudan@stoklaw.com)
ALEX KAPLAN, ESQ.
Florida Bar No. 1030761
(akaplan@stoklaw.com)

# TAB 89

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### (FT. LAUDERDALE DIVISION)

MONARCH AIR GROUP, LLC d/b/a          CASE NO.: 21-cv-62429-WPD
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

       Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

       Defendant.

_____/

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs, Monarch Air Group, LLC d/b/a Mercury Jets, a Florida limited liability company ("Monarch") and David Gitman, an individual ("Gitman") (collectively, "Plaintiffs") by and through the undersigned counsel, pursuant to Federal Rule of Civil Procedure 56, hereby move for partial summary judgment relief against Defendant, JPMorgan Chase Bank, N.A. ("Chase") as to Count I, Count II and Count III of the Second Amended Complaint.

## INTRODUCTION

This case involves an international bank, Chase, communicating defamatory statements about Plaintiffs, including that Chase would not complete wire transfers to Monarch "due to Sanctions and/or Internal JPMC Policy," *see e.g.* SUMF at ¶ 1, [DE 86-1],[1] while knowing that Plaintiffs were not subject to any sanctions and communicating internally that the reason for the wire cancellations "w[as] not sanctions…," *see id.* at ¶ 2, [DE 86-2]. These defamatory statements were not just made to the public at large, but worse, specifically to Plaintiffs' customers and vendors causing serious harm to Plaintiffs' reputations, substantial business losses, and additional costs that were incurred mitigating the damage caused by Chase's wanton misconduct.

Rather than simply communicate that it would not transfer funds to or from Plaintiffs because of Chase's internal policy, Chase told more than forty people doing business with the

---

[1]      The exhibits will be filed under seal, under the terms of the Confidentiality Order. [DE 47].

Plaintiffs that they could not complete wire transfers "due to sanctions" and communicated to others that "sending money to Monarch is risky and indicates that Monarch is untrustworthy," a "wire [was] put on hold due to technical or money laundering suspicion," a "[w]ire could not be processed because [Monarch] dealt with an OFAC country at some point. Those are countries like North Korea, Syria, etc. that are on a US list of countries not to do business with," and "Monarch Air was flagged for having sanctions with the government." Chase made all these false and defamatory statements knowing that they were absolutely false, as Chase knew that the Plaintiffs were not subject to sanctions and that there were no legal issues doing business with them. Based on these numerous and undisputed defamatory statements, and the juxtaposition of statements implying a defamatory connection between them – all to the severe detriment of Plaintiffs – Plaintiffs are entitled to summary judgment on Count I (Defamation – Slander), Count II (Defamation – Libel), and Count III (Defamation by Implication) as a matter of law.

<u>**ANALYSIS**</u>

**I.        <u>Standard for Summary Judgment</u>**

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-movant, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  This burden may be met by "showing – that is, pointing out to the court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden has been met, the nonmoving party must point to specific evidence in the record that establishes a genuine issue of material fact from which a reasonable jury could return a verdict in its favor. *See id.* at 323-34; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**II.       <u>Plaintiffs' are entitled to summary judgment on Counts I and II for defamation</u>**

"Defamation under Florida law has these five elements: (1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). "A statement is defamatory if it 'tends to harm the reputation of another by lowering him or her in the estimation

of the community or, more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation.'" *Rapp*, 997 So. 2d at 1109. *Sloan v. Shatner*, 8:17-CV-332-T-27AAS, 2018 WL 3769968, at \*4 (M.D. Fla. June 22, 2018).

The defamatory statement must "be construed as the common mind would naturally understand it." *See McCormick v. Miami Herald Pub. Co.*, 139 So. 2d 197, 200 (Fla. 2d DCA 1962). The defamatory statement must be "considered in its natural sense without forced or strained construction." *Byrd v. Hustler Mag., Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983). "A workable test is whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.*

A defamatory statement should not be given a tortured interpretation; instead, courts must construe the statement in the way the common mind and the reader to whom it was addressed would ordinarily understand it. *See Fortson v. Colangelo*, 434 F.Supp. 2d 1369, 1381-1382 (S.D. Fla. 2006).

> In determining the availability of a defamatory meaning for a given statement, a court considers the statement in the context of the publication as a whole and evaluates it as it would be understood by the common mind. A court must consider a publication in its totality, looking at all the words used, not merely a particular phrase or sentence. Articles are to be considered with their illustrations; pictures are to be viewed with their captions; stories are to be read with their headlines.

*Folta v. New York Times Company*, No. 1:17-cv-246-MW/GRJ, 2019 WL 1486776, at \*10 (N.D. Fla. 2019) (internal citations and quotations omitted). "In assessing the status of potentially defamatory statements, a court 'must construe the statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication.'" *Id.* (internal citations omitted).

A. <u>Chase's defamatory statements made directly to Plaintiffs' customers and vendors</u>

Dating back as early as September 2020, Chase lied to Monarch's customers and vendors that Monarch is associated with the Office of Foreign Assets Control ("OFAC") sanction list and cannot process wire transfers due to "Sanctions and/or Internal JPMC Policy." *See* SUMF at ¶ 1, JPMC_1780-1902.[2] The defamation has continued even in the face of Chase indisputably admitting, both internally and in response to Monarch's queries, that Monarch is not on any OFAC

---

[2]     The pin cite refers to the Bates Stamp number provided within Chase's document production.

sanctions list and is not nor has ever been the subject of any sanctions. *See id.* at ¶ 2, [DE 86-4] ("For risk reasons Chase decided to exit the relationship with Monarch. Our risk decision was not based on any name confusion or OFAC list."). Chase's Corporate Representative also stated that he had not seen any evidence that Monarch was on the OFAC list. *See id.*, [DE 86-5 at 49:24-25; 50:1-9].

Indeed, Chase's own Senior Compliance Officer in Global Sanctions Compliance also confirmed this as it relates to sanctions when asked by another Chase employee why a particular wire to a Monarch customer was cancelled and what they could say in response to the client: "These were not sanctions alerts [redacted]. SUMF at ¶ 2, [DE 86-2]. Chase's corporate representative confirms as much as well in his deposition, admitting that Plaintiffs "weren't subject to sanctions" and when asked what "possible sanction" Plaintiffs were subject to, Chase's sworn testimony is "[t]here wasn't one." *See id.*, [DE 86-5 at 44:2-20].

Therefore, dating as far back as February 2021, Chase admitted that Monarch is not on any OFAC sanctions list, and as of June 2021, Chase admitted that Monarch is not subject to any sanctions at all.  Chase's employees were told to relay this undisputed information to Monarch's clients and vendors when questioned about the cancelled wire transactions. Yet, even since June 2021, Chase continued to spread these false and monumentally damaging statements—that Monarch is subject to sanctions—directly to Monarch's customers and vendors in scores of documented instances. *See id.* at ¶ 1, JPMC_1780-1902.

And to be sure, Chase acknowledges that cancelling a wire due to "JPMC Internal Policy" is distinct from being cancelled due to "sanctions." Meaning, Chase admits that businesses and individuals like the Plaintiffs will be on Chase's internal "blacklist," but not be subject to sanctions. *See id.* at ¶ 3, [DE 86-5 at 56:23-25;57:1-25;57:1-3]. Yet Chase's communications with Plaintiffs' customers and vendors still gratuitously tell them that Plaintiffs are subject to sanctions, Chase's internal policies, or both. Chase provided no rationale for why they include admittedly false information in these communications, other than Chase systematically combines its sanctions compliance with its other internal policy compliance.  *See* SUMF at ¶ 4, [DE 86-5 at 58:9-59:18]. According to Chase's advisor to the senior unit reviewing cancelled wire transactions, both Chase's internal list and sanction concerns result in cancelled wires being placed in the same "OFAC queue," regardless of if the transaction involves sanctions or not. *Id.*, [DE 86-16 at 29:19-30:1;32:16-25].

B. The damaging effect of Chase's defamatory statements on Plaintiffs' reputation

As a customer or vendor, hearing that a company or individual that you are doing business with also did business with OFAC countries "like North Korea, Syria, etc. that are on a US list of countries not to do business with" – and, worse, is subject to sanctions – raises major red flags that would make any reasonable person rethink working with that company for that transaction, if ever again at all. *Id.* at ¶ 5, [DE 86-6, at 4]. "Sanctions" is defined as "a ban on trade" and "the detriment, loss of reward, or coercive intervention annexed to a violation of a law as a means of enforcing the law." *See* https://en.wikipedia.org/wiki/International_sanctions, last visited January 3, 2023 and Merriam-Webster, https://www.merriam-webster.com/dictionary/sanction, last visited December 26, 2022. Moreover, the effect of being told that your wire transfer was cancelled due to sanctions, by your own financial institution, a bedrock institution which is the largest in the United States, magnifies the damaging effects exponentially.

Accordingly, these blatantly false statements communicated to Monarch's customers are defamatory *per se*. That is, statements that are "so obviously defamatory" and "damaging to reputation" that they "give[ ] rise to an absolute presumption both of malice and damage." *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015) (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973)). Defamation is actionable *per se*, or without a showing of special damages, if it: (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession. *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953); *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1248 (S.D. Fla. 2014), *aff'd*, (Feb. 17, 2015). Repeating to Monarch's customers that Monarch was on or associated with the OFAC list and subject to sanctions undoubtedly subjected it to distrust and resulted in major injuries to the function of its business operations and reputation, all of which occurred here as a result of Chase's serious misconduct.

A couple examples of Plaintiffs' customer's reactions can be found below. *See* SUMF at ¶ 5, [DE 86-6]:

> I just tried to wire funds to your account and the bank said they could not wire to that account. Said it was flagged by their compliance department and [sic] they would not do business with Monarch Air Group. I bank with JP Morgan Private Bank. That can't be a good thing for your company as it's the largest bank in the US. Any insights here?

*Id.*, [DE 86-6, at 10].

> I am, however, a bit concerned that your company can not receive wire transfers from one of the largest financial institutions in the world after you told me that wire transfers are one of two ways to pay for this service. Chase has indicated that sending money to your company is considered "risky," which does not indicate that your services are incredibly trustworthy. Is there something you might provide to show me otherwise? I would really like to complete this transaction and have a guarantee that there will be a plane waiting to take me to and from New York.

*Id.*, [DE 86-6, at 7].

> I don't understand why my Chase wires keep coming back. They say: We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy. This makes me nervous every time I see sanctions. My bank is telling me it's you guys. Please tell me everything is OK. I need to make sure that we are all set. I am used to being charged ahead of time – which is fine but I am concerned I am going to show up and [t]here will be no plane.

*Id.*, [DE 86-6, at 13].

As the above examples illustrate, Monarch's customers were immediately concerned and questioned Monarch's trustworthiness and reputation within the private flight industry upon receiving Chase's communications regarding their cancelled wire transactions. There is no genuine dispute that these statements regarding Monarch being subject to sanctions are false, were made with actual knowledge of their falsity, caused damages, and were defamatory. *See* SUMF at ¶ 2, [DE 86-7] ("At this time, payments intended for this entity will continue to be canceled per JPMC Policy. **This was not a sanctions concern** but alerted against an [redacted] interdiction record.") (emphasis added). *See also id.*, [DE 86-8] ("JPMC has a risk based processes in place to determine whether or not it will process transactions. For business and commercial reasons, JPMC has determined that it will not process payments to or from Monarch Air Group in Ft Lauderdale Fl. This decision is supported by standard industry practices. No other information can be provided to the client. **These were not sanctions** [redacted]") (emphasis added).

It must be emphasized that Chase was fully capable of communicating non-defamatory statements to Monarch's customers, i.e., communications that did not mention sanctions as a reason for the cancellation of wire transfers. Chase could have easily removed the word "sanctions" and informed Monarch's customers that their wires were canceled simply due to Chase's internal JPMC policy. *See id.* at ¶ 6 ("We are unable to execute your transaction due to Risk JPMC policy. We do not have any more details regarding same."). Alternatively, Chase could

have elaborated and included in the communications which portions of their internal policy were at issue and why Monarch was suspected of violating such policies. Nonetheless, Chase chose to intentionally spread false and harmful statements to Monarch's customers at Monarch's peril.

Eliminating the false portion—"due to sanctions"—of Chase's statement, "We are unable to execute your transaction due to sanctions and/or Internal JPMC policy," creates a very different effect than when it is included. *See McCormik*, 139 So. 2d at 200. Had Chase just communicated that transactions were cancelled due to "Internal JPMC Policy," as they did at least one time, the Plaintiffs would not be here and their reputations would not be harmed. By including the concededly false statement "sanctions," Chase defamed the Plaintiffs. Accordingly, there is no genuine dispute as to any material fact and Plaintiffs are entitled to summary judgment on Counts I and II for defamation as a matter of law.

**III.    Plaintiffs' are entitled to summary judgment on Count III for Defamation By Implication**

Whether statements are defamatory by implication is a question of law. *Turner*, 879 F.3d at 1269 (citing *Brown v. Tallahassee Democrat, Inc.*, 440 So. 2d 588, 590 (Fla. 1st DCA 1983). "The elements of defamation by implication are (1) a juxtaposition of a series of facts so as to imply a defamatory connection between them, or (2) the creation of a defamatory implication by omitting facts." *Klayman v. City Pages*, 650 F. App'x 744, 749 (11th Cir. 2016) (citing *Rapp*, 997 So. 2d at 1106). The inquiry turns on whether the "gist" of the statements is false. *Rapp*, 997 So. 2d at 1107-08. "[D]efamation by implication applies in circumstances where literally true statements are conveyed in such a way as to create a false impression." *Id.* at 1108.

Here, at best, Chase juxtaposed the false facts that Plaintiffs' customers' transactions were cancelled "due to sanctions," or because of sanctions and internal policies, with a true statement that the transactions were cancelled due to "internal JPMC Policy." This created confusion both with Monarch's customers, who as demonstrated above became extremely worried about continuing to do business with Monarch, and internally within Chase as multiple employees saw the "Sanctions and/or Internal JPMC Policy" and continued to refer to Monarch's case as one involving sanctions without mention of internal policies. Chase maintains the nonsensical argument that the above line is fully accurate, complete and true despite including "sanctions" as a possible reason for a cancelled wire payment. Chase thinks this is fine, even while being fully aware that Monarch is not subject to sanctions, solely because "and/or JPMC Internal Policy" is included in the statement as well. *See* SUMF at ¶ 2, [DE 86-5 at 44:2-20]. Taken to its logical

extreme, Chase still maintains its position, even agreeing with the statement that being a good guy and/or an axe murder is a true statement due to the use of "and/or," a position that would not come close to passing the laugh test under any reasonable juror standard. *See id.* at ¶ 1, [DE 86-5 at 71:22-25;72:1-17].

Indeed, Chase's Corporate Representative admits that replacing "and/or" with "and" would lead to Chase making a false statement regarding Monarch, assuming Monarch is not subject to sanctions, which it is not. SUMF at ¶ 7, [DE 86-5 at 46:19-25;47:1].

Regarding the phrase "and/or," the Florida Supreme Court has stated "[i]t is one of those inexcusable barbarisms which was sired by indolence and dammed by indifference." *Cochrane v. Florida East Coast Ry.*, 145 So. 217, 218-19 (Fla. 1932). The use of the phrase "and/or" creates an ambiguity in whether the author means the first option, the second option, or both. *Multitech Corp. v. St. Jons Bluff Inv. Corp*, 518 So. 2d 427, 431 (Fla. 1st DCA 1988); "and/or," *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/and%2For (last accessed 1/4/2023) ("used as a function word to indicate that two words or expressions are to be taken together or individually").

> The use of Courts and commentators alike have remarked upon the confusion and ambiguity that often attends the use of the term "and/or." *See, e.g.*, *In re Seneca Falls Cent. Sch. Dist.*, 117 Misc.2d 879, 459 N.Y.S.2d 689, 693–94 (Sup. Ct. 1983) ("Long since abhorred by the Courts, the use of the term 'and/or' has been referred to as '**the abominable invention**' [and] '**as devoid of meaning as it is incapable of classification by the rules of grammar and syntax**.' " (citation omitted)); *see also United States v. Taylor*, 258 F.3d 815, 819 (8th Cir. 2001) (remarking, in context of "unfortunate use of the 'and/or phrase," that "Strunk and White describe 'and/or' as a 'device, or shortcut, that damages a sentence and **often leads to confusion or ambiguity**" (quoting *William Strunk, Jr. & E.B. White*, The Elements of Style 40 (4th ed. 2000))); *Bryan A. Garner*, A Dictionary of Modern Legal Usage 56 (2d ed. 1995) ("[A]nd/or has been vilified for most of its life—and rightly so. The upshot is that the only safe rule to follow is not to use the expression in any legal writing, document, or proceeding, under any circumstances." (citation omitted)); *id.* at 57 (noting that sometimes "and/or" is used to mean "and" alone, sometimes is used to mean "or" alone, but, when used properly, should mean "x or y or both").

*Roc Nation LLC v. HCC Int'l Ins. Co., PLC*, 19 CIV. 554 (PAE), 2021 WL 827957 (S.D.N.Y. Mar. 4, 2021).

Here, Chase ignores that, in its absolute best if not forced light, the statement "we are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy," is ambiguous.

Notwithstanding Chase's agreement and testimony that the transactions **were not** cancelled due to sanctions, Chase asserts that the statement "does [not] equate to a statement where **both alternatives are true**…." *Id.* at ¶ 8 [DE 86-9 at page 7] (emphasis added). Notably, however, Chase's Corporate Representative recognizes that the use of the and/or conjunctive could represent three distinct interpretations: (1) that Plaintiffs are subject to sanctions and internal JPM policy; (2) that Plaintiffs are subject to sanctions; or (3) that Plaintiffs are subject to internal policies of Chase. *See id.*, [DE 86-5 at 72:22-25;73:1-9]. Tara Pittman, Chase's advisor to the senior unit reviewing canceled wires also agrees that Chase's statement means that all three of the above options may apply as to why a transaction was cancelled. *See* SUMF at ¶ 8, [DE 86-16 at 35:15-19;44:6-16].

However, as the communications and testimony previously discussed demonstrate, two out of those three interpretations are not true statements—Monarch is not and has never been subject to sanctions according to Chase itself—rendering only one interpretation, that a wire was cancelled solely due to internal Chase policy, a true statement. By including the word sanctions along with Chase's internal policies as reasons for cancelled wire transactions, Chase has implied a defamatory connection between them whereby Monarch looks to be subject to illegal activity, i.e., sanctions. The defamatory implication is made even stronger by the omission by Chase that Monarch is not in fact subject to sanctions—a fact it has been well aware of long before it continued to publish these statements internally and to Plaintiffs' customers and vendors.

A. <u>Confusion within Chase due to Chase's defamatory statements and implications</u>

The testimony from Chase's Corporate Representative and communications produced by Chase illustrate how the defamatory implication created by Chase is so strong that many Chase employees believed it as well, focusing on the "sanctions" language juxtaposed with Chase's internal policy language. Meaning, even internally Chase understands that despite the communications saying "and/or," Chase's employees who are experienced and knowledgeable in their own flagging system for sanctions and internal policies thought that the transactions were cancelled due to sanctions, and not because of internal Chase policy. *See* SUMF at ¶ 9, [DE 86-5 at 61:10-25; 62:1-12]; *see also id.*, [DE 86-10].

Furthermore, when a Chase employee is asked by a colleague to check into the reason a wire was flagged and cancelled due to compliance, the employee states "I don't know what else I can tell them? This is the sanctions one." *See* SUMF at ¶ 9, [DE 86-11]; [DE 86-5 at 108:16-

25;109:1-8]. Examples abound; in fact, it does not appear that any Chase employee knew this was an internal policy to the exclusion of sanctions. *See id.*, [DE 86-5 at 120:3-15;121:5-12].

Moreover, Chase's own "Client Messaging Guidelines for Sanctions," SUMF at ¶ 4, [DE 86-12], is a misnomer that easily lends itself to further Chase employee confusion. Only part of the policy actually involves guidance on sanctions, while other parts discuss cancelled wires for reasons like internal JPMC policy according to Chase's Corporate Representative. The problem with Chase's answer that the above-referenced policy would only be confusing until it was eventually clarified, is that the clarification may never occur. The "confused party" is likely not aware of the confusion until another party intervenes to correct the error. This applies even more so to Monarch customers, who read that their wire was cancelled due to "Sanctions and/or Internal JPMC Policy" and did not consider following up to learn that Monarch is not in fact subject to any sanctions, or simply chose not to after seeing such damning language. The defamatory implication has already been made, whether it be in the mind of a Monarch customer, or Chase's own employees as demonstrated above. In all cases, the damage is already done.

This is true, notwithstanding that Chase has proved it is capable of communicating just the internal policy language to Monarch customers without mentioning sanctions. SUMF at ¶ 6. It is still a mystery as to why Chase chose to (repeatedly) include the word "Sanctions" next to "Internal JPMC Policy" in its internal and external communications regarding Monarch's cancelled wires when it knew sanctions were not the reason for any cancellation, especially in light of the fact that it is clearly capable of omitting such false and disparaging language. But the fact that it did resulted in an extremely defamatory implication, that not only Monarch's customers were exposed to, but that Chase's own employees believed as well.

Accordingly, there remains no genuine dispute as to any material facts, and thus Plaintiffs are entitled to summary judgment on Count III for defamation by implication.

## IV.    Plaintiffs' special and general damages to be sought at trial

"Any person having suffered injury from defamation is entitled to recover damages. Florida law recognizes two categories of compensatory damages for defamation: general and special." *Army Aviation Heritage Found. & Museum, Inc. v. Buis.*, 504 F. Supp. 2d 1254, 1260 (N.D. Fla. 2007) (citing *Bobenhausen v. Cassat Ave. Mobile Homes, Inc.*, 344 So. 2d 279, 281 (Fla. 1st DCA 1977)). General damages, "those which the law presumes must naturally, proximately, and necessarily result from publication of libel or slander," are allowed when the plaintiff's reputation

is impaired, "although no actual pecuniary loss is demonstrated." *Id.* When it comes to general damages "[t]here is no exact standard for fixing the compensation to be awarded on account of such elements of damage. Any award should be fair and just in the light of the evidence." *Army Aviation*, 504 F. Supp. 2d at 1261. "The injured party may recover damages resulting from impaired reputation and standing in the community, humiliation, mental anguish, and suffering." *Id.* Special damages, however, "do not result by implication of law," and "it is necessary for a plaintiff to show his special damages proximately resulted from the defamation." *Id.* "[T]he chief characteristic of special damages is a realized or liquidated loss." *Anderson v. Smith*, No. 3:19-cv-222, 2020 WL 10058207, at *3 (M.D. Fla. Mar. 24, 2020).

However, "[w]ords which are actionable in themselves, or per se, necessarily import general damages and need not be pleaded or proved but are conclusively presumed to result." *Bobenhausen,* 344 So. 2d at 281. "A false and unprivileged publication which injures a corporation, prejudices its ability to conduct its trade or business, deters third persons from dealing with it, assails its management, or impugns its method of doing business is actionable per se." *Army Aviation*, 504 F. Supp. 2d at 1259; *see, e.g., McIver v. Tallahassee Democrat, Inc.*, 489 So. 2d 793, 794 (Fla. 1st DCA 1986) (citation omitted); *Diplomat Electric, Inc. v. Westinghouse Electric Supply Co.*, 378 F.2d 377, 383 (5th Cir. 1967).

This is precisely the type of harm suffered by Plaintiffs as a result of Chase's defamatory communications. Chase's insistence on including "sanctions" as a reason for cancelled wires in addition to mentioning OFAC ban lists severely prejudiced Plaintiffs' ability to conduct its business, demonstrably deterred third parties from dealing with it, and also impugned Monarch's method of doing business. When considered on their own, without extrinsic evidence, Chase's statements to Monarch's customers are "so obviously defamatory" and "damaging to reputation" that they "give[ ] rise to an absolute presumption both of malice and damage." *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015) (quoting *Wolfson v. Kirk*, 273 So. 2d 774, 776 (Fla. 4th DCA 1973)). Accordingly, while Monarch will introduce evidence of actual liquidated damages suffered due to Chase's communications, the inherent defamatory nature of Chase's communications presumes Plaintiffs suffered further damages to its reputation and overall ability to conduct its trade.

V.     <u>**Chase's Affirmative Defenses fail as a matter of law and undisputed fact**</u>

A.   <u>Affirmative Defense No. 1</u>

Chase asserts "truth or substantial truth" as its first affirmative defense. *See* [DE 85]. This is easily refuted by the evidence included throughout the instant motion showing that Chase admits Monarch is not and has never been subject to sanctions. *See* SUMF at ¶ 2, [DE 86-2, 86-4, 86-5 at 44:2-20; 49:24-25; 50:1-9]. Yet, Chase continued to communicate to Monarch's customers that their wire transactions could not be executed due to "sanctions and/or internal JPMC policy." Additionally, Chase's defense that the inclusion of "and/or" makes the statements true, complete and accurate is refuted not only by the cited caselaw that explains "the use of the phrase "and/or" creates an ambiguity in whether the author means the first option, the second option, or both, *see Multitech Corp. v. St. Jons Bluff Inv. Corp*, 518 So. 2d 427, 431 (Fla. 1st DCA 1988), *but also* Chase's Corporate Representative's testimony admits these multiple, reasonable interpretations. *See id.* at ¶ 8, [DE 86-5 at 72:22-25;73:1-9]. Consequently, Chase's first affirmative defense fails as a matter of law and for lack of summary judgment evidence support.

B.   <u>Affirmative Defense No. 2</u>

For its second affirmative defense, Chase asserts a "conditional privilege." [DE 85]. This defense is similarly defeated by the undisputed facts and law. The first essential element needed to prevail on such a privilege defense is "good faith." *Falic v. Legg Mason Wood Walker, Inc*., 347 F. Supp. 2d 1260, 1264 (S.D. Fla. 2004). Chase cannot make knowingly false statements (which they did) and then attempt to assert such statements were made in good faith.

Moreover, Chase's Corporate Representative failed to testify regarding what "good faith" reliance Chase did to confirm the internal "investigation" that led to Monarch being placed on Chase's AML Interdiction List, which sparked this entire situation of cancelled wire payments. The Corporate Representative did not talk to (i) the GFIU unit who came up with these false "facts" about Monarch; (ii) the Chase employees in the separate sanctions department who confirmed it was not sanctions yet continued to tell Monarch's customers and vendors that they were, *see* SUMF at ¶ 10, [DE 86-5 at 51:13-25 – 52:1-2] ("We are separate from global sanctions compliance.") and *id*. at 97:11-12; 69:2-12 ("I do not work in the sanctions department."); or (iii) those at Chase charged with communicating with Monarch's customers and vendors who supposedly acted in good faith, *see id*. at 132:21-24 (Q: "Okay. Again, you didn't interview or talk with anybody

regarding these communications with Monarch's customers, correct?" A: "I did not"); *Id.* at 20:13-15; 20:21-24.

Thus, especially under Federal Rule of Civil Procedure 37, since Chase failed to present a prepared witness or otherwise offer summary judgment evidence under Rule 56, summary judgment is appropriate on this affirmative defense as well. Further, Chase falsely asserts that "[t]he alleged statements were also limited in scope to…the reasons Chase was unable [to] execute the transactions." The undisputed evidence is that Chase included a reason—"Sanctions"—in its statements to Plaintiffs' customers that was **not** a reason for cancelling the transactions. Accordingly, Chase's claim in this affirmative defense that the statements "were limited in scope to the reasons Chase was unable [to] execute the transactions," is contradicted by the undisputed evidence and the Plaintiffs are entitled to summary judgment on this affirmative defense.

C. Affirmative Defense No. 3

Chase asserts that "Plaintiffs are Defamation-Proof" as its third affirmative defense. [DE 85]. "An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters." *Royal Palm Sav. Ass'n v. Pine Trace Corp.,* 716 F.Supp. 1416, 1420 (M.D. Fla. 1989). "A defense that simply points out a defect or lack of evidence in the plaintiff's case is not an affirmative defense." *Flav–O–Rich, Inc. v. Rawson Food Serv., Inc.* (*In re Rawson Food Serv., Inc.*), 846 F.2d 1343, 1349 (11th Cir. 1988). Chase's third affirmative defense is improper as it does not admit to making defamatory statements and instead disputes that damages, an element of Plaintiffs' claims, were caused by Chase at all.

"[O]n a plaintiff's motion for summary judgment, the defendant bears the initial burden of showing that the affirmative defense is applicable," *Office of Thrift Supervision v. Paul*, 985 F.Supp. 1465, 1470 (S.D. Fla. 1997) (citing *Blue Cross and Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990)), and it is "[o]nly upon such a showing [that] the burden shift[s] to [a] plaintiff regarding that affirmative defense," *Paul*, 985 F.Supp. at 1470. "The reason is that the defendant bears the burden of proof on his affirmative defenses at trial." *Paul*, 985 F.Supp. at 1470. Here, Chase has presented no summary judgment evidence to show that the blog post or article mentioned was seen by any of Monarch's customers involved in this suit or vendors to whom Chase directly and repeatedly published falsehoods. Thus, Chase has failed to meet its burden and summary judgment is appropriate in Plaintiffs' favor on affirmative defense no. 3.

D. <u>Affirmative Defense No. 4</u>

For its fourth affirmative defense, Chase asserts that the "Plaintiffs' damages are barred in whole or in part by their failure to mitigate damages." [DE 85]. As explained above, Chase failed to meet its burden on this defense as it has presented no summary judgment evidence that Plaintiffs did not mitigate their damages. In fact, Plaintiffs' Corporate Representative testified repeatedly about Monarch's attempts to mitigate by (i) charging Monarch's customers' credit cards when a wire with Chase was cancelled; and (ii) having protocols and policies in now in place to screen for Chase customers before they try to send wires and are told it will be cancelled because Monarch is engaging in criminal conduct such that doing business with them is illegal – i.e., sanctions. *See generally* SUMF at ¶ 11, [DE 86-18]. Therefore, not only has Chase failed to meet its burden here, but Plaintiffs have summary judgment evidence to support the contrary – that Monarch did in fact mitigate its damages. Thus, summary judgment is appropriate on affirmative defense no. 4 as well.

E. <u>Affirmative Defense No. 5</u>

Affirmative defense no. 5 contends that Plaintiffs' claims for damages are barred by Monarch's deposit agreement with Chase. [DE 85]. However, exculpatory clauses such as the one found in the deposit agreement with Chase are unenforceable as to intentional torts, such as defamation. *Luria & Son, Inc. v. Honeywell, Inc.*, 460 So. 2d 521, 523 (Fla. 4th DCA 1984) (citing to *Zuckerman-Vernon Corp. v. Rosen*, 361 So. 2d 804 (Fla. 4th DCA 1978); *Mankap Enterprises v. Wells Fargo Alarm Serv.*, 427 So. 2d 332 (Fla. 3d DCA 1983)). Moreover, Chase terminated the relationship between itself and Plaintiffs as stated in Chase's November 27, 2020 letter to Monarch, which was reiterated in its February 9, 2021 letter to Monarch, SUMF at ¶ 12, [DE 86-4, 86-17]. Being that Plaintiffs are no longer account holders of Chase after Chase severed its contractual and business relationship with them, Chase cannot now assert that they have free reign to engage in tortious conduct indefinitely because at one time Plaintiffs had an account with Chase. Accordingly, Plaintiffs are entitled to summary judgment on affirmative defense no. 5.

F. <u>Affirmative Defense No. 6</u>

Chase's sixth affirmative defense likewise relies upon the deposit agreement entered into between Plaintiffs and Chase to contend that Chase had the authority to cancel wire transactions and close Plaintiffs' account. [DE 85]. Regardless of the language used in the agreement, Chase is not permitted to lie and spread malicious falsehoods about the Plaintiffs in the process. And as referenced above, exculpatory clauses are unenforceable as to intentional torts. *Luria & Son, Inc.*,

460 So. 2d at 523. That is, even if the agreement attempted to absolve Chase from liability for cancelling wires even in the face of defamatory statements being included, such a clause would not be enforceable. Therefore, summary judgment is appropriate in Plaintiffs' favor on affirmative defense no. 6.

G.   Affirmative Defense No. 7

Chase argues "causation" as its seventh affirmative defense, stating "[t]he Plaintiffs' claims against JPMC are barred, in whole or in part, because any damages allegedly suffered by Plaintiffs were the result, in whole or in part, of Plaintiffs' own legal fault or the fault of third parties over which JPMC has no control." [DE 85]. As discussed above (affirmative defense no. 3), "[a]n affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters." *Royal Palm Sav. Ass'n v. Pine Trace Corp.,* 716 F.Supp. 1416, 1420 (M.D. Fla. 1989). "A defense that simply points out a defect or lack of evidence in the plaintiff's case is not an affirmative defense." *Flav–O–Rich, Inc. v. Rawson Food Serv., Inc.* (*In re Rawson Food Serv., Inc.*), 846 F.2d 1343, 1349 (11th Cir. 1988).

Here, Chase's defense is not an affirmative defense at all as it fails to admit to the allegations in the complaint, fails to meet its burden of proof, and instead points the finger back at Plaintiffs in a bare-bones conclusory manner. *Office of Thrift Supervision v. Paul*, 985 F.Supp. 1465, 1470 (S.D. Fla. 1997) (Defendant has the initial burden of proof on its affirmative defenses). Such an "affirmative defense" carries no legal significance and should be stricken. "Although Rule 8 does not obligate a defendant to set forth detailed factual allegations, a defendant must give the plaintiff "fair notice" of the nature of a defense and the grounds on which it rests. *Tsavaris v. Pfizer, Inc.*, 310 F.R.D. 678, 682 (S.D. Fla. 2015); *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668, 671 (S.D. Fla. 2013); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A court must not tolerate shotgun pleading of affirmative defenses, and should strike vague and ambiguous defenses which do not respond to any particular count, allegation or legal basis of a complaint." *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F.Supp.2d 1314, 1318 (S.D. Fla. 2005) (internal citations omitted).

Accordingly, Chase's affirmative defense no. 7 is wholly inadequate and fails as a matter of law. Therefore, Plaintiffs are entitled to summary judgment on affirmative defense no. 7.

H.  Affirmative Defense No. 8

Affirmative defense no. 8 asserts that "Plaintiffs' Second Amended Complaint fails to state any viable cause of action under Florida law." [DE 85]. "An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters." *Royal Palm Sav.* Ass'n, 716 F.Supp. at 1420. "A defense that simply points out a defect or lack of evidence in the plaintiff's case is not an affirmative defense." *Flav–O–Rich, Inc.*, 846 F.2d at 1349. Therefore, "failure to state a claim is not an affirmative defense." *Havana Docks Corp. v. Carnival Corp.*, 592 F. Supp. 3d 1088, 1194 (S.D. Fla. 2022); *see also Affiliati Network, Inc. v. Wanamaker*, No. 18-22576-CIV, 2019 WL 7376766, at *8 (S.D. Fla. Nov. 25, 2019), aff'd, 847 F. App'x 583 (11th Cir. 2021).

In *Havana Docks Corp.* and *Wanamaker*, the courts rejected the affirmative defense of failure to state a claim, not only because such a defense is not a legally proper affirmative defense, but also because such arguments had already been rejected at the motion to dismiss stage. *Havana Docks Corp.*, 592 F. Supp. 3d at 1194; *Wanamaker*, No. 18-22576-CIV, 2019 WL 7376766, at *8. Similarly, Chase previously raised the issue of failing to state a claim in their motion for judgment on the pleadings [DE 26] ("The operative complaint is still insufficient to state a claim."), which was denied [DE 48]. A motion under Rule 12(c) is generally treated in the same manner as a Rule 12(b)(6) motion to dismiss. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) (citations omitted). Moreover, Plaintiffs' Second Amended Complaint is substantively identical to its first amended complaint upon which Chase's motion was denied. Accordingly, because Chase's eighth affirmative defense is legally improper, and due to the fact that Chase's present argument has already been denied by this Court, Plaintiffs are entitled to summary judgment on this affirmative defense as well.

## **CONCLUSION**

Based on the undisputed facts and law, Chase severely defamed the Plaintiffs.  Whether reviewed under the standard defamation jurisprudence, much less the more inclusive law governing defamation by implication, telling customers and vendors of the Plaintiffs that their wires are being canceled because of "sanctions" is defamatory.  Adding the words "and/or JPM internal policy," especially after the reader has already read or heard "sanctions," is far too little, far too late.  The inescapable conclusion or impression left with the reader, including Chase's employees experienced in this particular compliance industry, is that doing business with the

Plaintiffs is illegal and that is why wires to and from them are being cancelled.  Although Plaintiffs sustained special damages, actual damages are presumed from this defamation *per se*. Accordingly, Plaintiffs respectfully move under Rule 56 for summary judgment against Chase on Counts I, II and III, with damages to be liquidated at trial.

**WHEREFORE**, Plaintiffs, Monarch Air Group, LLC and David Gitman respectfully request that this Honorable Court enter an Order granting Plaintiffs' Motion for Partial Summary Judgment, awarding Plaintiffs reasonable attorney's fees and costs, together with any such other and further relief as this Honorable Court deems just and proper.

### [CERTIFICATE OF SERVICE TO FOLLOW]

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed and served via the CM/ECF filer on **January 4, 2023**, on all parties and counsel of record: Derek E. León, Esq., dleon@leoncogrove.com; Benjamin Weinberg, Esq., bweinberg@leoncosgrove.com, eperez@leoncosgrove.com; Sofia Manzo, Esq., smanzo@leoncosgrove.com, aquezada@leoncosgove.com; LEÓN COSGROVE, LLP 255 Alhambra Circle, 8th Floor  Miami, Florida 33134.

Respectfully submitted,
STOK KON + BRAVERMAN
Attorneys for Plaintiffs
One East Broward Boulevard
Suite 915
Fort Lauderdale, Florida 33301
Tel.: (954) 237-1777
Fax: (954) 237-1737
Email:  service@stoklaw.com


*/s/Joshua R. Kon, Esq.*
JOSHUA R. KON, ESQ.
Florida Bar No. 56147
(jkon@stoklaw.com)
YOSEF KUDAN, ESQ.
Florida Bar No. 1010261
(ykudan@stoklaw.com)
ALEX KAPLAN, ESQ.
Florida Bar No. 1030761
(akaplan@stoklaw.com)

# TAB 90

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(FT. LAUDERDALE DIVISION)**

**Case No.: 21-cv-62429-WPD**

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
liability company, and DAVID GITMAN,

      Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

      Defendant.

_____/

**JPMORGAN CHASE BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

Defendant JPMorgan Chase Bank, N.A. ("Chase"), moves for entry of summary judgment against Plaintiffs Monarch Air Group, LLC ("Monarch") and David Gitman ("Gitman") on all claims asserted in the Second Amended Complaint ("SAC"), and states the following in support.

## I.       Introduction

In mid-2020, Chase's ███████████████████████████████ ████████████████████████████████ in accordance with its procedures. Plaintiffs complain and purport to have suffered harm because, upon being ████████████████████████, Chase was unable to execute certain wire transactions to Monarch from or through Chase accounts. Indeed, Plaintiffs' own sworn statements in this case make clear that the only damages Plaintiffs purportedly suffered resulted from the cancellation of wire transactions to Monarch from or through Chase accounts. But Chase's █████████████████████████ and resulting cancellation of wire transactions to Monarch was perfectly proper and lawful. Plaintiffs make no attempt to, and cannot, claim otherwise. They do not bring a claim for breach of contract or statutory violations, nor could they.

Instead, Plaintiffs attempt to recover from Chase through claims for defamation based on statements allegedly made by Chase to its accountholders regarding the cancelled wire transactions. Because all of their purported damages arose from Chase's non-actionable decision ████████████████████████, and cannot be linked to any defamatory statement, Plaintiffs' plead claims for defamation *per se* to avoid having to prove damages linked to the alleged defamation. Defamation *per se* comes with a presumption of general damages and no requirement that Plaintiffs prove actual special damages caused by the defamation (of which there are none). Their efforts fail, however, because Plaintiffs have no evidence to prove the elements of defamation *per se*, and by their own sworn statements have rebutted the presumption of general damages resulting from any alleged defamatory statements.

Plaintiffs' admissible evidence only establishes one allegedly defamatory statement made by Chase (the "Statement"): "We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy." Plaintiffs cannot, as a matter of law, prove the elements of their claims based on the Statement.

First, a false statement of fact is essential for recovery in any defamation action. True statements, or statements that are not readily capable of being proven false, are not actionable. By its plain language, the Statement—"We are unable to execute your transaction due to Sanctions

1

and/or Internal JPMC Policy"—means that Chase was unable to execute the transaction due to "Sanctions" or "Internal JPMC Policy" or both. As Chase was, in fact, unable to execute the transaction due to "Internal JPMC Policy," the Statement was <u>factually true, and not readily capable of being proven false</u>.

Further, the Statement was <u>not a defamatory statement</u>. For a statement to be actionable as defamation, it is of course essential that the statement be about the plaintiff. But the Statement, and the message in which Chase conveyed the Statement, did not mention or reference either Monarch or Gitman. Indeed, the Statement was <u>not a statement about either Plaintiff</u> or anyone else. The allegedly defamatory phrase, "Sanctions and/or Internal JPMC Policy," as used in the Statement, was about the "transaction" referenced in the Statement. It was not about Plaintiffs any more than it was about the Chase accountholder whose wire was cancelled, or some external factor unrelated to either party to the attempted transaction. Additionally, because the Statement refers to "Sanctions and/or Internal JPMC Policy," it was not a statement of fact that the "transaction" was cancelled due to "Sanctions." Even the word "sanctions" by itself does not implicate criminal activity. Absent any evidence of a false and defamatory statement, Plaintiffs' claims for defamation fail as a matter of law.

Moreover, even if Plaintiffs could establish all the elements of their defamation claims (which they cannot), Chase cannot be liable because the Statement made by Chase was conditionally <u>privileged</u> and made in good faith. In Florida, a statement made by one having an interest or duty in the subject matter thereof to another person having a corresponding interest or duty therein is privileged, even though the statement may be false and otherwise actionable. Such is the case here, where Chase communicated the Statement to its accountholders, each of whom had a corresponding interest in the subject matter of attempting to wire funds from or through Chase accounts. Moreover, there is no evidence of express malice—ill will or evil intent to defame Plaintiffs—in Chase's conduct, to overcome presumption of good faith. The Statement was made pursuant to Chase standard operating processes.

And, because there is no evidence of express malice, Plaintiffs are not entitled to punitive damages. Summary judgment is appropriate on all of Plaintiffs' defamation claims.

Plaintiffs also bring a claim for tortious interference based on the same allegedly defamatory statements. Such a claim is barred by the "<u>single action rule</u>," which prohibits a plaintiff from maintaining multiple actions when the claims all arise from the same publication

2

upon which a failed defamation claim is based. Plaintiffs also cannot prove the elements of the claim. There is no genuine issue of material fact that Chase had knowledge of any business relationship under which Plaintiffs had legal rights when the Statement was made, or intentional and unjustified interference by Chase with any such business relationship. Plaintiffs likewise cannot prove they were damaged as a result of the alleged interference. Additionally, because Chase's conduct was conditionally <u>privileged</u>, Plaintiffs must prove that malice was the sole basis for the interference. There is <u>no evidentiary basis to suggest that malice was the sole basis</u> for Chase's conduct.

Summary judgment should be granted in Chase's favor on all counts asserted in the SAC.

## II.    Argument

### A.    Legal Standards

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-3.

"In meeting this burden the nonmoving party 'must do more than simply show that there is a metaphysical doubt as to the material facts.'" *Hogan v. Dell Computers, Inc.*, No. CV 05-J-1439-S, 2006 WL 8437790, at *2 (N.D. Ala. Apr. 12, 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Summary judgment should be entered against the nonmoving party if the evidence does not create a "genuine issue for trial" and "a material issue of fact precluding summary judgment." *Id.* (citing Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir.2013). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 Fed. Appx. 839, 841 (11th Cir.2008).

"[A]s the Eleventh Circuit has recognized, summary dismissal of defamation cases is particularly appropriate because 'there is a powerful interest in ensuring that free speech is not

unduly burdened by the necessity of defending against expensive yet groundless litigation.'" *Larreal v. Telemundo of Fla., LLC*, 489 F. Supp. 3d 1309, 1317–18 (S.D. Fla. 2020) (quoting *Michel v. NYP Holdings*, 816 F.3d 686, 702 (11th Cir. 2016)). "Summary judgment is an appropriate vehicle for disposition of a defamation claim and dismissal is appropriate when an element of the claim is not satisfied." *Corp. Fin., Inc. v. Principal Life Ins. Co.*, 461 F. Supp. 2d 1274, 1292 (S.D. Fla. 2006).

**B.      Chase is entitled to summary judgment on Plaintiffs' Defamation Claims.**

The SAC asserts claims for "Defamation," "Slander," and "Defamation by Implication" (collectively, the "Defamation Claims"). "Defamation, which includes libel and slander, may generally be defined as the unprivileged publication of false statements which naturally and proximately result in injury to another." *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1257 (S.D. Fla. 2021). "Libel is committed by publication of written statements, while slander is committed by publication of oral statements. The analysis is the same for each alleged tort." *Sloan v. Shatner*, No. 8:17-CV-332-T-27AAS, 2018 WL 3769968, at *3 (M.D. Fla. June 22, 2018).

A claim for defamation requires: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Id.* (quoting *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla.2008)). Similarly, a claim for slander requires: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Lefrock v. Walgreens*, 77 F. Supp. 3d 1199, 1201 (M.D. Fla. 2015).

Additionally, "if the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts, he may be held responsible for the defamatory implication[.]" *Jews For Jesus, Inc.*, 997 So. 2d at 1108.[1] "A

---

[1]      *See Readon v. WPLG, LLC*, 317 So. 3d 1229, 1237 (Fla. 3d DCA 2021) ("A classic example of defamation by implication was before the Second District in *Heekin* . . . In *Heekin*, the plaintiff alleged that a broadcast falsely portrayed him as a spouse abuser by juxtaposing an interview with his former spouse along with stories and pictures of women who had been abused and killed by their partners. Even though the reporting did not literally claim that the plaintiff was a spouse abuser, by overplaying his former wife's story with stories of spouse abuse, the reporting created the defamatory implication that the plaintiff had abused his spouse.").

defamatory implication must be present in the plain and natural meaning of the words used." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). "Whether statements are defamatory by implication is a question of law." *Sloan*, 2018 WL 3769968, at *6.

Defamation claims can be proven in two ways—*per se* or *per quod*. "[A] defamatory statement is of a *per se* character when, 'considered alone without innuendo,' it contains (1) charges that a person has committed an infamous crime, or (2) has contracted an infectious disease, or (3) they carry statements tending to subject a person to hatred, distrust, ridicule, contempt or disgrace, or (4) to injure a person in his trade or profession." *Mac Isaac*, 557 F. Supp. 3d at 1258 (quoting *Adams v. News-Journal Corp.*, 84 So. 2d 549, 551 (Fla. 1955)). "In a *per se* action, the statements are 'so obviously defamatory' and 'damaging to reputation' that the injurious nature of the statement is apparent from the words in the statement itself[.]" *Id.* (quoting *Paulson v. Cosm. Dermatology, Inc.*, No. 17-cv-20094, 2017 WL 2484197, at *3 (S.D. Fla. June 8, 2017)). "Thus, in determining whether a publication is defamatory *per se*, consideration is given only to the 'four corners' of the publication and the language used should be interpreted as the 'common mind' would normally understand it." *Id.* (emphasis added); *see Scobie v. Taylor*, No. 13-60457-CIV, 2013 WL 3776270, at *4 (S.D. Fla. July 17, 2013) (quoting *Carlson v. WPLG/TV-10, Post-Newsweek Stations of Fla.*, 956 F. Supp. 994, 1007 (S.D. Fla. 1996)) ("To gauge whether the statements are defamatory, the Court would have to look outside the four corners of the statements . . . the statements are not defamatory *per se*.") (emphasis added); *Scobie v. Taylor*, No. 13-60457-CIV, 2013 WL 3776270, at *4 (S.D. Fla. July 17, 2013) ("To gauge whether the statements are defamatory, the Court would have to look outside the four corners of the statements . . . the statements are not defamatory *per se*.") (emphasis added); *Doscher v. Holding*, No. 619CV1322ORL78EJK, 2020 WL 10318564, at *2–3 (M.D. Fla. Feb. 3, 2020) ("Plaintiff alleges . . . libel *per se* by implication . . . the statements are not libel *per se* because they require a reader to look outside of the 'four corners' of the publication to ascertain its libelous nature.").

"This is in direct contrast to [defamation] *per quod*, in which extrinsic facts and innuendo are needed to prove the defamatory nature of the words." *Carlson*, 956 F. Supp. at 1006; *see Paulson*, 2017 WL 2484197, at *4 ("When context is considered and extrinsic facts and innuendo are needed to prove the defamatory nature of the words, the statements are not defamatory *per se*."); *Mac Isaac*, 557 F. Supp. 3d at 1260 ("[D]efamation claims can be proven in either of the following ways: (1) defamation *per quod* . . . or (2) defamation *per se*, which does not require any

additional explanation in order to prove the defamatory nature of the statement.").[2] "The practical distinction between the two is that for [defamation] *per quod*, actual malice and special damages must be proved. *Barry Coll. v. Hull*, 353 So. 2d 575, 578 (Fla. 3d DCA 1977).[3]

 **1.**    **Plaintiffs cannot prove the elements of their Defamation Claims.**

 Plaintiffs' Defamation Claims are for defamation "per se," based on allegations of Chase (1) "stating that Plaintiffs are on OFAC's ban list, sanctions lists, or another non-compliance lists [sic] together with other false allegations of purported criminal activity" and (2) "juxtaposing and/or conveying incomplete information and/or omitting facts so as to imply defamatory connection between plaintiffs and the OFAC sanctions list[.]" SAC ¶¶ 27, 29, 33, 35, 39. Plaintiffs, however, have produced admissible evidence of only one allegedly defamatory statement made by Chase—the Statement referred to in paragraph 17 of the SAC: "We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy." Exs. 8–67; *see* SAC ¶ 17.[4] Chase made the Statement in messages sent to Chase accountholders who were involved in transactions that Chase was unable to execute. *See id*. Plaintiffs cannot prove the elements of their Defamation Claims as to the Statement.

  **a.**    **The Statement was true.**

 "A false statement of fact is the *sine qua non* for recovery in a defamation action."

---

[2]   Defamation *per quod*, which requires extrinsic facts and innuendo, should not be confused with defamation by implication, which requires the defendant to juxtapose or omit facts on or from an otherwise nondefamatory statement, so as to imply a defamatory meaning. *See Boyles v. Mid-Fla. Television Corp.*, 431 So. 2d 627, 635 (Fla. 5th DCA 1983) ("[T]he trial court may have accepted the argument that words which imply a libelous meaning, rather than directly stating it, must be classified as libel *per quod* rather than libel *per se*. This argument . . . is entirely specious. Courts have frequently confused the quite normal proposition that a statement which may be defamatory by implication is actionable only if it conveys a defamatory meaning to ordinary persons, with the situation where extrinsic facts must be supplied to illuminate the defamatory meaning. . . . [S]tatements with defamatory implications which need no extrinsic facts to illuminate their defamatory meaning have been inappropriately classified as actionable *per quod*.").

[3]   "[G]eneral damages are presumed in *per se* defamation actions." *Upchurch v. Brickhouse Partners, LLC*, No. 8:19-CV-2580-T-35CPT, 2021 WL 8894452, at *3 (M.D. Fla. Jan. 15, 2021).

[4]   Plaintiffs have not identified any oral statement that would serve as the basis for their slander claims. *See* Ex. 70, Pls. Resps. to Def. [Chase's] Second Set of Interrogs., at No. 3 (███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████). Plaintiffs' slander claim, therefore, fails as a matter of law, and summary judgment should be granted in Chase's favor on that claim.

*Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984). "True statements, statements that are not readily capable of being proven false," are protected from defamation actions[.]" *Turner v. Wells*, 879 F.3d 1254, 1267 (11th Cir. 2018). [5]

It is undisputed that Chase was unable to execute the transactions at issue due to an "Internal JPMC Policy" because Chase ███████████████████████████. *See* Ex. 6, Chase's Suppl. Objs. And Answers to Pls. First Set of Interrogs.; Ex. 3, D. Gitman Dep. Tr. at 34–5. Therefore, the Statement—"We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy"—was true, and not readily capable of being proven false.

In prior pleadings, Plaintiffs urged the Court, in considering the Statement, to ignore the phrase "and/or Internal JPMC Policy," and argued that "and/or" somehow rendered the Statement ambiguous and false. *See* Pls. Reply in Supp. of their Mot. for Leave to Assert Punitive Damages [DE 74], at 7–8. However, "a publication must be considered in its totality. The court must consider all the words used, not merely a particular phrase or sentence." *Byrd v. Hustler Magazine, Inc.*, 433 So.2d 593, 595 (Fla. 4th DCA 1983).

Furthermore, depending on the context, "'and/or' construction creates <u>potential</u> ambiguity, not per se ambiguity." *In re Kohler*, No. 12-24328-JRS, 2017 WL 1030723, at *17 (Bankr. N.D. Ga. Mar. 14, 2017) (emphasis added). "It does, after all, have a specific meaning—<u>X and/or Y means X or Y or both</u>." Kenneth A. Adams & Alan S. Kaye, *Revisiting the Ambiguity of "And" and "Or" in Legal Drafting*, 80 St. John's L. Rev. 1167, 1189–90 (2006) (emphasis added); *see Vargas v. Quest Diagnostics*, No. CV198108DMGMRWX, 2021 WL 4642749, at *2 (C.D. Cal. Aug. 19, 2021) (quoting Garner, B., *Garner's Dictionary of Legal Usage*, at 57 (3rd ed. 2011)); www.merriam-webster.com/dictionary/and/or) ("The use of the 'and/or' phrase generally means that the <u>terms listed 'are to be taken together or individually' – not that one supersedes another</u>. Indeed, as Professor Bryan Garner (the current editor of Black's Law Dictionary and other related works) writes that the phrase 'and/or' . . . does have a specific meaning (<u>x and/or y = x or y or both</u>)") (emphasis added); *In re John Q. Hammons Fall 2006, LLC*, No. 16-21142, 2018 WL 10483503, at *2 (Bankr. D. Kan. Oct. 31, 2018) ("*[a]nd/or* . . . does have a specific meaning (<u>x</u>

---

[5]  "[F]alsity only exists" for purposes of defamation, "if the publication is substantially and materially false, not just if it is technically false." *Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 707 (Fla. 3d DCA 1999); *see id.* at 706 (quoting *Masson v. New Yorker Mag.*, 501 U.S. 496, 517 (1991) ("[A] statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true. . . . The question of falsity . . . overlooks minor inaccuracies[.]")).

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8ᵀᴴ FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

*and/or y = x or y or both*) (emphasis added).

As "(x and/or y = x or y or both)", the "plain meaning" of the Statement—"We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy"—was that Chase was unable to execute the transaction due to "Sanctions" or "Internal JPMC Policy" or both. *Id.*; Exs. 8–67; *Mariposa Assocs., Ltd. v. Regions Bank*, No. 13-23838-CIV, 2015 WL 1478652, at *7 (S.D. Fla. Mar. 31, 2015) ("The plain meaning of this provision, which uses the term 'and/or', is that Regions . . . could apply the net proceeds from the sale in any one of four ways. Nothing about this provision obligated Regions to choose to apply the proceeds in the first manner[.]"); *see id* at *8 (referring to the "unambiguous . . . term 'and/or'") (emphasis added); *United States v. Joyner*, No. 121CR00339RAHSRW, 2021 WL 6751606, at *6 (M.D. Ala. Nov. 18, 2021) ("By using the ambiguous term 'and/or'—that is, by alleging that Defendant is guilty of one or the other or both offences—the Government effectively charges Defendant in the disjunctive. . . . [T]he term 'and/or' in the indictment conveys . . . either Alabama, Georgia, or both.") (emphasis added).

Because Chase was unable to execute the transaction due to "Internal JPMC Policy," the Statement was factually "true," and "not readily capable of being proven false." *Turner*, 879 F.3d at 1267. Further, there is no evidence that Chase juxtaposed or omitted anything in the "four corners" of the Statement, or the message in which the Statement was made, "so as to imply" in the "plain and natural meaning of the words used," that the Statement was false. *Mac Isaac*, 557 F. Supp. 3d at 1258; *Jews For Jesus, Inc.*, 997 So. 2d at 1107; *Chapin*, 993 F.2d at 1092. The substantial truth of the Statement is fatal to Plaintiffs' Defamation Claims. *See Turner*, 879 F.3d at 1267 ("The challenged statements are true, and Turner's defamation claim falls short on this basis alone."); *Sloan*, 2018 WL 3769968, at *5 ("[T]he statements attributed to Shatner and his agents could not, as a matter of law, have been defamatory because they were not demonstrably false when made."). This Court should grant summary judgment to Chase for this reason.

**b.    The Statement was not a defamatory statement about either Plaintiff.**

"Under Florida law, words are defamatory when they charge a person with an infamous crime or tend to subject one to hatred, distrust, ridicule, contempt or disgrace or tend to injure one in one's business or profession." *Seropian v. Forman*, 652 So. 2d 490, 495 (Fla. 4th DCA). Most fundamentally, for a statement to be actionable as defamation, the statement must be "about [the] plaintiff." *Corsi v. Newsmax Media, Inc*., 519 F. Supp. 3d 1110, 1119–20 (S.D. Fla. 2021) ("To state a claim for defamation, a plaintiff must plead that the defendant published a false statement

<u>about plaintiff</u> to a third party.") (emphasis added); *Valencia v. Citibank Int'l*, 728 So. 2d 330 (Fla. 3d DCA 1999) ("To state a cause of action for defamation, in Florida, a plaintiff must allege that (1) the defendant published a false statement (2) <u>about the plaintiff</u>[.]") (emphasis added); *see Sloan*, 2018 WL 3769968, at *6 ("[T]he defamatory statement or implication <u>must be of and concerning the plaintiff</u>") (emphasis added).

The Statement—"We are unable to execute your transaction due to sanctions and/or Internal JPMC Policy"—was not a statement "about [either] plaintiff." *Corsi*, 519 F. Supp. 3d at 1120; *Valencia*, 728 So. 2d at 330. The Statement, and the message in which Chase made the Statement, <u>never mentioned or referenced either</u> Monarch or Gitman. *See* Exs. 8–67; *see Mac Isaac*, 557 F. Supp. 3d at 1259 ("[T]he [alleged defamatory statements] did not mention Plaintiff, the Mac Shop, or provide any other descriptive information identifying Plaintiff as a purported 'hacker.'"). Neither the Statement, nor the message in which Chase made the Statement, included "any other descriptive information" that made either Plaintiff's identity "readily ascertainable." *Mac Isaac*, 557 F. Supp. 3d at 1260 ("Here, in contrast, the only persons identified in the Explanations are the NY Post, Hunter Biden, "Ukranian biz man" and "dad"—not Plaintiff, his business, or any other descriptive information that made Plaintiff's identity readily ascertainable.").[6]

Indeed, the allegedly defamatory phrase "Sanctions and/or Internal JPMC Policy," as used in the Statement, is plainly directed to, and "about," the "transaction" referenced therein. Exs. 8–67; *Corsi*, 519 F. Supp. 3d at 1119–20; *Valencia*, 728 So. 2d at 330. The Statement is not a statement of fact about either Plaintiff, the Chase accountholder involved in the transaction, or anyone else, much less a statement of fact that either Plaintiff, or anyone else, is "on OFAC's ban list, sanctions lists, or another non-compliance lists" or engaged in "other . . . criminal activity,"

---

[6]     "[T]he law in Florida dictates that defamation *per se* must be actionable on its face" and does not require additional explanation of the words used to show that they have a defamatory meaning <u>or that the person defamed is the plaintiff</u>." *Mac Isaac*, 557 F. Supp. 3d at 1259 (emphasis added). Because Plaintiffs assert claims for defamation *per se*, "<u>looking outside the four corners</u>" of the Statement, or the messages in which the Statement was made, <u>to show that "the person defamed is the [P]laintiff," would "run afoul the very nature of a *per se* action.</u>" *Id.* (emphasis added) (quoting *Thompson*, 224 F. Supp. 2d at 1377). To the extent Plaintiffs attempt to reconstrue their claims to encompass defamation *per quod*, there is also no evidence of any "extrinsic facts and innuendo" to prove that the Statement is about either Plaintiff. *Id.*

as Plaintiffs claim. *Id.*; SAC ¶¶ 27, 33, 46.[7]

The Statement was not even a statement of fact that the "transaction" at issue was cancelled due to "Sanctions." *See supra* at 7-8. The term "sanctions" does not constitute "criminal activity," as Plaintiffs suggest, regardless. *See* Erich C. Ferrari, *The Judiciary Strikes Back: Ofac's Blocking of Assets in Light of Kindhearts v. Geithner*, 6 Bus. L. Brief (Am. U.) 11, 16 (2010) ("OFAC's powers . . . do not implicate First Amendment Rights, nor are they criminal in nature.") (emphasis added); Danielle Stampley, *Blocking Access to Assets: Compromising Civil Rights to Protect National Security or Unconstitutional Infringement on Due Process and the Right to Hire an Attorney?*, 57 Am. U. L. Rev. 683, 699 (2008) ("[U]nlike a criminal defendant . . . an organization subject to OFAC sanctions has no right to appointed counsel because OFAC sanctions do not constitute criminal prosecution") (emphasis added). Additionally, there is no evidence that the term "Sanctions," even if the term were directed to either Plaintiff (which it is not), and were not modified by "and/or Internal JPMC Policy" (which it is), would be "incompatible with the essential functions of" Monarch as a private jet charter broker, such that the Statement may be defamation *per se*. *Scobie*, 2013 WL 3776270, at *3 ("[T]he [defamatory statement] does not impute to him conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business . . . Courts have found statements defamatory *per se* . . . where . . . the *per se* defamatory statements imputed conduct to the plaintiffs incompatible with the essential functions of their respective jobs. . . . Thus, there can be no claim for defamation *per se* under the facts alleged."); *c.f.*, *Walsh v. Miami Herald Pub. Co.*, 80 So. 2d 669, 671 (Fla. 1955) ("The [statements] certainly impugn the credibility of appellant . . . and since it is part of the official duty of a policeman to testify, and ergo to testify truthfully, when called, a publication such as this tends to injure him in his trade.").

There is also no evidence that Chase juxtaposed or omitted anything in the "four corners" of the Statement, or the message in which the Statement was made, "so as to imply" in the "plain and natural meaning of the words used," that the Statement was "about [either] plaintiff," or that either Plaintiff, or anyone else, is "on OFAC's ban list, sanctions lists, or another non-compliance lists" or engaged in "other . . . criminal activity." *Mac Isaac*, 557 F. Supp. 3d at 1258; *Jews For Jesus, Inc.*, 997 So. 2d at 1107; *Chapin*, 993 F.2d at 1092; *Corsi*, 519 F. Supp. 3d at 1120; *Valencia*,

---

[7]       There is also no evidence of any "extrinsic facts and innuendo" to remotely suggest the Statement meant that either Plaintiff, or anyone else, is "on OFAC's ban list, sanctions lists, or another non-compliance lists" or engaged in "other . . . criminal activity." *Paulson*, 2017 WL 2484197, at *4; SAC ¶¶ 27, 33, 46.

728 So. 2d at 330; SAC ¶¶ 27, 33, 46.

The Statement was not, as a matter of law, a defamatory statement about either Plaintiff. *See id.*; *Seropian*, 652 So. 2d at 495 ("The term *influence peddling* is, as a matter of law, <u>neither defamatory nor a falsehood</u>. . . . the term does not impute conduct incompatible with the proper exercise of plaintiff's office, or tend to subject him to hatred, distrust, ridicule, contempt or disgrace. . . [and] the term is <u>not obviously directed to plaintiff</u>—it could equally be directed to the Clinic and its lobbyists[.]") (emphasis added). Because the Statement is not a defamatory statement about Plaintiffs, summary judgment is appropriate on Plaintiffs' Defamation Claims. *See Mac Isaac*, 557 F. Supp. 3d at 1260–62 ("[B]ased on the four corners of the Explanations, the Court cannot conclude that an individual reading the Explanations would be able to identify them with Plaintiff. Accordingly, for this reason alone, the Explanations fail to provide a sufficient basis upon which to ground an action for defamation *per se*. . . . **DISMISSED WITH PREJUDICE**"); *Sloan*, 2018 WL 3769968, at *6 ("[T]he defamatory statement or implication must be 'of and concerning' the plaintiff. The radio interview transcript does not mention Plaintiff, his business, or identifying characteristics. . . . Motion to Dismiss . . . is **GRANTED** *with prejudice*.").

<b>c.</b>    <b>Plaintiffs suffered no damages caused by the alleged defamation.</b>

Plaintiffs bring claims for defamation *per se* in order to avoid their lack of damages from Chase's statements. However, as explained *supra*, Plaintiffs' defamation *per se* claims fail. Moreover, the admissible evidence rebuts Plaintiffs' presumption of damages for defamation *per se*. Moreover, to the extent this Court or Plaintiffs would subsequently construe Plaintiffs' claims as defamation *per quod*, the claims also fail for lack of special damages.

In response to Chase's interrogatory asking Plaintiffs to "[i]dentify and describe in detail the damages you claim to have incurred as a result of the conduct alleged in the Complaint," Plaintiffs averred the following:



Ex. 70, Pls. Resp. to Def., [Chase's] Second Set of Interrogs., at No. 5.

11

Thus, Plaintiffs state, their purported damages result solely from (1) credit card fees, and (2) ███████████████████████████████ There is no mention of a defamatory statement, much less any mention of a Monarch customer cancelling a contract due to reading or hearing any alleged defamatory statement about Monarch or Gitman.

Monarch's corporate representative deposition also supports this fact, as Gitman continues to stand by the sworn response attributing all purported damages to Chase's nonactionable cancellation of transactions and to Monarch's decision to allow customers to pay with a credit card and reimburse the credit card transaction fee—as opposed to any alleged defamatory statements. *See, e.g.*, Ex. 3. D. Gitman Dep. Tr. 179:4–15 (███████████████████████████ ██████). In fact, the credit card fees only arose because customers chose to continue doing business with Monarch, after the alleged defamation. In other words, the purported damages, according to Plaintiffs, were "caused" solely by Chase's nonactionable decision to ███████████ ███████████████████, resulting in the cancellation of wire transactions from or through Chase accounts. *Id.* These so-called "damages" would be identical if Chase had never made a statement, and instead simply exercised its legal right (unchallenged by Plaintiffs) to cancel the transactions.[8]

Plaintiffs' interrogatory responses and deposition testimony, which demonstrate that the only damages purportedly caused by Chase resulted from the cancellation of wire transactions from or through Chase accounts, rebut the presumption of general damages that comes with defamation *per se*. *See Army Aviation Heritage Found. & Museum, Inc. v. Buis*, 504 F. Supp. 2d 1254, 1260 (N.D. Fla. 2007) ("AAHF has failed to demonstrate any injury to its reputation, decreased standing in the community, impairment in its ability to conduct its trade or business, loss in membership, or that the defamatory statements deterred anyone from conducting business with it. To the extent that such impairments are presumed by law, I find that the evidence produced at trial sufficiently rebuts those presumptions.").

Plaintiffs' interrogatory responses and deposition testimony also foreclose any showing of "special damages," to the extent Plaintiffs attempt to reconstrue their claims to encompass

---

[8]     *See, e.g.*, Ex. 2, Deposit Account Agreement (████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████████████████████████).

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

defamation *per quod*. *Barry Coll.*, 353 So. 2d at 578; *see Frey v. Minter*, 829 F. App'x 432, 434 (11th Cir. 2020) ("Both Florida and Georgia require proof of special damages for a plaintiff to sustain a claim of defamation *per quod* . . . the district court granted summary judgment in favor of the defendants because Mr. Frey did not offer any evidence of special damages."). "The chief characteristic of special damages is a realized loss." *Salit v. Rud Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 388 (Fla. 4th DCA 1999). Here, each allegedly defamatory Statement was made to a specific Chase accountholder involved in a wire transaction Chase was unable to execute, and Chase provided an explanation as to why it was unable to execute the transaction, i.e., "due to Sanctions and/or Internal JPMC Policy." Exs. 8–67. To prove special damages, Plaintiffs must present evidence that (1) the Statement was made with reference to a wire transaction intended for Monarch or Gitman (as opposed to some other recipient), (2) the particular Chase accountholder read the Statement, and (3) the Chase accountholder chose to cancel a contract with Monarch because of the allegedly defamatory content of the Statement.

Plaintiffs have not provided or disclosed summary judgment evidence of special damages through their initial disclosures, responses to Chase's discovery requests, or otherwise, to create a genuine issue of material fact that any alleged defamatory statement by Chase was the proximate cause of special economic damages. All alleged damages are linked only to Chase's nonactionable conduct, and there is no evidence connecting any loss to any allegedly defamatory statement. *Cape Publ'n, Inc. v. Reakes*, which distinguishes between damages arising from non-actionable conduct and a related alleged defamatory statement disconnected from the damages, illustrates the point:

> In order to recover for defamation, a plaintiff must show that the damages were proximately caused by the defamatory statements. There was <u>no showing of proximate cause in this case concerning the statement</u> made by Meers. The trial judge instructed the jury that the case was not one of wrongful termination, but was only about defamation. When the jury awarded $400,000 to Reakes because of Meers' statement, this admonishment was apparently ignored. . . . [I]t is clear that these <u>damages came as a result of being fired</u> and learning that Meers had told Squires that she was fired for committing a crime. Meers only made this statement to Squires, who admittedly did not repeat it to others. Squires, in fact, disagreed with the decision to terminate Reakes and made efforts to help her secure employment. <u>Absent any showing of damages as a result of Meers' statement</u> to Squires, that portion of the verdict must be <u>reversed</u>.

*Reakes*, 840 So. 2d 277, 281 (Fla. 5th DCA 2003) (emphasis added, internal citations omitted).

Similarly, if Monarch absorbed credit card fees otherwise incurred by the client because Chase was unable to execute wire transactions, *see* Ex. 70, Pls. Resp. to Def., [Chase]'s Second

13

Set of Interrogs., at No. 5, that is not damage caused by defamation. If, due to inconvenience or otherwise, ███████████████████████████ Monarch to lose business, *id.*, that is not damage caused by defamation. Those damages would be a nonactionable consequence of Chase's unchallenged right to manage and/or operate its accounts. Cancelling wire transactions is not defamation, and it is not alleged as a cause of action in the SAC.

There is no evidence of a single Chase accountholder who stopped doing business with Monarch because of the alleged defamatory Statement. Thus, because Plaintiffs' sole categories of damages, according to Plaintiffs', result solely from (1) credit card fees and (2) ██████ ███████████████ Chase would be entitled to summary judgment as to special damages on any potential claim for defamation *per quod*. *See Carlson*, 956 F. Supp. at 1007 ("[E]ven if . . . *per quod,* Plaintiff has not met the standard for alleging special damages . . . Therefore, the Court has no choice but to rule in favor of Defendant on this count.").

> **d.    Plaintiffs cannot prove entitlement to punitive damages.**

Even if Plaintiffs were allowed to maintain an action for any form of defamation, Chase is entitled to summary judgment on any claim of punitive damages. "The Eleventh Circuit holds that "Florida is one of those states that requires a form of common law malice to sustain an award for punitive damages." *Hunt v. Liberty Lobby*, 720 F.2d 631, 650 (11th Cir. 1983). Florida courts have concluded, "[i]n order to award punitive damages in a libel action, ill will, hostility or an evil intention to defame and injure, must be present." *Id*. (emphasis added). Furthermore, "[d]efeating a motion for summary judgment on a claim for punitive damages is an extraordinarily high bar. Plaintiff, bearing the burden of proof on her claim, must meet the heightened standard of clear and convincing evidence in proving a heightened level of culpability[.]" *Nunez v. Coloplast Corp.*, 461 F. Supp. 3d 1260, 1269 (S.D. Fla. 2020).

Proof of the type of common law malice required to sustain a claim for punitive damages may come from two sources: (1) the publication itself and (2) extrinsic evidence concerning the defendant's feelings toward the plaintiff. "Examples of cases where the false and defamatory words themselves were so extreme as to intrinsically show express malice are *Loeb v. Geronemus*, 66 So.2d 241 (Fla.1953) (defendants said plaintiff was guilty of evil conduct, was of low moral character, was a disgrace, a troublemaker, was not respectable, had been compelled to leave Chicago) and *Brown v. Fawcett Publications, Inc*., 196 So.2d 465 (Fla. 2d DCA 1967) (defendant said plaintiff was a murderer, rapist, and sodomite)." *Nodar v. Galbreath*, 462 So. 2d 803, 812

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

(Fla. 1984). In contrast, Chase's allegedly defamatory messages reflected an impartial process to provide minimalistic information to Chase's accountholders regarding the reason Chase was unable to execute a wire transaction. *See* Exs. 8–67. The messages did not contain Monarch or Gitman's name, and did not reflect any personal feelings toward Monarch or Gitman.

The extrinsic evidence regarding Chase's feelings toward Monarch and Gitman, in the form of deposition testimony, likewise indicates no "ill will, hostility or an evil intention to defame and injure" either Plaintiff. Rather, the Statement was made pursuant to Chase standard operating processes. *See, e.g.*, Ex. 1, A. Lauro Dep. Tr. at 56–59 (███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████

███████████████████████). Chase's internal emails, and letters sent to Monarch's counsel, reflect caution exercised by Chase employees not to disclose sources or privileged matters that Chase is prohibited by law to disclose. *See, e.g.*, Ex. 68 (██████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████).

Chase is entitled to summary judgment as a matter of law as to any claim for punitive damages. Plaintiffs' Defamation Claims fail wholesale, as a matter of law, and Chase is entitled to summary judgment on all three claims.[9]

### 2.    The alleged statements were privileged and made in good faith.

Even if there were evidence to establish the elements of Plaintiffs' Defamation Claims, the Statement is protected by a conditional privilege under Florida defamation law.

---

[9]    There are additional alleged statements listed in paragraphs 16 and 18 of the SAC, along with 10 alleged accountholders, but Plaintiffs did not produce any admissible evidence in discovery to show any of the statements described were made by Chase. SAC ¶¶ 16, 18. For each of the 10 alleged accountholders and statements, there is, therefore, no genuine dispute as to any material fact, and Defendant is entitled to summary judgment. *See Celotex Corp.*, 477 U.S. at 322–3. Plaintiffs do not and cannot "go beyond the pleadings and . . . designate specific facts showing there is a genuine issue for trial," as to those 10 alleged accountholders and statements, with respect to any element that Plaintiffs must prove for their claims to survive. *Id.* at 323. Indeed, there is no summary judgment evidence of (1) publication; (2) falsity; (3) negligence; (4) actual damages; or (5) a defamatory statement. *See Mac Isaac*, 557 F. Supp. 3d at 1257.

### a.   The statements were privileged as a matter of law.

"[O]ne who publishes defamatory matter concerning another is not liable for the publication if the matter is published upon an occasion that makes it conditionally privileged and the privilege is not abused." *Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (citing *Nodar,* 462 So.2d at 809; *Abraham v. Baldwin,* 52 Fla. 151 (1906)). The Statement at issue is a classic example of a conditionally privileged statement under Florida law.

"In Florida, a statement made by one having an interest or duty in the subject matter thereof, to another person having a corresponding interest or duty therein, is conditionally <u>privileged, even though the statement may be false and otherwise actionable</u>." *Jarzynka v. St. Thomas Univ. of L.*, 310 F. Supp. 2d 1256, 1267 (S.D. Fla. 2004) (emphasis added); *see John Hancock Mut. Life Ins. Co. v. Zalay*, 581 So. 2d 178, 179 (Fla. 2d DCA 1991) ("A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation."). And "[w]here the circumstances and content of allegedly defamatory statements are undisputed, or are clear under the evidence, the question of whether a qualified privilege existed is a question of law." *Zalay*, 581 So. 2d at 179.

Here, each Statement concerned a Chase accountholder's transaction that Chase was unable to execute—a subject about which Chase and its accountholder shared a "corresponding interest." *Gunder's Auto Ctr. v. State Farm Ins.,* 699 F. Supp. 2d 1339, 1341 (M.D. Fla. 2010) ("Each statement concerns the quality, timeliness, or value of the plaintiff's automobile repairs— subjects about which the insured and State Farm share a 'corresponding interest.' Accordingly, State Farm's statements are privileged."); *see* Ex. 7, A. Lauro Decl. ¶ 4 (



); Ex. 1, A. Lauro. Dep. Tr. at 43: 18–22 (

). Chase's accountholders had an interest in learning why Chase was unable to execute the transactions, and Chase had an interest in providing an explanation to its accountholders. *See Shaw v. R.J. Reynolds Tobacco Co*., 818 F. Supp. 1539, 1542–43 (M.D. Fla. 1993) ("The single publication by Defendant's employee established by Plaintiff is qualifiedly <u>privileged</u>, and the privilege was not abused in this particular instance.

Defendant's statements were made in good faith in response to an inquiry from a customer . . . the parties to the conversation shared <u>corresponding business interests</u>: the customer had an interest in learning what happened to a sales representative with whom she had a longstanding personal and business relationship, and the Defendant had the primary motive of responding adequately to a customer's inquiry."); *Lefrock,* 77 F. Supp. 3d at 1201 ("[T]he statements at issue were made by a Walgreens' pharmacist to pharmacy customers at the time the customers attempted to fill prescriptions, and the apparent purpose of the statements was to inform the customers[.]").

Accordingly, the Statement was "privileged" and Chase is entitled to the privilege because each Statement was made "in a proper manner." *Lefrock*, 77 F. Supp. 3d at 1201. A statement is made in a proper manner where "its publication was limited in scope, and the information was not disclosed to additional persons." *Shaw*, 818 F. Supp. at 1542; *see Lefrock*, 77 F. Supp. 3d at 1202 ("The pharmacists made the statements in the proper location and manner since they rendered the advice to the customers while the customers were seeking advice . . . Also, the statements were made in the proper manner since the statements were limited in scope to the specific prescriptions being filled and were not mere generalizations."). Each Statement was "limited in scope" to the specific "transaction" that Chase was "unable to execute," and each Statement was "not disclosed to additional persons," as it was made to the accountholder's private message address. Exs. 8–67.

In sum, because Chase made the Statements in the ordinary course of business to its accountholders with whom it shared a common interest in the subject matter, and made the Statements in private messages to those accountholders, each Statement was privileged under Florida law and protected from claims for defamation. *See Gunder's Auto Ctr.,* 699 F. Supp. 2d at 1341; *Shaw*, 818 F. Supp. at 1542; *Lefrock,* 77 F. Supp. 3d at 1201; *Zalay*, 581 So. 2d at ("[T]he trial court erred in not recognizing that the communication upon which this litigation was based should have been considered privileged as a matter of law."); *Jarzynka*, 310 F. Supp. 2d at 1268 ("[T]he remarks made by Dr. Soifer were privileged as a matter of law.").

  **b.**  **Plaintiffs cannot prove express malice.**

Because the statements made by Chase were protected by Florida's conditional privilege, Plaintiffs' claims cannot survive summary judgment unless Plaintiffs can rebut the presumption of good faith by producing evidence of "express malice." *Lefrock*, 77 F. Supp. 3d at 1202 (citing *Shaw*, 818 F. Supp. at 1543) ("Since the statements . . . are privileged, Lefrock's claims cannot survive summary judgment unless he can rebut the good faith presumption by producing

17

admissible evidence of express malice."); *Gunder's Auto Ctr.*, 699 F. Supp. 2d at 1342 ("The burden of proof is changed, and, in order for the plaintiff to recover, he is called upon affirmatively and expressly to show malice[.]"). "[E]xpress malice 'is a very high standard for a plaintiff to meet.'" *Gunder's Auto Ctr.*, 699 F. Supp. 2d at 1341 (quoting *Shaw*, 818 F.Supp. at 1542).

"Express malice has been defined by the Florida courts as <u>ill will, hostility *and* an evil intention to defame and injure</u>." *Jarzynka*, 310 F. Supp. 2d at 1268 (emphasis added, internal quotations and citations omitted). The Florida Supreme Court defines "express malice" as follows:

> Where a person speaks upon a privileged occasion, but the speaker is <u>motivated more by a desire to harm</u> the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege, then it can be said that there was express malice and the privilege is destroyed. Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker <u>used his privileged position to gratify his malevolence</u>.

*Gunder's Auto Ctr.,* 699 F. Supp. 2d at 1342 (emphasis added) (quoting *Myers v. Hodges,* 53 Fla. 197, 213 (1907)). Plaintiffs have no evidence that Chase made the Statements with express malice.

Once more, each allegedly defamatory Statement reflected an impartial process to provide information to a Chase accountholder regarding a "transaction" Chase was "unable to execute." Exs. 8–67. The messages did not contain Monarch or Gitman's name, and did not reflect any personal feelings toward Monarch or Gitman. *See id.* The Statement was made pursuant to Chase standard operating processes. *See, e.g.*, Ex. 1, A. Lauro Dep. Tr. at 56–59. Finally, Chase's internal emails, and letters sent to Monarch's counsel, reflect caution exercised by Chase employees not to disclose sources or privileged matters that Chase is prohibited by law to disclose. *See, e.g.*, Ex. 68.

There is no evidence that Chase acted with "ill will, hostility *and* an evil intention to defame" required to establish express malice. *Jarzynka*, 310 F. Supp. 2d at 1268; *see id.* ("These allegations do not amount to pleading that Dr. Soifer acted with malice, e.g. that she made false statements about the Plaintiff . . . due to her hostility or ill will towards the Plaintiff."). There is no evidence that Chase was motivated by a "desire to harm" Plaintiffs, or that Chase used its privileged position "to gratify [its] malevolence." *Gunder's Auto Ctr.,* 699 F. Supp. 2d at 1342; *see Shaw*, 818 F. Supp. at 1543 ("Plaintiff has failed to offer evidence that Defendant acted with the 'ill will, hostility, and evil intent to defame' required to establish express malice, or that Defendant's primary motive in publishing the information was to harm Plaintiff.").

Because the allegedly defamatory Statements made by Chase were privileged, even if they were defamatory (which they are not), and there is no evidence that Chase acted with express

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR., 8TH FLOOR | MIAMI, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

malice, summary judgment should be granted in Chase's favor on Plaintiffs' Defamation Claims. *See Gunder's Auto Ctr.*, 699 F. Supp. 2d at 1343 ("Although State Farm's statements (if false) might be defamatory, the plaintiff offers no evidence (other than the alleged falsity of the statements) from which a juror could infer malice . . . . The plaintiff fails to present evidence showing that State Farm's 'primary motive' was to harm the plaintiff rather than to further State Farm and the insured's mutual interest . . . State Farm's motion for summary judgment is **GRANTED.**"); *Weight-Rite Golf Corp. v. U.S. Golf Ass'n*, 766 F. Supp. 1104, 1112 (M.D. Fla. 1991)  ("Plaintiffs have identified no evidence in the record from which a fact finder could reasonably find that the USGA acted with actual malice toward the Plaintiffs. Accordingly, the USGA is <u>entitled to summary judgment</u> on Count IV."); *Lefrock*, 77 F. Supp. 3d at 1202 ("However, Lefrock has not produced any evidence of express malice.").

**C.     The Court should grant summary judgment to Chase on Plaintiffs' claim for tortious interference.**

Plaintiffs' claim for tortious interference fails as a matter of law, first and foremost, because it is barred by the "single action rule." *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 207–09 (Fla. 4th DCA 2002). The single action rule "does not permit multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based." *Id.* "The rule is designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Id.* at 208; *see Fridovich v. Fridovich*, 598 So.2d 65, 69 (Fla. 1992) ("It is clear that a plaintiff is not permitted to make an end-run around a successfully invoked defamation privilege by simply renaming the cause of action and repleading the same facts.").

Plaintiffs' claim for tortious interference is based upon the same allegedly defamatory statements as their Defamation Claims. *See* SAC ¶ 46. As such, the single action rule bars the claim. *See Happy Tax Franchising, LLC v. Hill*, No. 19-24539-CIV, 2021 WL 3811041, at *7 (S.D. Fla. June 7, 2021) ("Each of the alleged defamatory publications are . . . identically incorporated in the claim for tortious interference . . . [T]he claims do not arise from different occurrences . . . Count X for Tortious Interference . . . dismissed."); *Plain Bay Sales, LLC v. Gallaher*, No. 9:18-CV-80581-WM, 2020 WL 5750499, at *2–4 (S.D. Fla. Sept. 25, 2020) ("Plaintiff alleges the same conduct to support the tortious interference claim as it does to support the defamation by false implication claim. . . . Plain Bay's tortious interference with a contract claim runs afoul of Florida's single publication rule").

19

Moreover, even if Plaintiffs' claim for tortious interference were not barred by the single action rule, Plaintiffs cannot prove the elements of the claim. A claim for tortious interference with a contract or business relationship requires proof of: "(1) the existence of a business relationship . . . under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit,* 742 So.2d at 385. "[D]irect interference" is "indispensable to the existence of an actionable wrong." *Ethyl Corp.*, 386 So. 2d at 1223. The interference must be "both direct and intentional[.]" *Lawler v. Eugene Wuesthoff Mem'l Hosp. Ass'n*, 497 So. 2d 1261, 1263 (Fla. 5th DCA 1986).

Plaintiffs cannot prove that Chase had knowledge of any business relationship under which the Plaintiffs had legal rights when the allegedly defamatory statements were made. Plaintiffs also cannot prove "both direct and intentional" interference by Chase with any such business relationship. *Id.* ("There is no such thing as a cause of action for interference which is only negligently or consequentially effected."). Moreover, Plaintiffs cannot prove they were damaged as a result of the alleged unjustified interference that forms the basis of their claim. *See supra*, Part (II)(B)(1)(d)(i)–(ii).

Critically, where, the defendant's conduct is conditionally privileged, *see supra*, Part II(B)(2)(a), "malice must be the *sole* basis for the interference." *Boehm v. Am. Bankers Ins. Grp., Inc.*, 557 So. 2d 91, 95 (Fla. 3d DCA 1990); *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1223 (Fla. 3d DCA 1980) ("There is, moreover, a completely separate, additional, and overriding reason which precludes Ethyl's liability for 'interference' . . . Ethyl was, as a matter of law, privileged to act as it did[.]"). There is no evidentiary basis to suggest that malice was "the *sole* basis" (or any basis) for Chase's conduct, as required. *Boehm*, 557 So. 2d at 95; *see supra*, Part (II)(B)(1)(d), (2)(b).

This Court should grant summary judgment to Chase on Plaintiffs' claim for tortious interference. *See Callaway Land & Cattle Co.,* 831 So. 2d at 208–09; *Happy Tax Franchising, LLC*, 2021 WL 3811041, at *7; *Plain Bay Sales, LLC*, 2020 WL 5750499, at *2–4; *Boehm,* 557 So. 2d at 95 ("No reasonable jury could have found that Gaston's *sole* motivation in responding in private to the executive search agent's inquiry was express malice.").

### III.   Conclusion

For the foregoing reasons, summary judgment should be granted in Chase's favor on every count in Plaintiffs' Second Amended Complaint.

Dated: January 4, 2023                    Respectfully submitted,

                                          **Benjamin Weinberg**
                                          Derek E. León
                                            Florida Bar No. 625507
                                          Benjamin Weinberg
                                            Florida Bar No. 061519
                                          **LEÓN COSGROVE JIMÉNEZ, LLP**
                                          255 Alhambra Circle, 8th Floor
                                          Miami, Florida 33134
                                          Telephone: (305) 740-1975
                                          Facsimile: (305) 351-4059
                                          Email:  dleon@leoncosgrove.com
                                          Email:  bweinberg@leoncosgrove.com
                                          Email:  eperez@leoncosgrove.com

                                          *Counsel for Defendant JPMorgan Chase Bank, N.A.*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2023, a true and correct copy of the foregoing was filed electronically and served via the CM/ECF system on all parties and counsel of record listed below.

Joshua R. Kon, Esq.
Yosef Kudan, Esq.
Alex Kaplan, Esq.
**STOK KON + BRAVERMAN**
One East Broward Boulevard, Suite 915
Fort Lauderdale, Florida 33301
Telephone: (954) 237-1777
Email:  jkon@stoklaw.com
Email:  ykudan@stoklaw.com
Email:  akaplan@stoklaw.com

*Attorneys for Plaintiffs*

<u>**Benjamin Weinberg**</u>
Benjamin Weinberg

22

**TAB 91**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
(FT. LAUDERDALE DIVISION)

Case No.: 21-cv-62429-WPD

MONARCH AIR GROUP, LLC d/b/a
MERCURY JETS, a Florida limited
Liability company, and DAVID GITMAN,

      Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., a foreign
profit corporation,

      Defendant.

_____/

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Defendant JPMorgan Chase Bank, N.A. ("Chase"), pursuant to Federal Rule of Civil Procedure 56(c)(1), and Rule 56.1 of the Local Rules for the Southern District of Florida ("The Local Rules"), files this Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, as follows:

1.     Chase is a national bank. *See* Ex. 1, A. Lauro Dep. Tr. at 18: 4–5.

2.     Chase accounts are governed by a Deposit Account Agreement. *See* Ex. 2.

3.     Plaintiff Monarch Air Group, LLC ("Monarch") is an ███████████ that ███████████████████████ Ex. 3, D. Gitman Dep. Tr. at 16: 14–25.

4.     Monarch does not own its own aircraft; it leases or brokers other companies' aircraft. *Id.*

5.     Plaintiff David Gitman ("Gitman") is President and owner of Monarch. *Id.* at 8: 22–25.

6.      On March 14, 2019, an article titled "Under Trump, Witness Protection has been infiltrated by the Russian Mafia" was published by a website called "The Stern Facts." Ex. 4.

7.      The Stern Facts article states that "Monarch Air is allegedly a Russian mob front." *Id.* at 2.

8.      The Stern Facts article further states that Monarch was used "to funnel money and drugs on behalf of the Russian Mafia." *Id.* at 3.

9.      Monarch acknowledges that the accusations in the Stern Facts article are ▌▌▌ ▌▌▌ and it is possible that Monarch's customers read the article. *See* Ex. 3, D. Gitman Dep. Tr. at 33: 11–29.

10.     On November 27, 2020, an article titled "Flight of the Monarch: US Gov't Contracted Airline Once Owned by Criminals with Ties to Russian Mob" was published by a website called "Organized Crime and Corruption Reporting Project" ("Organized Crime"). Ex. 5.

11.     The Organized Crime article states that Monarch was "part-owned by two men who worked with a major Russian-American organized crime group." *Id.* at 1.

12.     Monarch likely lost customers as a result of the statements in the Organized Crime article. *See* Ex. 3, D. Gitman Dep. Tr. at 40: 16–22, 41: 1–3.

13.     In mid-2020, Chase's ▌▌▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌▌ in accordance with its procedures, resulting in the cancellation of wire transactions to Monarch from or through Chase accounts. *See* Ex. 6, [Chase's] Suppl. Objs. and Answers to Pls. First Set of Interrogs.; *see also* Ex. 1, A. Lauro Dep. Tr. at 18:6–22, 23: 1–19, 34–35.

14.     Chase only cancels a wire transaction to or from Monarch if a party on the remitting or beneficiary side of the transaction is a Chase accountholder. *See* Ex. 7, Dec. of A. Lauro at ¶ 4.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

15. Chase sent messages to Chase accountholders on the remitting or beneficiary side of cancelled wire transactions, stating "We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy." *See* Exs. 8–67.

16. The messages stating "We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy" were sent to Chase accountholders' private message addresses. *Id.*

17. The statement "We are unable to execute your transaction due to Sanctions and/or Internal JPMC Policy" was made pursuant to Chase standard operating processes. *See, e.g.*, Ex. 1, A. Lauro Dep. Tr. at 56–59.

18. In internal Chase e-mail correspondence regarding the cancellation of wire transactions to Monarch, an Executive Director at Chase stated, ████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████ Ex. 68.

19. Monarch's corporate representative was noticed for deposition on November 16, 2022. *See* Ex. 69, Notice of Videotaped Dep. of [Monarch's] Corporate Representative.

20. In response to Chase's interrogatory asking Monarch to "[i]dentify all Communications between a Chase employee or representative and [Monarch] customers, including but not limited to those customers identified in the Complaint and/or in [Monarch's] Responses to Chase's First Set of Interrogatories, that related in any way to Monarch and/or Gitman, including but not limited to Communications in which a Chase employee or representative told [Monarch or Monarch] customers that Monarch and/or Gitman: (1) were on the Office of Foreign Assets Control's (OFAC) ban list, sanctions, list, or another non-compliance list; (2) dealt

with a country listed on OFAC; (3) were untrustworthy; or (4) implied that Monarch and/or Gitman were implicated in criminal, risky or other wrongful activity," Monarch averred:



Ex. 70, Pls. Resps. to Def. [Chase's] Second Set of Interrogs., at No. 3.

21.     In response to Chase's interrogatory asking Plaintiffs to "[i]dentify and describe in detail the damages you claim to have incurred as a result of the conduct alleged in the Complaint," Plaintiffs averred the following:



*Id.*, at No. 5.

22.     The Department of Treasury's Office of Foreign Assets Control's ("OFAC") "Specifically Designated Nationals and Blocked Persons List" is publicly available at: https://www.treasury.gov/ofac/downloads/sdnlist.pdf.

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

Dated: January 4, 2023                    Respectfully submitted,

**Benjamin Weinberg**
Derek E. León
  Florida Bar No. 625507
Benjamin Weinberg
  Florida Bar No. 061519
**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (305) 740-1975
Facsimile: (305) 351-4059
Email:  dleon@leoncosgrove.com
Email:  bweinberg@leoncosgrove.com
Email:  eperez@leoncosgrove.com

*Counsel for Defendant JPMorgan Chase Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 4, 2023, a true and correct copy of the foregoing was filed electronically and served via the CM/ECF system on all parties and counsel of record listed below.

Joshua R. Kon, Esq.
Yosef Kudan, Esq.
Alex Kaplan, Esq.
**STOK KON + BRAVERMAN**
One East Broward Boulevard, Suite 915
Fort Lauderdale, Florida 33301
Telephone: (954) 237-1777
Email:  jkon@stoklaw.com
Email:  ykudan@stoklaw.com
Email:  akaplan@stoklaw.com

*Counsel for Plaintiffs*

**Benjamin Weinberg**
Benjamin Weinberg

LEÓN COSGROVE JIMÉNEZ, LLP
255 ALHAMBRA CIR. I 8TH FLOOR I MIAMI, FL 33134 I T 305.740.1975 I WWW.LEONCOSGROVE.COM

# TAB 91-1

# EXHIBIT 1
# (Filed Under Seal)

# TAB 91-2

# EXHIBIT 2
# (Filed Under Seal)

# TAB 91-3

# EXHIBIT 3
# (Filed Under Seal)

# TAB 91-4

# EXHIBIT 4




Open in app    Get started



Published in The Stern Facts

Patrick Simpson    Follow

Mar 14, 2019 · 9 min read · ▶ Listen

 Save            🔗

# Under Trump, Witness Protection has been infiltrated by the Russian Mafia



*Authors Note: Due to an ongoing court case in Broward County Florida, allegations about about Russian-American Businessman Edi Gurlovsky were removed due to the status of the case.*

In October 2017, Curt Weldon joined the board of advisors for Monarch Air Group, which had just completed its first contract with the Justice Department's Witness Security

  



Open in app    Get started

According to US attorney Joshua Naftalis, and judges in multiple states, Monarch Air is allegedly a Russian mob front.

**Why** would the Trump Administrations Department of Justice allow a company that operates as a front for the Russian mob anywhere near the sacred halls of Witness Protection, not once, but twice? What was going on in June 2017 and January 2018 that warranted these contracts?

---

### Details

Purchase Order DJM17A36P0079 is a Firm Fixed Price Federal Contract Award. The purchase order is funded by the Justice Management Division (DOJ - OBD). It was awarded to Monarch Air Group, LLC on Jun 23, 2017. The value of the award is $28,380. The NAICS Category for the award is 488190 - Other Support Activities for Air Transportation. The PSC Category is V221 - Passenger Air Charter Service
Our Summary

CHARTERED FLIGHT
IGF::OT::IGF
Government Description

| 👥 Funding Agency | 🌀 Justice Management Division (DOJ - OBD) 👥 |
| 👥 Awarding Agency | ✴️ US Marshals Service Witness Security Division (DOJ - USMS) 👥 |
| 👥 Awarded Vendor | Ⓜ️ Monarch Air Group, LLC |
| 👤 Contacts | Not listed |

---

Contract on Gov Tribe between

The only reason these people have not ended up in prison is that it seems like law enforcement is too busy to communicate crimes across state lines.

Curt Weldon is the author of the backchannel Ukrainian Peace Plan that Michael Cohen and Andrey Artemenko worked on and delivered to President Trump's now-convicted National Security Advisor Michael Flynn.

Sen. Dianne Feinstein (D-CA) sent inquiry letters to Cohen and Cambridge Analytica requesting correspondence with Weldon at the end of 2017, and some refer to him as Putin's first congressman. He is arguably the most significant tie between politicians in the United States and Putin's Government, and given his belief that he was betrayed by his

  



Open in app  Get started

```
 7          Finally, and this relates to both the money
 8   laundering and risk of flight.  The defendant has an ownership
 9   interest in two companies, one called Skyway, one called
10   Monarch.  These are airplane companies.  They have a
11   legitimate purpose in that they are airline companies.  They
12   were also used to wash money in the United States.
13          Owning an airplane company allows you obviously to
14   leave quite easily.  The airplane company not only was used
15   for laundering money; in 2011 Miami customs discovered 16
16   kilos of cocaine on one of these planes.  We do not believe
17   this business is legitimate.  Realistically it is used to
18   launder money and it provides him the opportunity to flee.
```

Monarch is significant because of the ties it represents. In *USA vs. Alimzon Tokhtakhounov,* Attorney Joshua Naftalis made a matter of fact statement that the defendants were using Monarch to funnel money and drugs on behalf of the Russian Mafia.

In this case, he was talking about the defendants Vadim Trincher and Anatoly Golubchik, who were in charge of the huge racketeering ring being run of out Trump Tower.







Open in app    Get started



The Trincher family

While Trincher and Golubchik were running what Attorney Joshua Naftalis referred to as " *one of the biggest bookmaking operations in the world.* " in New York, they were also running Monarch Air, Shuttleliner Cab of Ocala, Suncoast Air Cargo, and Skyway International out of Jacob Gitman's Kane Concourse Suite Address in Miami. Andrey Artemenko himself runs a defense contracting company, Ancovi International, out of the same Kane Concourse address.

One of the Managers of "Ancovi" is a company named Global Assets LLC — which was founded by Artemenko AND Vadim Netscheret. Netscheret is another tie to Michael Cohen as Cohen had to go to court to discuss why he gave the alleged mobster check for $350,000.

Monarch is just one of the hundreds of interconnected companies registered out of the

  



Open in app    Get started

Natasha Bertrand reported last year that the Ukrainian Peace Deal was able to happen because Artemenko was introduced to Felix Sater through a mutual friend named Yan Aronov. Yan is a registered agent at one of these many companies.

## FAKE DEBT PORTFOLIOS AND THE RUSSIAN MOB

In 2017, Zeke Faux wrote an explosive Pulitzer Prize worthy article for Bloomberg about a topic I had no idea existed; Phantom Debt Portfolios.

As the story goes, scammers bought a whole load of personal information on the internet and packaged the information as loans that needed to be collected on. These portfolios get sold over and over and over again to hide the liability.

However, they didn't count on the tenacity of a small town guy named Andrew. After one of the debt collectors threatened to rape his wife in a debt collection call, he transformed into what can only be described as the modern-day equivalent of the Marvel Anti-Hero, the Punisher. They threatened his family so he vowed never to stop searching.

He kept moving up the chain, taking down the payday loan industry, bit by bit when he found the supposed ring leader — Joel Tucker (and his brother Scott.)

Very interesting connections existed from the outset of my reporting about the Joel Tucker case. For instance, Pay Day Loan Financier Del Kimball had to declare bankruptcy because Joel Tucker and his allies worked with Russian Payday loan magnate and son of the oligarch Igor Provkin to extort Kimball out of millions of dollars. In the Bankruptcy filings themselves, Kimball revealed that his business partner in Russia — Notorious Russian criminal Oleg Boyko was harassing him for payment of the monies Tucker stole and that he felt afraid for his life. Interestingly enough, Boyko was using Roman Abramovich as his intermediary.

Boiko owned a condo in Trump tower from 1994 until he sold it to Gitman's business partner and convicted criminal Vadim Trincher in 2009.

  



Open in app    Get started

Finally, in December 2016, the FTC sued Tucker for selling phantom debt. According to the regulator, everything had happened pretty much as Therrien imagined: Tucker had invented more than 7.7 million fake debts and sold them to a series of middlemen for $4.2 million. This September, a judge ruled for the agency, ordering Tucker to pay back that money on top of the $30 million he already owed.

Scott was convicted on 14 charges and sent to Prison. Six months after Bloomberg Article published the story, Joel was underlined indicted on 15 counts and is due to in court later this year.

Andrew, like Frank Castle, had finally caught his man.

Or had he?

*This is where it gets truly fascinating*

On 8/27/18, the Attorney General of the State of New York filed a lawsuit against Hylan Asset Management and other related companies concerning the Phantom Debts.





Open in app    Get started



The Web connecting Gitman and his associates to the Fake Debt Portfolios and Private Airlines

Andrew Shaevel, a well-respected businessman from Buffalo was one of the principles involved in the Phantom Debt scheme. He ultimately claimed he was unaware of the fake debts being sold by his company, but email evidence showed that he was aware of it and did not stop buying up the fake debts.

Disbarred former lawyer Jon Purzihansky was his Partner in the venture. In 2006, Purzihansky, himself a Russian born American Citizen was found guilty of helping a Russian mobster obtain a VISA on false pretenses. Hylan was accused of purchasing the Phantom Debt Portfolios through a Chicago area intermediary, Stark Law.

Attorney Dennis Vacco is the lawyer Purzihansky and Shaevel hired to defend them. He is



Open in app     Get started

Vacco is well known in New York circles for becoming the lobbyist for Waste Management months after settling an anti-Trust lawsuit against them. Michael Caputo also <u>hired</u> Vacco as his attorney in the "Trump Russia" scandal.

40.    On November 27, 2015, Shaevel, Purizhansky and Mohindra sold BMG debts that originated from Joel Tucker to an overseas corporation.   Through a series of complex transactions, a Brazilian company called "Prudent Investimentos" purchased $200 million in "BMG Warehouse Debt" from a joint venture controlled by Hylan and Mohindra at a cost of $2 million.   The parties also agreed that Hylan and Mohindra would continue to collect on the debt

13

Case 1:18-cv-00710-EAW-JJM   Document 31   Filed 08/27/18   Page 14 of 27

by taking a percentage of collections and remitting the remainder to Prudent.   In an email to Prudent and copied to Purizhansky, Shaevel acknowledged that even after the sale, "our affiliates are servicing the paper so in effect we have control of the debt and the cash."

Along came the Gitman Family. Jacob Gitman, through a Brazilian Investment Company "Prudent Investimentos" <u>purchased</u> 200 million in the fake debt portfolios, while allowing Hylan to continue managing the portfolio.

Bizapedia lists Prudent as being <u>registered</u> in 2014, by Jacob Gitman, LGN International, and Roman Faizulin. Despite being registered by Gitman, Prudent was being run in public by Dennis Klemming. He has no connection to the company on any registrations forms

          

7/12/22, 8:08 PM — Under Trump, Witness Protection Has Been Infiltrated by the Russian Mafia | by Vianca Simpson | The Stern Facts

Case 0:21-cv-62429-WPD Document 91-4 Entered on FLSD Docket 01/04/2023 Page 10 of 14



Open in app    Get started

IN WITNESS WHEREOF, the Parties have executed this Receivables Purchase and Sale Agreement, to be effective as of the date first set forth above.

SELLER:

HYLAN DEBT FUND, LLC - PORTFOLIO SERIES 109

By: _____
Andrew J. Shaevel, CEO

BUYER:

KSB INTERNATIONAL LTD

By: _____
Roman Faizullin, President

KSB International is a Maltese company, formed six months before Prudent invested in the fake debt portfolios. In April 2016, KSB itself entered into an agreement to purchase part of the Phantom debt portfolios from Hylan. Roman Faizulin was the point of contact.

LGN International, a registered agent for Prudent Investmentos, filed a lawsuit on behalf of KSB International, in 2017. The Lawsuit alleges that KSB International and Mordechey Shahak along with other Russian Businessmen allegedly reached an agreement to form KSB Holdings and work together to collect on the 60 million of phantom debts KSB had purchased from Hylan.

The Assets for KSB Holdings were transferred to a new company, MBG Financial, run by one of the Defendents in September 2016. This includes the aforementioned fake debts. This Racketeering Case is still active in Broward County

Living in a world where two debt collectors can sue each other over debts that don't even exist is mind-boggling when you stop and think about it.





 



Open in app    Get started

Kocharov Partner Alexander Nogueira with the Trump family.

Michael Kocharov is yet another <u>tie</u> from Gitman to Trump. He is an owner of two Trump Tower Panama Properties, and also a registered <u>agent</u> for one of Jacob Gitman's companies. Kocharov's business partner Alexandre Ventura Nogueira was the primary broker for the Panama Project and is now a convicted felon.



## "SIPHONING OFF MILLIONS OF DOLLARS FOR PERSONAL PROJECTS"

22.    The Judgment Debtor's bank account records show the Insiders looted the Judgment Debtor by siphoning off millions of dollars for personal projects and expenses while the Judgment Debtor was insolvent and while the outstanding invoices underlying the Final Judgment continued to increase in number and amount. Had the Insiders not used the Judgment Debtor's funds for improper purposes, it would have had sufficient funds to pay the Judgment Creditors.

        



Open in app    Get started

off of the contract they signed in 2012 for personal use through one of his companies, Basta Holdings (now known as Blackpoll Fleet International.)

Aside from this, the former Basta CFO, Andrew Logullo had his FINRA membership suspended due to corruption. This case connects a lot of dots the federal government should have connected long ago.

Jacob, David, and the Gitman family businesses have attempted to turn the case into one that blames another party. They started the case by convincing everyone around them that Boruch Freedman was the real decision maker and that they were unaware of the situation and just following directions.

Evidence Freedman's lawyers collected throughout the case revealed that Freedman supposedly wasn't an officer in the company involved, nor did he fill out any of the bank paperwork. The Plaintiffs were able to convince the court to request his arrest with false information, but he had already fled the country due to receiving threats from the plaintiffs.

During the case, it was revealed that the Plaintiffs "E.R. Troika" are actually the mobsters known as the Khazakh trio. The Trio — Patokh Chodiev, Alijan Ibragimov and Alexander Machkevich — built their fortunes in the mining, oil and gas industry. They've partnered with the Bayrock Group on developing Trump SoHo in the past and share extensive ties to Felix Sater.

While this court case was ongoing, two of Jacobs children (Larry and David) were being served eviction notices for breaching their rental contracts. Interestingly enough, at least one of the brothers used their mother, Alisa, as a real estate agent. Alisa works for Sib Realty, the real estate agency that almost exclusively deals with Trump properties in Florida

Sources have placed Michael Cohen in the same world as Jacob Gitman on multiple occasions as well. There are pretty significant indirect ties between the two, but no smoking gun as of yet.

        



Open in app    Get started

country fail to share notes and lack the manpower to do the research needed to find the crimes.



The very fact that Monarch Air was able to sign two major Witness Security contracts with the DOJ while being tied to the Russian Mob is a story that should have been told months ago. My only hope is that somebody important in the Mueller investigation reads this article and acts appropriately.

Thanks to Grant Stern

About    Help    Terms    Privacy

          



Open in app    Get started

 

 

# TAB 95-5



EXHIBIT 5

# Flight of the Monarch: US Gov't Contracted Airline Once Owned by Criminals with Ties to Russian Mob

🖼 Credit: Facebook

**by Lily Dobrovolskaya**

*27 November 2020*

🐦 (http://twitter.com/intent/tweet?text=U.S. authorities awarded Monarch Air Group over 100 contracts, including transporting protected witnesses

f (http://www.facebook.com/share.php?u=https://www.occrp.org/en/investigations/flight-of-the-monarch-us-govt-contracted-airline-once-owned-by-

❤ DONATE (https://www.occrp.org/en/donate)

An American aviation company that has transported protected witnesses for the U.S. government was once part-owned by two men who worked with a major Russian-American organized crime group.

These men, Anatoly Golubchik and Vadim Trincher, were jailed in 2014 for operating an illegal gambling and extortion ring (https://www.fbi.gov/contact-us/field-offices/newyork/news/press-releases/two-defendants-sentenced-for-participating-in-racketeering-conspiracy-with-russian-american-organized-crime-enterprise-operating-international-sportsbook-that-laundered-more-than-100-million) out of an apartment in Trump Tower in New York City. U.S. prosecutors said they were part of a "far-reaching Russian-American organized crime ring" known as the Taiwanchik-Trincher Organization, under the protection of notorious Russian crime boss Alimzhan "Taiwanchik" Tokhtakhounov.

OCCRP Needs Your Feedback!

Could you please take our 10 question survey?

Your answers will help us improve the presentation of our investigative reporting 👇

**Start survey**

Powered by Survicate (https://survicate.com/softwa~a)
utm_source=Survey+branding&utm_medium=Widg~rey?

## Пролетая над Америкой

Read a version of this story in Russian from our partner IStories.

**Read more** 

(https://istories.media/investigations/2020/11/27/proletaya-nad-amerikoi/)

Read OCCRP's coverage of how the Taiwanchik-Trincher Organization was busted wide open (https://www.occrp.org/en/investigations/1953-international-russian-organized-crime-ring-does-old-school-gambling-in-a-new-way).

Two other investors who ran the company afterwards also had legal troubles, and one fled a warrant for his arrest in the U.S. and remains on the lam.

Nonetheless, an OCCRP investigation shows Monarch Air Group has won U.S. government contracts worth over $6 million, and was making government flights as recently as September.

Monarch has carried out various tasks for U.S. authorities, including carrying protected witnesses for the Marshals Service and transporting fuel in Israel for the Department of Defense (DoD). (The witness-protection contracts were first reported by (https://thesternfacts.com/under-trump-witness-protection-has-been-infiltrated-by-the-russian-mafia-f6e4825f10a5) blogger Patrick Simpson last year.) One of its affiliates, WAB International, also subcontracted jobs transporting passengers and cargo for the DoD in Afghanistan.

"The negligence is startling," said Gary Kalman, director of the U.S. chapter of Transparency International. "Airlines with a history of criminal affiliation contracted by the government to transport protected witnesses is something we'd expect to see in a spy novel, not in a news report."



OCCRP Needs Your Feedback!

Could you please take our 10 question survey?

Your answers will help us improve the presentation of our investigative reporting 👇

Start survey

Powered by Survicate (https://survicate.com/softwai utm_source=Survey+branding&utm_medium=Widg...ey&



Credit: Twitter

Vadim Trincher, on the left, was sentenced to five years in prison in 2014 for operating an illegal gambling, money laundering, and extortion ring.

In a 2013 court document, prosecutors claimed Golubchik acted as Tokhtakhounov's "enforcer," and accused the men of laundering about $100 million on behalf of "high-level criminals" — some of it through Monarch and another airline company Golubchik and Trincher owned in the U.S. called Skyway International.

On one occasion, customs agents in Miami discovered 16 kilograms of cocaine on one of Monarch's planes. Prosecutors noted the seizure at Golubchik's bail hearing in 2013, adding of the airline: "We do not believe this business is legitimate."

The U.S. Marshals Service told reporters that it placed protected witnesses on Monarch planes through contracts overseen by the General Services Administration (GSA), which provides leasing, management, and other professional services to U.S. government agencies. The GSA did not respond to a request for comment.

Golubchik and Trincher both left Monarch in 2012, before the airline won the DoD and the GSA contracts. Monarch was audited by the GSA in 2013, the same year Golubchik and Trincher's arrest was widely reported, and the agency awarded the airline a 10-year contract in 2014 under which the U.S. Marshals service employed them to transport protected witnesses. The company is currently owned by the son of Golubchik and Trincher's former business partner.

OCCRP Needs Your Feedback!

Could you please take our 10 question survey?

Your answers will help us improve the tool and the organization's work and reporting.

Start survey

Powered by Survicate (https://survicate.com/software-survey?utm_source=Survey+branding&utm_medium=Widget+survey)

A spokesperson for the Defense Logistics Agency, which manages the U.S. military's supply chains, said the agency followed the proper procedures when vetting Monarch for a contract awarded in 2012 to deliver fuel to a military base in Israel. Neither Golubchik nor Trincher were "involved in the bidding or performance of the contract," he added in an email.

Federal Acquisition Regulations require contractors like Monarch to provide details of any criminal offenses by its employees, even if they don't relate directly to the contract, according to Jessica Tillipman, a professor at George Washington University Law School with expertise in anti-corruption and government contracting. The agency is then required to make further enquiries, and it is at their discretion to decide whether to work with the company.

Alina Gavrushenko, Monarch's director of marketing and public relations, said the company has not been affiliated with Golubchik or Trincher since 2012.

"Like many startups, especially in aviation, the company has changed ownership and evolved its business model over the years," she said, adding: "Our business operations are conducted with full integrity and transparency."

The current owner of Monarch, David Gitman, did not respond to a request for comment.

Credit: Facebook

A promotional image used by Monarch.

## *The Takeover*

With the 2008 financial crisis threatening to ground Monarch Air, then a small Florida-based air cargo company, its owner, career pilot Paul Slavin needed an injection of funds.

Slavin, who had worked in the aviation industry for 35 years, started looking around for backers. A "trusted aircraft broker" he knew introduced him to Jacob Gitman and Anatoly Golubchick, who agreed to invest while staying out of the airline's day-to-day operations. For a while, it seemed an ideal solution.

But they soon invited more investors on board, and within three years the clique had taken control of the company. According to Slavin, they started withholding funds and making "operational decisions that conflicted with my standards." He says he sold his shares in 2011 for a token amount. The new group began aggressively expanding the business, opening new offices and bidding for U.S. government contracts.

Slavin says he didn't know that two of his investors had ties to Russian organized crime. "If they were involved in any illegal activity outside of the airline it was never revealed to me," he said in an email to OCCRP.

David Gitman's father, Jacob Gitman, was among the first investors to join Monarch Air after OCCRP Needs Your Feedback in 2008.

The elder Gitman was born in the Soviet Union, where he worked as an engineer before immigrating to the U.S. in the early 1990s. He has been linked to dozens of U.S. businesses (https://www.azcentral.com/story/money/business/tech/2018/10/11/florida-paz-county-residents-fighting-plans-aluminum-smelter-alliance-metals/1928485001/) in everything from logistics and healthcare to aluminium smelting.

In 2017, Gitman was found liable in a civil lawsuit of misleading investors about technology, expertise, and potential profits from an operation to supposedly convert used tires into fuel. The plaintiff, Blizzard Energy, was awarded $3.8 million in

Could you please take our 10 question survey?

Your answers will help us improve the presentation of our investigative reporting. 👋

Start survey

Powered by Survicate (https://survicate.com/software/feedback-ai)



Credit: Twitter

**Anatoly Golubchik was convicted of operating what New York prosecutors described as an illegal "large-scale sports book."**

damages, and the case is now under appeal. Gitman declined to comment as the case is still ongoing.

Golubchik also joined as an investor in 2008, while Trincher, his criminal partner in the gambling, money laundering, and extortion ring, came aboard in 2011. Another immigrant from the former Soviet Union, Trincher was a professional card player who has reportedly made more than $1.2 million in live tournament earnings during his career, including winning the 2009 World Poker Tour Foxwoods Poker Classic.

Along with Tokhtakhounov, the Russian crime boss who is still on the run, the two men operated what New York prosecutors described as an illegal "large-scale sports book" that was used to launder approximately $100 million from former Soviet Union countries through Cyprus-registered shell companies. Prosecutors said around $50 million of that amount found its way to the U.S.

"Their clients were multi-millionaires and billionaires, oligarchs in Russia," the prosecutors noted in court documents.

Their group also ran a high-stakes poker game that attracted not only clients from Russia, but also major American actors

OCCRP Needs Your Feedback!

Could you please take our 10 question survey today?

Your answers will help us improve the presentation of our investigative reporting 👏

Powered by Survicate (https://survicate.com/softw...-a)



Credit: Evan Agostini/Invision/AP

Molly Bloom, left, was among 34 people indicted for being part of the illegal gambling rings. Here she poses with actress Jessica Chastain, who played her in the film chronicling her experiences, "Molly's Game."

like Ben Affleck, Leonardo DiCaprio, and Matt Damon, according to the industry publication Poker News. The rise and fall of the star-studded poker game was later made into the film "Molly's Game," featuring Jessica Chastain and Idris Elba.

The Taiwanchik-Trincher Organization and its sister crime ring, co-run by Trincher's son Illya, were broken up in 2013, reportedly (https://abcnews.go.com/US/story-fbi-wiretap-russians-trump-tower/story?id=46266198) after the FBI spent two years collecting information on the Russian money-laundering network using a wiretap hidden inside unit 63A in Trump Tower.

Jacob Gitman told OCCRP he had met Golubchik in 2006, but declined to explain how. He said he had never met or spoken with Trincher. "I don't have any business relations with them since 2013," he said in an email.

However, public records show that Gitman partnered with Golubchik and Trincher in at least four aviation companies. Panama-based SkyWay International Holding still lists all three men as corporate officers. Gitman said the Panamanian company was never active, and had never facilitated any transactions or opened bank accounts.

An important addition to Monarch's team was businessman Boruch "Bob" Freedman, who joined the company in April 2011. Freedman was already involved in air transport in Afghanistan, but he did not have the certificate or experience to procure direct government contracts. Monarch did. The two decided to join forces and, along with Gitman's son, David, they formed WAB International, which signed a profit-sharing and reimbursement arrangement with Monarch.

Freedman was well-known in the aviation world as the nephew of Alexander Mashkevich, a Kazakh business titan with links to the Eurasian Natural Resources Corporation (see box below (https://www.occrp.org/en/investigations/flight-of-the-monarch-us-govt-contracted-airline-once-owned-by-russian-criminals#occrp-inset-box-burundaiavia-s-controversial-owners)), according to John Dawkins, the head of a logistics company that worked with Freedman on a government contract in Afghanistan.

"Boruch was a middleman," Dawkins said. "He was plugged into everyone using his uncle's reputation to gain entry and relevance."

Freedman, who fled the U.S. after a warrant was issued for his arrest for not paying a court-mandated fine, did not respond to a request for comment.

### A Kyrgyz Investor With a Troubled Airline of His Own

In 2011, Gennady Gryaznov, a former director of Kyrgyzstan's Department of Civil Aviation, also bought into Monarch. Gryaznov already owned Sky KG Airlines, a Kyrgyz airline that is banned from operating in the European Union due to safety concerns.

Sky KG caught the attention of the United Nations Security Council the following year when it began leasing the aircraft that reportedly served as the former presidential plane of Romanian dictator Nicolae Ceaușescu to the powerful Somali pirate boss Mohamed Abdi Hassan. A U.N. report alleged that Hassan added Gryaznov's plane to his own small airline — which he used, along with other businesses, for the "laundering of piracy proceeds" — before he was arrested in Belgium.

Gryaznov did not respond to a request for comment.

Golubchik and Trincher appeared in Monarch's paperwork until 2012, the year the airline won its first contract with the DoD. They are last mentioned as investors in a report from April that year, and records show they were gradually replaced as managers by Freedman-controlled entities.

By 2015, corporate records show that Jacob Gitman owned 90 percent of Monarch, but he said he sold his majority shareholder position the following year. His 37-year-old son, David — who did not respond to a request for comment — is now listed as the CEO and sole owner of the airline.

Credit: Edin Pasovic/OCCRP

While Slavin had initially welcomed his new investors, the partnership turned sour.

"Unfortunately for me it became obvious that Boruch Freedman wanted control of the airline and used withholding of funds to affect the daily operation of the airline," said Slavin. "I was then double-crossed by Jacob Gitman, who gave his and Golubchik's voting shares to Freedman."

OCCRP Needs Your Feedback!

Could you please take our 10 question survey?

Your answers will help us improve the presentation of our investigative reporting 👇

Take Survey

Powered by Survicate (https://survicate.com/?utm_source=Survey+branding&utm_medium=Widget+key)

Slavin said he was voted out as CEO in 2011. At first he stayed on as director of operations, but left when he felt the new owners started cutting corners on safety.

Credit: Facebook

Monarch posted this image on the company's Facebook account last year, accompanied by a quote attributed to Henry Ford: "When everything seems to be going against you, remember that aircraft take off against the wind, not with it."

## *Federal Contracts*

When Slavin first launched Monarch Air Group in 2005, his cargo planes flew to just one destination: the Bahamas, a Caribbean island chain beginning 80 kilometers off the southeast Florida coast, and known as an easy-access playground for American tourists, celebrities, and global elites.

Monarch expanded its flight routes when the new investors came on board, and began carrying passengers as well as cargo. Then in 2011, according to a submission from prosecutors at Golubchik's bail hearing two years later, Florida customs agents discovered 16 kilograms of cocaine hidden in one of its planes.

A former Monarch pilot, who was not on the flight, told OCCRP the plane was searched by customs agents when it returned to Fort Lauderdale International Airport from Haiti. They found a duffle bag full of cocaine inside. The crew was detained for several hours, he said, along with the person who had chartered the flight, a frequent customer whose name he did not recall. The pilot thought it was strange that the aircraft was then released.

"I've seen in previous years, when the airplane was involved with drugs and it was in a hanger and it was not to be moved," he said. "It was under the control of customs."

The U.S. Customs and Border Protection Agency refused to release any information about the discovery of the cocaine, or explain why no one was arrested.

Gavrushenko, Monarch's spokesperson, said the cocaine belonged to a passenger. "We have worked with the relevant authorities to develop and enhance existing procedures, to prevent this from happening again," she said. "In our 15 years of operations, this was the only occurrence."

In the two years following the bust, U.S. government agencies continued contracting Monarch. WAB also received subcontracts to provide helicopter transport for passengers and cargo in Afghanistan for the DoD. Court records show WAB subcontracted the jobs to a small Kazakhstan-based aviation company, JSC Airline Burundaiavia.

The DoD contracts ceased after a helicopter crash in Afghanistan, according to court documents. In early May 2013, two Burundaiavia choppers took off from a U.S. military forward operating base about 40 miles outside Kandahar, in southern Afghanistan. A short time later, the engines failed in one of the helicopters and it went down over a populated area, "causing much damage and destruction to the village."

The court documents say Burundaiavia failed to investigate the incident, as was required under Kandahar law and U.S. law. The crash "tarnished" the company's reputation, according to a court submission made by Burundaiavia, and it was never awarded another U.S. government contract.

The incident appears to have led to a falling out between the business partners, culminating in a lawsuit in Florida. Burundaiavia successfully sued WAB in 2015 for failing to pay almost $8 million in fees it owed. A warrant was issued for

OCCRP needs your feedback!

Could you please take our 10 question survey?

Your answers will help us to improve the presentation of our investigative reporting 👇

Start survey

Powered by Survicate (https://survicate.com/software-dpa)

Close_survey-survey-branding.btn-medium-Widget-survey)

7/12/22, 8:56 PM
Flight of the Monarch: US Govt.-Contracted Airline Once Owned by Criminals with Russian Mob-...
Case 0:21-cv-62429-WPD Document 91-5 Entered on FSD Docket 01/04/2023 Page 10 of 13



Credit: Facebook

This Monarch brochure from 2009 says the company flew cargo mainly to the Bahamas, Puerto Rico and the Dominican Republic.

Freedman's arrest the following year after he was held in contempt of court for not paying the fine. U.S. Marshals were unable to track him down, and he now lives in Israel, according to a court document.

Credit: burundaiavia.kz (https://burundaiavia.kz/)

Two Burundaiavia choppers crashed in southern Afghanistan in 2013.

## Burundaiavia's Controversial Owners

The Florida case involving WAB revealed who owns JSC Airline Burundaiavia: three oligarchs from Kazakhstan who have faced corruption allegations in various places.

In 2017, the Marshals Service twice hired Monarch to transport people in the witness protection program and the Justice Prisoner and Alien Transportation System, which moves prisoners around the country.

Gary Kalman of Transparency International said the fact that Monarch was able to transport protected witnesses, despite the dubious backgrounds of its former owners, shows the need for more thorough checks on companies that are awarded public contracts.

OCCRP Needs Your Feedback!

▾ MORE

Could you please take our 10 question survey?

Your answers will help us improve the presentation of our investigative reporting 👇

Start survey

Powered by Survicate (https://survicate.com/software-a) utm_source=Survey+branding&utm_medium=Widget+key)

"Common sense says that contracts should be clearly vetted before going to entities with a history of criminal affiliation, but there is no legal mandate that we check," he said. "That is a significant gap in the law, and this story is a prime example of how such a gap might be dangerously exploited."

The Marshals declined to comment, saying the GSA was responsible for vetting the company. Monarch's spokesperson said the company was audited by the GSA as a vendor in 2013 and won its contracts "with full transparency and open competition."

The GSA did not reply to a request for comment.

Credit: Facebook
Monarch's air carrier license was revoked in 2016, though it is still able to broker charter flights with other FAA certified airlines.

## No-Fly Zone

Between January and April 2016, Monarch's director of operations, chief pilot, and maintenance director all quit. A pilot who spoke to OCCRP anonymously said employees resigned after Monarch stopped paying them, and the airline struggled to find replacements.

In May that year, the airline requested the FAA remove its only aircraft from its "Operation Specifications," a legal designation that allowed it to run commercial operations like private chartered flights. Without any planes that met FAA requirements, or key staff members to run them, its air carrier certificate was revoked in February 2018.

But Monarch is still authorized to broker charter flights with other FAA-certified air carriers.

Analysis of public documents found U.S. authorities have awarded Monarch contracts worth more than $6 million. The company is still brokering flights under an open-ended 10-year contract awarded in 2014.

The bulk of Monarch's contracts were with the DoD and involved transporting fuel to Har Keren in Israel, where the U.S. military has a mountaintop radar facility known as Site 512. Those gigs took place between 2012 — the last year Golubchik and Trincher were known to be involved in the company — and 2015.

Seto Bagdoyan, director for audit services at the U.S. Government Accountability Office's (GAO) Forensic Audits & Investigative Service, said the lack of transparency in contracting structures presents a risk to the government.

"A recent GAO report ... flagged a number of fraud and national-security risks to DoD acquisition posed by contractor ownership structures that may not be fully transparent," he said. "While GAO didn't specifically focus on background checks, this could be an important aspect of DoD's assessment of its various controls."

In addition to U.S. federal contracts, the Monarch Air Group lists international clients including the United Nations World Food Program, and Canada's Department of National Defence. Most recently, David Gitman boasted (https://www.traveldailynews.com/post/repatriation-flights-and-the-key-role-of-private-aviation-during-pandemic) in a travel publication of Monarch's "great synergy" with U.S. embassies to bring home citizens stranded in Latin America due to the COVID-19 crisis.

In the 12 years since Slavin welcomed new investors, his small air cargo company has grown from a struggling start up, with just one route to the Bahamas, into a global operation. But even though he has not been able to "share in the prosperity," he said he is not bitter.

"I am done reliving this chapter of my life that I closed 10 years ago," Slavin said.

***This story has been updated with the following corrections and clarifications:***

- The story has been clarified to better explain that Monarch says it won six government contracts. These included more than 120 awards, or transactions, to carry out different jobs. U.S. government records show these totaled more than $6 million.

OCCRP Needs Your Feedback!

Could you please take our 10 question survey?

Your answers will help us improve the presentation of our investigative reporting 👇

take survey

Powered by Survicate (https://survicate.com/software-a) utm_source=Survey+branding&utm_medium=Widget+key)

- The story incorrectly identified the nationality of two former part-owners of Monarch, Anatoly Golubchik and Vadim Trincher. They are naturalized U.S. citizens who emigrated from the former Soviet Union.
- The story incorrectly stated the manner in which WAB International, a Monarch affiliate, received funds. WAB reported it received $70 million in subcontracts for work on behalf of the U.S. military from one or more companies that received contracts directly from the U.S. military.
- The story has been clarified to correctly reflect Monarch's status during its years of operation. Monarch was designated as an airline until February 2018 when the Federal Aviation Administration (FAA) revoked its air carrier certificate. Monarch was then registered as an on-demand charter broker.

🐦 (http://twitter.com/intent/tweet?text=U.S. authorities awarded Monarch Air Group over 100 contracts, including transporting protected witnesses a

f (http://www.facebook.com/share.php?u=https://www.occrp.org/en/investigations/flight-of-the-monarch-us-govt-contracted-airline-once-owned-by-

## Join the fight.
## Hold power to account.

Support from readers like you helps OCCRP expose organized crime and corruption around the world.

By donating, you'll be directly supporting investigative journalism as a public good. You'll also gain access to exclusive insights and benefits.

**DONATE TODAY**

(https://checkout.fundjournalism.org/memberform?org_id=occrp&campaign=7011U000000ylyDQAO)

## RELATED STORIES

**How Illegal Land Grabs in Brazil's Amazon Feed the Global Beef Industry**
(/en/investigations/how-illegal-land-grabs-in-brazils-amazon-feed-the-global-beef-industry)

**Signs of Political Motivation Permeate Case Against Kyrgyz Investigative Journalist**
(/en/investigations/signs-of-political-motivation-permeate-case-against-kyrgyz-investigative-journalist)

**Secret Operations: The Peruvian Charged with Laundering Massive Amounts of Drug Money**
(/en/investigations/secret-operations-the-peruvian-charged-with-laundering-massive-amounts-of-drug-money)

**A 'Bloody' Trade: Inside the Murky Supply Chain Bringing Syrian Phosphates into Europe**
(/en/investigations/a-bloody-trade-inside-the-murky-supply-chain-bringing-syrian-phosphates-into-europe)

## RECENT STORIES

**How Illegal Land Grabs in Brazil's Amazon Feed the**

**Signs of Political Motivation Permeate Case**

**Secret Operations: The Peruvian Charged with**

**A 'Bloody' Trade: Inside the Murky Supply Chain**

OCCRP Needs Your Feedback!

Could you please take our 10 question survey?

Your answers will help us improve the presentation of our investigative reporting 👇

Start survey
Powered by Survicate (https://survicate.com/software/w..? utm_source=survey-branding&utm_medium=Widget&type&

### Global Beef Industry

Land grabs and deforestation have devastated Brazil's northern Pará state. But slaughterhouses, including some owned by top meat processors JBS and Marfrig, still buy from suppliers who source from ranches on stolen land.

⊙ 8 JULY 2022 ⟶ READ THE ARTICLE

(/en/investigations/how-illegal-land-grabs-in-brazils-amazon-feed-the-global-beef-industry)

### Against Kyrgyz Investigative Journalist

Kyrgyz authorities allege Bolot Temirov is a drug user and used falsified identification documents. But case files obtained by reporters suggest a high-level effort led by the GKNB security agency to silence him.

⊙ 8 JULY 2022 ⟶ READ THE ARTICLE

(/en/investigations/signs-of-political-motivation-permeate-case-against-kyrgyz-investigative-journalist)

### Laundering Massive Amounts of Drug Money

For decades, Carlos Sein Atachahua allegedly led a global money laundering empire. Police say his gang's drugs, sent with logos depicting ancient Peruvian symbols, reached Italy's 'Ndrangheta and other criminal groups, while corrupted money-exchange houses around the world were allegedly used to launder profits.

⊙ 6 JULY 2022 ⟶ READ THE ARTICLE

(/en/investigations/secret-operations-the-peruvian-charged-with-laundering-massive-amounts-of-drug-money)

### Bringing Syrian Phosphates Into Europe

European countries have recently resumed imports of phosphate — a key ingredient in fertilizer — from Syria. The trade enriches sanctioned oligarchs, war profiteers, and the Syrian government, but has continued thanks to legal loopholes.

⊙ 30 JUNE 2022 ⟶ READ THE ARTICLE

(/en/investigations/a-bloody-trade-inside-the-murky-supply-chain-bringing-syrian-phosphates-into-europe)

---

**Contact (/en/aboutus/contact-us)**

**Bypassing Censorship (/en/aboutus/bypassing-censorship)**

**Member Centers (/en/members)**

**Team (/en/aboutus/staff)**

**Awards (/en/awards)**

**Privacy Policy (/en/aboutus/privacy-policy)**

**About (/en/about-us)**

**History of OCCRP (/en/history-of-occrp)**

**Board of Directors (/en/aboutus/board-of-directors)**

**Our Supporters (/en/aboutus/who-supports-our-work)**

**Subscribe to our weekly newsletter (https://mailchi.mp/occrp/subscribe-newsletter?campaign=footer)**

(https://www.facebook.com/OCCRP) (https://twitter.com/occrp)

(http://www.youtube.com/user/6WQQOxmDHK3saMD8A?feature=watch)



OCCRP Needs Your Feedback!

Could you please take our 10 question survey?

Your answers will help us improve the presentation of our investigative reporting 👇

Start survey

Powered by Survicate (https://survicate.com/software/?utm_source=Survey+branding&utm_medium=Widget&utm_key=...)



## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed and served via the CM/ECF filer on **June 27, 2024**, on all parties and counsel of record: Derek E. León, Esq., dleon@leoncogrove.com; Benjamin Weinberg, Esq., bweinberg@leoncosgrove.com, eperez@leoncosgrove.com; Sofia Manzo, Esq., smanzo@leoncosgrove.com, aquezada@leoncosgove.com; LEÓN COSGROVE, LLP 255 Alhambra Circle, 8th Floor Miami, Florida 33134.

Respectfully submitted,

STOK KON + BRAVERMAN
*Counsel for Appellants*
1 E. Broward Boulevard
Suite 915
Fort Lauderdale, FL 33301
P.954.237.1777
F.954.237.1737

*/s/ Joshua R. Kon*
ROBERT A. STOK, ESQ.
Florida Bar No. 857051
rstok@stoklaw.com
JOSHUA R. KON, ESQ.
Florida Bar No. 56147
jkon@stoklaw.com
YOSEF KUDAN, ESQ.
Florida Bar No. 1010261
ykudan@stoklaw.com